# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

ASTRAZENECA PHARMACEUTICALS LP,

*Plaintiff*,

*v.*

ALAN MCCLAIN, in his official capacity
as Commissioner of the Arkansas
Insurance Department,

*Defendant*.

Case No. 4:24-cv-00268

JUDGE: Billy Roy Wilson

# PLAINTIFF'S OPPOSITION TO
# DALLAS COUNTY MEDICAL CENTER'S MOTION TO INTERVENE

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

I.      Section 340B and Act 1103 ................................................................................... 3

II.     Litigation Concerning Act 1103 and This Case's Expedited Schedule ............................ 5

ARGUMENT ......................................................................................................................... 8

I.      DCMC's Motion to Intervene Is Untimely ............................................................ 8

II.     DCMC Cannot Meet the Standard for Mandatory Intervention ...................................... 12

        A.      DCMC Does Not Have a Significantly Protectable Interest ................................. 12

        B.      Denial of DCMC's Request Will Not Impair Its Interests .................................... 14

        C.      Defendant Is Adequately Defending Act 1103 in this Litigation ......................... 14

III.    DCMC Cannot Meet the Standard for Permissive Intervention ....................................... 18

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Allen Calculators, Inc. v. Nat'l Cash Register Co.*,
    322 U.S. 137 (1944).................................................................................19

*American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*,
    643 F.3d 1088 (8th Cir. 2011) ..........................................................9, 10

*Ark. Elec. Energy v. Middle S. Energy, Inc.*,
    772 F.2d 401 (8th Cir. 1985) ...............................................................11

*Arrow v. Gambler's Supply, Inc.*,
    55 F.3d 407 (8th Cir. 1995) ..................................................................9

*Athens Lumber Co., Inc. v. FEC*,
    690 F.2d 1364 (11th Cir. 1982) ..........................................................14

*B&B Hardware, Inc. v. Fastenal Co.*,
    No. 10-cv-317, 2011 WL 1540445 (E.D. Ark. Apr. 22, 2011)...............13

*South Dakota ex rel. Barnett v. Dep't of Interior*,
    317 F.3d 783 (8th Cir. 2003) .........................................................15, 18

*Church v. Missouri*,
    2020 WL 8255313 (8th Cir. July 8, 2020) ...........................................12

*Curry v. Regents of Univ. of Minn.*,
    167 F.3d 420 (8th Cir. 1999) ....................................................... *passim*

*Dalton v. Barrett*,
    No. 2:17-cv-4057, 2019 WL 3069856 (W.D. Mo. July 12, 2019) .........12

*Donaldson v. United States*,
    400 U.S. 517 (1971)..............................................................................12

*Edwards v. Beck*,
    No. 4:13-cv-224, 2013 WL 12146739 (E.D. Ark. June 6, 2013) ..........15

*FTC v. Johnson*,
    800 F.3d 448 (8th Cir. 2015) ...............................................................16

*Greene v. United States*,
    996 F.2d 973 (9th Cir. 1993) ...............................................................13

*Hodes & Nauser, MDs, P.A. v. Moser*,
    No. 2:11-cv-02365, 2011 WL 4553061 (D. Kan. Sept. 29, 2011)..........19

*Jenkins ex rel. Jenkins v. Missouri,*
    78 F.3d 1270 (8th Cir.1996) ...........................................................................16

*Little Rock Sch. Dist. v. Northern Little Rock Sch. Dist.,*
    378 F.3d 774 (8th Cir. 2004) ......................................................................14, 15

*Looney v. Chesapeake Energy Corp.,*
    No. 2:15-cv-02108, 2016 WL 7638467 (W.D. Ark. Sept. 23, 2016) ........................................9

*Mausolf v. Babbitt,*
    85 F.3d 1295 (8th Cir. 1996) ..........................................................................15

*McLean v. State of Ark.,*
    663 F.2d 47 (8th Cir. 1981) .......................................................................16, 19

*Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC,*
    485 F.3d 1006 (8th Cir. 2007) ....................................................................13, 18

*Menominee Indian Tribe of Wis. v. Thompson,*
    164 F.R.D. 672 (W.D. Wis. 1996) ......................................................................19

*Mille Lacs Band of Chippewa Indians v. State of Minn.,*
    989 F.2d 994 (8th Cir. 1993) ..........................................................................15

*Nat'l Parks Conservation Ass'n v. EPA,*
    759 F.3d 969 (8th Cir. 2014) ..........................................................................12

*Nevilles v. EEOC,*
    511 F.2d 303 (8th Cir. 1975) ..........................................................................10

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
    732 F.2d 452 (5th Cir. 1984) ..........................................................................19

*Ohio Valley Envtl. Coal., Inc. v. McCarthy,*
    313 F.R.D. 10 (S.D. W. Va. 2015) ......................................................................14

*Sanofi Aventis U.S. LLC v. HHS,*
    58 F.4th 696 (3d Cir. 2023) ............................................................................4

*In re Scott by Simmons v. United States,*
    No. 4:10cv1578, 2011 WL 13366300 (E.D. Mo. Oct. 3, 2011) ..............................................9

*Shelton v. Kennedy Funding, Inc.,*
    No. 02-cv-632, 2009 WL 1890579 (E.D. Ark. June 30, 2009) ................................................8

*United Food & Com. Workers Union v. USDA,*
    36 F.4th 777 (8th Cir. 2022) ..........................................................................10

*United States v. Metro. St. Louis Sewer Dist.*,
  569 F.3d 829 (8th Cir. 2009) ...................................................................12, 13, 14

*United States v. Ritchie Special Credit Invs., Ltd.*,
  620 F.3d 824 (8th Cir. 2010) ............................................................................8, 11

*WaterLegacy v. EPA*,
  300 F.R.D. 332 (D. Minn. 2014)..........................................................................10

**Statutes & Rules**

Ark. Code. Ann.
  § 23-92-604(c)(1).....................................................................................................4
  § 23-92-604(c)(2).....................................................................................................5

Federal Rules of Civil Procedure
  Rule 24(a).................................................................................................................8
  Rule 24(a)(2)..........................................................................................................12
  Rule 24(b)(1)............................................................................................................8
  Rule 24(b)(1)(B).................................................................................................18, 19
  Rule 24(c)...............................................................................................................18

**Other Authorities**

7C Wright & Miller, *Federal Practice and Procedure* § 1909 (3d ed. June 2024
  update)..............................................................................................................15, 16

For the reasons set forth below, AstraZeneca Pharmaceuticals LP (AstraZeneca) respectfully opposes the untimely and prejudicial motion of Dallas County Medical Center (DCMC) to intervene in this case. ECF No. 30.

## INTRODUCTION

DCMC's motion to intervene does not meet the standard either for mandatory or permissive intervention under Federal Rule of Civil Procedure 24. Permitting DCMC to intervene in this case at this juncture would be highly prejudicial to AstraZeneca.

First and foremost, the intervention motion is plainly untimely. DCMC does not dispute that it was on notice of this suit when AstraZeneca filed it on March 25, 2024, or shortly thereafter. DCMC then waited *more than four months* to move to intervene—while the parties negotiated an expedited schedule for discovery and briefing in lieu of AstraZeneca seeking emergency relief. The Court has so-ordered that schedule, which is now well underway. And yet DCMC offers no justification whatsoever for its delay. DCMC's belated attempt to join the suit now, if vindicated, will disrupt the agreed-upon schedule and prejudice AstraZeneca. Rule 24's timeliness requirement is intended to prevent precisely this kind of sandbagging.

Even if DCMC's motion could overcome this threshold deficiency, it fails to satisfy the other requirements of Rule 24. As to mandatory intervention, DCMC has asserted only an economic interest in this litigation, which is not a legally cognizable interest sufficient to justify intervention. Nor has DCMC made (or even attempted to make) the necessary "strong showing" that Defendant cannot adequately represent DCMC's interests. DCMC and Defendant share the same goal—defending the legality of Act 1103—and DCMC has offered no reason why Defendant, who is charged with the administration and enforcement of the statute, is not up to the job. Indeed, DCMC has been content to let Defendant litigate this case on an expedited basis for nearly five months. Courts routinely deny intervention requests under comparable circumstances.

DCMC's request for permissive intervention fails for many of the same reasons. The request is untimely and would prejudice AstraZeneca. Nor has DCMC identified any defense that is *distinct* from those that Defendant is able to raise itself, as Rule 24 requires. Instead, DCMC wishes to make different arguments for the same outcome that Defendant is already pursuing. This desire may justify amicus participation, but it does not satisfy the requirements for intervention.

In advocating for intervention here, DCMC relies heavily on the fact that two covered entities were permitted to intervene "in a previous case against Defendant challenging Act 1103." Mem. in Support of Mot. to Intervene (Mem.), ECF No. 31 at 1 (citing Order, *PhRMA v. McClain*, 4:21-cv-00864 (E.D. Ark. May 3, 2022), ECF No. 22). DCMC even attaches that decision to its motion. ECF No. 30, Ex. 1. This argument is a red herring. DCMC omits two key factors that distinguish the intervention motion in *PhRMA* from the motion here. First and foremost, the *PhRMA* plaintiffs did not oppose the motion to intervene. Second, the *PhRMA* intervenors moved to intervene nearly seven months *before* the discovery cutoff and before *any* discovery deadlines had passed. *See PhRMA v. McClain*, 4:21-cv-00864 (E.D. Ark. Jan. 18, 2022), ECF. No. 14 (scheduling order).

Finally, DCMC's motion to intervene should be denied insofar as it is an attempt to delay and disrupt these expedited proceedings. DCMC sought to intervene only after other covered entities—represented by the same counsel as DCMC—had been subpoenaed pursuant to the discovery order. The subpoenaed third parties, who include the entity that filed an administrative complaint against AstraZeneca in Arkansas, have now taken the position that *no discovery* should be had of them until the Court resolves this motion to intervene (and then resolves DCMC's proposed motion to dismiss). If DCMC's attempt to intervene here is part of an overall strategy to delay discovery and the disposition of this case, it would plainly be improper.

2

## BACKGROUND

### I.    Section 340B and Act 1103

**A.** Under Section 340B, drug manufacturers must offer discounted drugs to specific categories of healthcare providers, known as "covered entities." Am. Compl., ECF No. 25, ¶¶ 1, 19. Because Section 340B requires steep discounts from commercial pricing, Congress limited eligibility for Section 340B discounts to a defined list of fifteen covered entities. *Id.*

Over the years, the agency responsible for administering the 340B program, the Health Resources and Services Administration (HRSA), has issued non-binding "guidance" documents purporting to permit covered entities to enter into agreements with contract pharmacies to dispense Section 340B drugs. In 1996, HRSA authorized covered entities to enter into a single contract pharmacy arrangement. *Id.* at ¶¶ 23–24. In 2010, HRSA issued guidance stating for the first time that covered entities would be permitted to "use multiple pharmacy arrangements," which led to a surge in the number of contract pharmacies receiving and distributing 340B drugs. *Id.* at ¶¶ 25–26.

This surge is due to the outsized profit margins available on these drugs. Generally, contract pharmacies do not distinguish between 340B-eligible drugs in their inventories—that is, the pharmacies maintain a single inventory of *all* drugs. They then make after-the-fact determinations regarding whether a previously dispensed drug was 340B-eligible, usually through the use of a third-party administrator that has a financial incentive to catalog as many prescriptions as possible as eligible for the 340B discount. *Id.* at ¶ 27 (citing Decl. of Krista M. Pedley ¶¶ 5–9, *Sanofi-Aventis U.S., LLC v. HHS*, No. 3:21-cv-634 (D.N.J. June 24, 2021), ECF No. 93-2)). The difference between the commercial price paid by the customer or his insurer and the discounted 340B price at which the drugs were acquired generates a financial "spread," which in aggregate amounts to "hundreds of  millions" of dollars. *Id.* at ¶ 28 (quoting Raymond James, *340B Pharmacy Follow Up—Less Than $1.4B but Still Yuge* (Sept. 9, 2020)). This "spread" is divvied

up between the covered entity, the contract pharmacy, and the third-party administrator. Importantly, these huge profits usually do *not* benefit patients. *Id.* at ¶ 30 (citing 2018 GAO survey finding that 45% of covered entities admitted they do not pass along *any* discounts to *any* patients using their contract pharmacies, and the remaining 55% do so only in limited cases); *id.* (citing similar findings by the HHS Office of Inspector General in a 2014 OIG Report).

In August 2020, in response to contract-pharmacy abuses, AstraZeneca instituted a policy (which became effective October 1, 2020) in which it would continue to make its products available at 340B-discounted prices to all covered entities; and, for those that did not maintain an on-site dispensing pharmacy, AstraZeneca would permit delivery of discounted drugs to a single contract pharmacy site designated by the covered entity. *Id.* at ¶¶ 35–36. This policy is consistent with HRSA's 1996 guidance, as well as with the letter and intent of the 340B program. *Id.* at ¶¶ 35–37. Litigation followed concerning whether AstraZeneca's policy complied with Section 340B, and the Third Circuit ruled that that AstraZeneca's "restrictions on delivery to contract pharmacies do not violate Section 340B." *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 706 (3d Cir. 2023). AstraZeneca also obtained an injunction prohibiting HRSA from enforcing against AstraZeneca its "reading of Section 340B as requiring delivery of discounted drugs to an unlimited number of contract pharmacies." Am. Compl. ¶¶ 2, 41 (quoting *Sanofi Aventis*, 58 F.4th at 706).

**B.** In response to these federal rulings, Arkansas enacted Act 1103, which controls the price of 340B drugs sold by manufacturers participating in the federal program. It provides that "[a] pharmaceutical manufacturer shall not . . . [p]rohibit a pharmacy from contracting or participating with an entity authorized to participate in 340B drug pricing by denying access to drugs that are manufactured by the pharmaceutical manufacturer." Ark. Code. Ann. § 23-92-604(c)(1). The Act also provides that "[a] pharmaceutical manufacturer shall not . . . [d]eny or prohibit 340B drug pricing for an Arkansas-based community pharmacy that receives drugs purchased under a 340B

4

drug pricing contract pharmacy arrangement with an entity authorized to participate in 340B drug pricing." *Id.* § 23-92-604(c)(2). Act 1103 took effect on July 28, 2021.

## II.    Litigation Concerning Act 1103 and This Case's Expedited Schedule

**A.** On the same day that Act 1103 became effective, PhRMA (a trade organization representing certain drug manufacturers) sued Defendant, challenging the constitutionality of Act 1103. Am. Compl. ¶¶ 58–59. PhRMA argued that the Act was preempted by Section 340B and invalid under the dormant Commerce Clause. *Id.* This Court rejected PhRMA's claims, and the U.S. Court of Appeals for the Eighth Circuit affirmed. *Id.* at ¶¶ 59–60. Neither court considered challenges to Act 1103 based on federal patent preemption, the Contracts Clause, or the federal and Arkansas Takings Clauses. *Id.* at ¶ 59.

**B.** On August 31, 2023, while the *PhRMA* litigation was ongoing, Defendant informed AstraZeneca that a covered entity named St. Francis House NWA d/b/a Community Clinic (St. Francis House) had filed a complaint alleging that AstraZeneca was violating Act 1103. On April 24, 2024, Defendant published a notice of public hearing regarding the St. Francis House complaint, stating that Defendant had determined that AstraZeneca's contract policy violates the Act. That allegation will be adjudicated at a hearing that is currently scheduled for October 9.

Meanwhile, on March 25, 2024, AstraZeneca filed suit against Defendant challenging the constitutionality of Act 1103 and requesting that Defendant be prohibited from enforcing the statute against AstraZeneca. ECF No. 1. AstraZeneca alleges that Act 1103 is unconstitutional for three independent reasons: (1) it violates the Supremacy Clause of the U.S. Constitution because it is preempted by Section 340B and federal patent law; (2) it violates the Contracts Clause because it interferes with agreements between the Secretary of Health and Human Services and manufacturers; and (3) it violates the Takings Clauses of the federal and Arkansas Constitutions

because it forces the transfer of private property from drug manufacturers to other private parties. Am. Compl. ¶¶ 6–8. Defendant answered the Complaint on April 1, 2024. ECF No. 11.

At the outset of this litigation, AstraZeneca conferred with Defendant about scheduling. AstraZeneca explained its need to expedite the case schedule and suggested that, to avoid the need to seek a preliminary injunction or other extraordinary relief, the parties might negotiate an expedited discovery schedule that would leave the parties able to start summary judgment briefing by the end of September 2024. Defendant agreed with AstraZeneca's proposal, and, on May 9, 2024, the parties jointly proposed an expedited discovery schedule. ECF No. 16. On May 10, this Court so-ordered the parties' proposed schedule. ECF Nos. 17–18.

Pursuant to the scheduling order, the parties have already responded to requests for document production, requests for admission, and interrogatories. Additionally, AstraZeneca deposed Defendant on July 26, 2024. The parties are due to disclose experts August 7, and the deadline for rebuttal expert disclosures and expert depositions is August 30. The cutoff for all discovery is August 30—now less than a month away—and all dispositive motions must be filed by September 30. ECF No. 18 at 2.

On June 17, 2024, Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 21. In that motion, Defendant moved to dismiss AstraZeneca's claim that Act 1103 is preempted by Section 340B. In response, AstraZeneca filed an amended complaint dropping the claim, which rendered the motion moot. ECF Nos. 25–26.

**C.** The parties have been working diligently to complete discovery according to the scheduling order. To date, AstraZeneca and Defendant have completed written discovery and document productions; AstraZeneca took a Rule 30(b)(6) deposition of Defendant on July 26, 2024; AstraZeneca tendered several Rule 45 subpoenas for service dated May 29; AstraZeneca

has been meeting and conferring with the various subpoena recipients in an attempt to obtain critical discovery relevant to the merits of this case; and expert discovery is ongoing.

Included among AstraZeneca's Rule 45 subpoenas, AstraZeneca has served third-party discovery requests on several covered entities and contract pharmacies. On July 18, 2024, discussions reached an impasse with four covered entities and one contract pharmacy, all represented by the same counsel. AstraZeneca was accordingly left with no choice but to file a motion to compel the four subpoenaed covered entities to comply with AstraZeneca's Rule 45 subpoenas. ECF No. 27.

Also relevant here, at the meeting at which an impasse had been reached with the four covered entities and one contract pharmacy, counsel for these entities, who is also counsel for DCMC, advised AstraZeneca for the first time that DCMC intended to file this motion to intervene, as well as a motion to dismiss that DCMC would file at the same time. Counsel also advised that *all* of his clients would be taking the position that *all* discovery should halt until this Court resolves DCMC's motion to intervene, and then the motion to dismiss. *See* ECF No. 28, ¶ 16.  DCMC thus disclosed its interest in joining this suit—and having it dismissed—at the same time that AstraZeneca had reached an impasse over subpoenas served on other covered entities under Rule 45.

DCMC filed its motion to intervene, as well as a proposed motion to dismiss, on July 18, 2024. ECF Nos. 30–31.

## ARGUMENT

DCMC's motion to intervene is flagrantly untimely. DCMC has made no attempt to explain why it waited so long to seek to join this suit, and its belated addition as a party now would derail the expedited schedule for which the existing parties negotiated and would prejudice AstraZeneca. The motion should be denied for that reason alone. DCMC also fails to satisfy the other criteria for intervention, most significantly because it cannot overcome the "strong presumption" that Defendant, who is charged with enforcing Act 1103, is capable of adequately defending the law's constitutionality. Nevertheless, AstraZeneca would not object to DCMC participating in this lawsuit as an amicus curiae, insofar as it can satisfy the criteria for amicus status. Affording DCMC amicus status would ensure that its views are put before the Court and alleviate any risk to its purported interests, while avoiding the significant prejudice to AstraZeneca that would result from allowing DCMC to intervene—and thereby upend the parties' bargained-for schedule—at this stage of proceedings.

"While Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties in others' lawsuits, the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Shelton v. Kennedy Funding, Inc.*, No. 02-cv-632, 2009 WL 1890579, at *2 (E.D. Ark. June 30, 2009) (Wilson, J.) (quoting *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999)).

## I.    DCMC's Motion to Intervene Is Untimely

A party may intervene in a case, whether as of right or permissively, only if its request is made by "timely motion." Fed. R. Civ. P. 24(a), (b)(1). "The issue of the timeliness of a motion to intervene is a threshold issue," *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010), and a finding "that the [would-be intervenor's] motion was untimely is

sufficient to dispose of" an intervention request. *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995).

> In considering the timeliness of a motion to intervene, a court must consider:
>
> (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.

*American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011). While "no one factor is dispositive," and the court must "consider all of the circumstances," *id.* at 1094 n.4, here *all* of the relevant factors support the conclusion that DCMC's motion is untimely.

**First**, the litigation had significantly progressed by the time of DCMC's motion. The State had answered the Complaint, *see* ECF No. 11; AstraZeneca had filed an Amended Complaint, *see* ECF No. 25; and a Rule 12 motion had been filed and resolved, *see* ECF Nos. 21, 26. The parties had also negotiated a detailed discovery schedule, which this Court so-ordered, and discovery has proceeded apace under the schedule—including several deadlines that had passed before DCMC filed its motion. *See* ECF No. 18 at 1 (identifying discovery deadlines). Thus, contrary to DCMC's unsubstantiated assertion, this case is not "in its infancy." ECF No. 31 at 2. To the contrary, courts have found significant progression of the litigation under comparable circumstances. *See, e.g.*, *Tarek ibn Ziyad Acad.*, 643 F.3d at 1094 (litigation had substantially progressed where parties "had already engaged in extensive motion practice, commenced written discovery, and begun taking depositions"); *Looney v. Chesapeake Energy Corp.*, No. 2:15-cv-02108, 2016 WL 7638467, at *2 (W.D. Ark. Sept. 23, 2016) (motion to intervene untimely where the case had "been fiercely litigated" and the motion was filed "just weeks prior" to a key deadline); *In re Scott by Simmons v. United States*, No. 4:10cv1578, 2011 WL 13366300, at *2 (E.D. Mo. Oct. 3, 2011) (same, where

9

months had passed since the case began and the court had already resolved a motion to dismiss, held a Rule 16 conference, and scheduled a trial date, discovery, and motion deadlines); *contra WaterLegacy v. EPA*, 300 F.R.D. 332, 343 (D. Minn. 2014) (finding motion was timely because "the parties ha[d] engaged in no discovery or motion practice").

**Second**, DCMC has long known about this suit. This factor "weighs heavily against" intervention "where proposed intervenors did not show they lacked 'knowledge of the suit during its pendency which would justify the delay in filing their motion.'" *United Food & Com. Workers Union v. USDA*, 36 F.4th 777, 781–82 (quoting *Nevilles v. EEOC*, 511 F.2d 303, 306 (8th Cir. 1975)). Here, DCMC does not dispute that it has long been aware of AstraZeneca's suit. In fact, the same counsel representing DCMC here had represented the intervenor in *PhRMA v. McClain*.

**Third**, DCMC has not provided an "adequate explanation" for its delay in seeking to intervene *Tarek ibn Ziyad Acad.*, 643 F.3d at 1094. Courts reject explanations from would-be intervenors that are "unpersuasive." *United Food & Com. Workers Union*, 36 F.4th at 781. And here, DCMC does not even *attempt* to explain—much less to justify—its nearly five-month delay.

**Fourth**, DCMC's delayed attempt to intervene is prejudicial. "[E]ven absent any prejudice, [a] district court [i]s free to conclude that given the progress of the litigation, the [would-be intervenor's] knowledge of it, and [its] failure to adequately explain the delay, the motion was untimely." *Tarek ibn Ziyad Acad.*, 643 F.3d at 1095. Those factors are sufficient here too. But permitting DCMC to join the litigation at this late juncture would also cause significant prejudice.

At the outset of this litigation, the parties conferred about scheduling. AstraZeneca explained to Defendant the need to expedite the case schedule; and AstraZeneca suggested that, to avoid the need to seek a preliminary injunction or other extraordinary relief, the parties might negotiate an expedited discovery schedule that would leave the parties able to start summary judgment briefing by the end of September 2024. Counsel for Defendant agreed with

AstraZeneca's proposed path for resolving the litigation, and the parties jointly proposed—and this Court has ordered—an expedited discovery schedule.

Progress through that schedule is ongoing, with substantial party discovery having been completed, including a Rule 30(b)(6) deposition of Defendant. Discovery is set to close next month, with merits briefing to begin shortly thereafter. The entrance of an intervenor at this juncture would disrupt the steady progress of this litigation and deny AstraZeneca the benefit of the expedited discovery schedule for which it negotiated in lieu of seeking emergency relief. *See id.* at 1094 (intervention "would prejudice the existing parties" who have already begun "motion practice [and] commenced written discovery"). DCMC asserts that if permitted to intervene, it "will comply with the final scheduling order and any briefing schedule." Mem. at 22. But several of the scheduling order's deadlines have *already* passed. Indeed, if permitted to intervene, DCMC says it would also move to dismiss, *see* Proposed Mot. to Dismiss by DCMC (ECF No. 30-3)—introducing significant additional delay (and associated prejudice) *four months* after Defendant already answered the complaint, ECF No. 11.

Conversely, DCMC would suffer no prejudice from denial of its intervention request, because it can file an amicus brief making any argument that it would have made as a party. *See Ark. Elec. Energy v. Middle S. Energy, Inc.*, 772 F.2d 401, 404 (8th Cir. 1985) (finding no prejudice from denial of intervention request where would-be intervenors "were allowed to file briefs as amicus before the district court"). Granting DCMC permission to participate as an amicus would accordingly serve DCMC's interests without injuring AstraZeneca's. *See Ritchie*, 620 F.3d at 834 (affirming denial of intervention motion as untimely because denying it "would not significantly prejudice [proposed intervenor], while granting it would significantly prejudice the other parties").

## II.    DCMC Cannot Meet the Standard for Mandatory Intervention

Rule 24(a) governs intervention of right, with Rule 24(a)(2) providing that a court must permit intervention to a party who "(1) files a timely motion to intervene; (2) 'claims an interest relating to the property or transaction that is the subject of the action'; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) (quoting Fed. R. Civ. P. 24(a)(2)). As explained, DCMC's motion to intervene is *not* timely, and should be denied for that reason alone. But DCMC does not satisfy any of Rule 24(a)(2)'s other requirements either.

### A.    DCMC Does Not Have a Significantly Protectable Interest

Under Rule 24(a)(2), a proposed intervenor must have "an interest relating to the property or transaction that is the subject of the action." But it is not enough to claim *any* interest; the interest must be "significantly protectable," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), which the Eighth Circuit has interpreted to mean "legally protectable," *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009). The rule thus requires more than a "generalized interest" that is "undifferentiated" from other members of the public. *Dalton v. Barrett*, No. 2:17-cv-4057, 2019 WL 3069856, at *4 (W.D. Mo. July 12, 2019), *vacated as moot sub. nom.*, *Church v. Missouri*, 2020 WL 8255313 (8th Cir. July 8, 2020). "General economic interests are not protectable and cannot serve as the basis for intervention." *Metro. St. Louis*, 569 F.3d at 839.

DCMC asserts that it "has a direct and substantial interest in the outcome of this litigation because Section 23-92-604(c) protects its right to enter into contract pharmacy arrangements to order 340B drugs." Mem. at 15. But DCMC does not allege that AstraZeneca's contract pharmacy policy has any effect on DCMC's "right to enter into contract pharmacy arrangements." (It does not.) Nor does DCMC claim that it or its patients have lost access to AstraZeneca's drugs. (They

12

have not.) DCMC misleadingly states that AstraZeneca is "prevent[ing] distribution of 340B drugs purchased by DCMC for dispensation at contract pharmacies." Mem. at 16. But DCMC does not claim—and cannot claim—that it has been *denied access* to any of AstraZeneca drugs, which remain available for acquisition by every pharmacy in the State.

Instead, DCMC's real complaint is that it has lost out on "340B savings"—that is, on the extra profit captured from 340B-discounted sales when the drugs are later re-sold at full price. DCMC's claims in aggregate to have "lost $121,000 in 340B savings." Mantz Decl. ¶ 15 (ECF No. 30-2). But DCMC does not trace that injury to AstraZeneca. As it readily admits, "at least thirty-six other drug manufacturers impose restrictions on obtaining 340B drugs at contract pharmacies." *Id.*; *see* Mem. at 7. DCMC conspicuously does not specify whether the supposed $121,000 in lost savings is the result of AstraZeneca's policy *specifically*, or instead is an aggregate of *all* of the lost "340B savings" caused by dozens of manufacturers' policies—many of which are substantially different from AstraZeneca's.

In any event, DCMC at most has a "[g]eneral economic interest" in the outcome of this suit, *Metro. St. Louis*, 569 F.3d at 839, but "an economic stake in the outcome of an action is not sufficient to demonstrate a 'significantly protectable interest,'" *Curry*, 167 F.3d at 423 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)); *see id.* at 422 ("The Movants merely have asserted an economic interest, maintaining the quantum of their funding, in the outcome of this litigation. The Movants' economic interest in upholding the current fee system simply does not rise to the level of a legally protectable interest necessary for mandatory intervention."); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) ("An economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory intervention."); *B&B Hardware, Inc. v. Fastenal Co.*, No. 10-cv-317, 2011 WL 1540445, at *1 (E.D. Ark. Apr. 22, 2011) (Wilson, J.) (same).

DCMC's interest in defending Act 1103 also is not specific to DCMC, which shares that interest not only with Defendant—the proper defendant in this suit—but with the many covered entities and contract pharmacies who stand to benefit financially from the Act. These entities all share the same "[g]eneral economic interest" in their desired statutory interpretation. *Metro. St. Louis*, 569 F.3d at 839; *see Athens Lumber Co., Inc. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982) ("[Union intervenor's] alleged interest is shared with all unions and all citizens concerned about the ramifications of direct corporate expenditures. Because this interest is so generalized it will not support a claim for intervention of right."). If DCMC were entitled to intervene *as of right* in this lawsuit, so too would every other covered entity or contract pharmacy in Arkansas (or trade group representing them). Rule 24(a)(2) requires more.

### B.    Denial of DCMC's Request Will Not Impair Its Interests

For similar reasons, DCMC cannot show that it has any protectable interest in this lawsuit that will be impaired if it is not a party. *See Metro. St. Louis*, 569 F.3d at 840. Nevertheless, AstraZeneca would not object to DCMC participating as an amicus curiae, which would ensure that its views are put before the Court and would thus alleviate any conceivable risk to its purported interests. *See Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 26 (S.D. W. Va. 2015) ("[T]he impairment prong is not met if the would-be intervenor could adequately protect its interests in the action by participating as amicus curiae.").

### C.    Defendant Is Adequately Defending Act 1103 in this Litigation

DCMC cannot overcome the strong presumption that Defendant is adequately representing its interest in defending the constitutionality of Act 1103. "A party generally need only make a minimal showing that representation may be inadequate to be entitled to intervene on that basis, but the burden is greater if the named party is a government entity that represents interests common to the public." *Little Rock Sch. Dist. v. Northern Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir.

14

2004) (cleaned up). "Adequacy of representation can be assumed when the defendant is an arm or agency of the government, [which is] presumed to represent the interests of its citizens as *parens patriae*, or 'parent of the country.'" *Edwards v. Beck*, No. 4:13-cv-224, 2013 WL 12146739, at *3 (E.D. Ark. June 6, 2013) (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). For that reason, "when one of the parties is an arm or agency of the government, and the case concerns a matter of 'sovereign interest,' the bar [for intervention] is raised, because in such cases the government is 'presumed to represent the interests of all its citizens.'" *Mausolf*, 85 F.3d at 1303 (quoting *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993)) (cleaned up).

This presumption of adequacy "may be rebutted," but only "when a would-be intervenor makes a *strong showing* of inadequate representation." *Id.* (emphasis added); *see Little Rock Sch. Dist.*, 378 F.3d at 780 ("we require the party seeking to intervene to make a *strong showing* of inadequate representation") (emphasis added); 7C Wright & Miller, *Federal Practice and Procedure* § 1909 (3d ed. June 2024 update) ("The *rare cases* in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a *very strong showing* of inadequate representation has been made.") (emphases added). To make this strong showing, "purely conjectural conflicts that potentially might arise" are insufficient. *South Dakota ex rel. Barnett v. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003). Instead, the would-be intervenor must show that "its interests actually differ from or conflict with the government's interests." *Id.*

DCMC has not come close to making such a "strong showing" here. There is no doubt that Defendant is eminently qualified to defend state law. Nor has DCMC provided any specific explanation as to why Defendant is unable to protect its interests in upholding Act 1103. Insofar as DCMC seeks to intervene in order to assert (meritless) legal defenses that Defendant has chosen

*not* to assert on its own behalf, *see* Proposed Mot. to Dismiss by DCMC (ECF No. 30-3), that "difference of opinion concerning litigation strategy . . . does not overcome the presumption of adequate representation." *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) (quoting *Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir.1996)).

Instead of identifying any actual conflict with Defendant, DCMC merely asserts that "its interests, which are economic, differ from Defendant's broad interest in protecting the constitutionality of Act 1103 and its ability to enforce that law." Mem. at 18. But courts routinely reject attempts to intervene on the basis of such vague assertions—especially "in actions involving a state or a local government, which is presumed to adequately represent the interests of its citizens." 7C Wright & Miller § 1909 (footnotes omitted); *see McLean v. State of Ark.*, 663 F.2d 47, 48 (8th Cir. 1981) (per curiam) (strong showing of inadequacy not made where governmental defendant "will properly defend the validity of" a challenged law); *see, e.g.*, 7C Wright & Miller § 1909 nn.28 & 29 (citing numerous cases).

For instance, in *Curry v. Regents of the University of Minnesota*, "five students filed a complaint against the Regents of the University of Minnesota alleging violations of their constitutional rights to the extent that their Student Services Fees are used to fund campus organizations engaging in ideological or political advocacy with which the plaintiffs disagree[d]," and they specifically "listed three organizations that the plaintiffs specifically objected to funding through this mandatory fee system." 167 F.3d at 421. The three organizations then sought to intervene to defend the University's policy, arguing that the suit "directly threaten[ed] their . . . right to undiminished funding." *Id.* (quotation marks omitted). The district court denied both intervention as of right and permissive intervention, holding (among other things) that "they had not shown that the University would not adequately represent their interests." *Id.*

16

The Eighth Circuit affirmed. It explained that the three organizations could not show "that the University w[ould] inadequately represent their interests" merely because their interest derived from economic motivations, while the University's interest did not:

> The Movants characterize their interest as a concern that they will lose funding, which in turn may lessen their expressive activities, while characterizing the University as merely interested in upholding the current fee system. The Movants potentially may lose funding, however, only if the fee system is not upheld. Thus, although the Movants' motives may be distinguishable from the University's, the Movants' and the University's interests are the same: both want the current fee system upheld.

*Id.* at 423. The same reasoning applies here. DCMC argues that it potentially "may lose funding" if Act 1103 "is not upheld," whereas Defendant is "merely interested in upholding the [law]." *Id.* But while DCMC's "*motives* may be distinguishable from" Defendant's, their "*interests* are the same: both want the [law] upheld." *Id.* (emphases added). Indeed, DCMC's basis for seeking intervention here is substantially *weaker* than that of the student groups in *Curry*: There, in addition to their "economic" motivation, the groups asserted a constitutional "speech" interest that the University "d[id] not share." *Id.* And yet the Eighth Circuit still held that "the University's interest in defending the mandatory student fee system that has been created to support student organizations encompasses the Movants' asserted interests." *Id.*

Finally, DCMC states that it "can provide the Court with the unique perspective of community-based 340B entities," by explaining how access to 340B drugs works and "provid[ing] the Court with the perspective of Arkansas-based 340B covered entities that depend on contract pharmacies." Mem. at 20. But providing that type of "perspective" is precisely the job of an amicus curiae, who provides the Court with helpful information or a unique perspective that the parties to the litigation may not be able to provide. DCMC thus properly "could participate as amic[us] curiae." *Curry*, 167 F.3d at 421.

17

### III.    DCMC Cannot Meet the Standard for Permissive Intervention

DCMC's motion for permissive intervention fares no better, for many of the same reasons, pp. 8–17, *supra*. Under Rule 24(b)(1)(B), the Court may, in its discretion, grant permissive intervention to nonparty who "has a claim or defense that shares with the main action a common question of law or fact." But "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c). The decision whether to grant permissive intervention is "wholly discretionary," and "even [if] there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Barnett*, 317 F.3d at 787.

To start, as with a motion for intervention as of right, a motion for permissive intervention must be timely. For the same reasons discussed above, pp. 8–11, this motion is not. *See Med. Liab. Mut. Ins.*, 485 F.3d at 1009 (upholding denial of motion for permissive intervention filed "only shortly before the discovery deadline"). In light of the parties' bargained-for schedule; the deadlines that have already passed; and the approaching discovery cutoff, DCMC's elevation to party status would significantly delay the litigation and prejudice AstraZeneca. *See* pp. 10–11, *supra*.

Nor does DCMC satisfy the other criteria for permissive intervention. DCMC rests its case for permissive intervention on "shar[ing] with the main action a common question of law or fact." Mem. at 21. But DCMC has not identified any defense that is *distinct* from those that Defendant is able to raise itself. Instead, it identifies only a "common question of law," namely, "whether [Act 1103] is lawful." *Id.* DCMC's general interest in how the Court interprets Act 1103—shared in common not only with Defendant, but also with all other covered entities and contract pharmacies (not to mention drug manufacturers)—is not the type of "claim or defense" that justifies intervention under Rule 24(b). *See Curry*, 167 F.3d 423 (would-be intervenor's defense

18

of law on same grounds as governmental defendant is not "question of law or fact common to the questions presented by the existing action" that would justify "[p]ermissive intervention"). And even if it were, DCMC has not explained why it would be "unique[ly]" situated to raise it. *Hodes & Nauser, MDs, P.A. v. Moser*, No. 2:11-cv-02365, 2011 WL 4553061, at \*4 (D. Kan. Sept. 29, 2011).

That failure is fatal to DCMC's attempt at permissive intervention. Under Rule 24(b)(1)(B), "defenses [that] are not unique" to the proposed intervenor and "can be adequately represented by [the named] defendants" do not justify permissive intervention; otherwise, "numerous third-parties [could] seek intervention on the same bases." *Id.*; *see, e.g., McLean*, 663 F.2d at 48 ("The District Court did not abuse its discretion in denying permissive intervention" where "the Attorney General of Arkansas will properly defend the validity of [challenged law]"); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472–73 (5th Cir. 1984) (en banc) (similar); *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996) (similar); *see also Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141–42 (1944) (permitting a "multitude" of interventions in a case "of large public interest . . . may result in accumulating proofs and arguments without assisting the court").

Rather than grant party status to DCMC—despite its being identically situated to numerous other covered entities and contract pharmacies—the more appropriate course would be to permit it to participate as an amicus curiae. That approach would allow consideration of DCMC's views, while minimizing any disruption to the bargained-for schedule that this Court has approved and to the expedited proceedings already well underway. DCMC identifies no respect in which amicus status would leave it worse off or less capable of protecting its interests.

## CONCLUSION

The Court should deny the motion to intervene.

19

Dated: August 1, 2024          Respectfully submitted,

**ELDRIDGE BROOKS, PLLC**

Conner Eldridge, Ark. Bar No. 2003155
Emily A. Neal, Ark. Bar No. 2003087
ELDRIDGE BROOKS, PLLC
5115 West JB Hunt Drive, Suite 500
Rogers, AR 72758
(479) 553-7678 telephone
(479) 553-7553 facsimile
conner@eldridgebrooks.com
emily@eldridgebrooks.com

AND

Allon Kedem*
Jeffrey L. Handwerker*
Stephen K. Wirth*
Samuel I. Ferenc*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000 telephone
(202) 942-5999 facsimile
allon.kedem@arnoldporter.com
jeffrey.handwerker@arnoldporter.com
stephen.wirth@arnoldporter.com
sam.ferenc@arnoldporter.com

Carmela T. Romeo*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000 telephone
(212) 836-8689 facsimile
carmela.romeo@arnoldporter.com

*Admitted pro hac vice*

*Attorneys for Plaintiff AstraZeneca Pharmaceuticals LP*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of June 2024, the foregoing document was filed electronically with the Clerk of Court by use of the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing and is available for viewing and downloading from the ECF system.


Dated: August 1, 2024

Conner Eldridge