**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 0 2 2024

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

ASTRAZENECA PHARMACEUTICALS
LP,

        Plaintiff,

v.

ALAN MCCLAIN, in his official capacity as
Commissioner of the Arkansas Insurance
Department

        Defendant.

Case No.: 4:24-cv-00268-BRW

**RESPONDENTS COMMUNITY CLINIC, EAST ARKANSAS
FHC, RIVER VALLEY PC, MAINLINE, AND HARPS'S BRIEF IN SUPPORT AND
RESPONSE TO PLAINTIFF ASTRAZENECA'S MOTION TO COMPEL**

## I. INTRODUCTION

   In its effort to challenge this Court's previous rulings upholding Arkansas's 340B Drug

Pricing Nondiscrimination Act ("Act 1103"), Plaintiff AstraZeneca Pharmaceuticals, LP

("AstraZeneca" or "Plaintiff") issued subpoenas requesting expansive information and deposition

testimony to five non-parties, including four Arkansas covered entities[1] and a pharmacy

("Respondents"). Respondents collectively move this Court for relief from AstraZeneca's

discovery requests and oppose its motion to compel.

---

[1] A "covered entity" under the 340B program, 42 U.S.C. § 256b(a)(1), is a safety-net health care
provider permitted to receive discount pricing from drug manufacturers under the 340B program
created to protect providers caring for low-income patients from escalating drug prices. *See* Dale
Ellis, "Drugmaker sues Arkansas over pharmacy pricing law despite federal court siding with
state," Arkansas   Democrat   Gazette   (April   6,   2024),   available   at
https://www.arkansasonline.com/news/2024/apr/06/drugmaker-sues-arkansas-over-pharmacy-
pricing-law/.

The Court should deny the pending motion and grant Respondents' motion to quash AstraZeneca's discovery requests because the subpoenas: (1) compel production of documents and testimony more than 100 miles from where they were issued; (2) violate the Court's (and parties') agreed scheduling order; and (3) create an undue burden on Respondents. The requests are unduly burdensome because they seek information outside the scope of discovery; are interposed for an improper purpose; seek confidential commercial information; and require that Respondents invest substantial time, money, and other resources to collect and review information that AstraZeneca is not entitled to or already possesses.

AstraZeneca's subpoenas to Respondents serve no purpose in this case. Those requests for information—documents, communication, and testimony related to the agency relationship between covered entities and contract pharmacies, title of drugs distributed, and the speculative assumptions about the state's interests—are propounded to undermine previous rulings and avoid established administrative remedies. The Court should not permit AstraZeneca's discovery at the expense of Respondents. And the Court should stay the depositions requested until resolution of this motion, quash the subpoenas in their entirety, and deny AstraZeneca's motion to compel.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A.    340B Program, Act 1103, and Litigation Challenging Act 1103.

In part, the 340B drug pricing program ("340B program") extends discounted prices from drug manufacturers to local public and not-for-profit facilities that provide medical care to the poor as a condition of the manufacturer's drugs being covered under the Medicare and Medicaid programs. *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1141 (8th Cir. 2024) (citing *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 115, 131 S. Ct. 1342, 1346 (2011)); *see also* 42 U.S.C. § 256b(a)(4). Drug manufacturers participate in the program voluntarily, as a condition of their drugs being covered under the Medicare and Medicaid

programs. For policy and practical reasons, the Health Resources and Services Administration ("HRSA"), the administrator of the 340B program, has permitted covered entities to contract with an unlimited number of outside pharmacies, referred to as "contract pharmacies," for the dispensation of 340B drugs. *Pharm. Rsch. & Manufacturers of Am.*, 95 F.4th at 1139. Although AstraZeneca and other manufacturers historically honored these contract pharmacy arrangements, starting in 2020, drug manufacturers, including AstraZeneca, adopted policies to limit the number of contract pharmacy arrangements that they would recognize.[2]

In response, in 2021, the Arkansas General Assembly passed Act 1103. Ark. Code Ann. §§ 23-92-601 to 606. Act 1103 requires manufacturers to ship drugs that have been discounted under the 340B program to any pharmacy with which a covered entity has a contract pharmacy arrangement. Pharmaceutical Research and Manufacturers of America ("PhRMA"), a drug company trade association, sued the Arkansas Insurance Commissioner (who is charged with enforcing Act 1103) to block the law, arguing that the 340B program preempted Act 1103. But this Court and the Eighth Circuit rejected this challenge and held that the federal 340B statute does not preempt Act 1103. *Pharm. Rsch. & Manufacturers of Am.*, 95 F.4th at 1146. PhRMA represented many drug manufacturers, including AstraZeneca, at the time that the suit was initiated and this Court issued its decision.

**B.    AstraZeneca Sues To Challenge Act 1103 and The Factual Premises That It Alleges the Eighth Circuit Relied On In Its Decision.**

In this case, AstraZeneca sues the Arkansas Insurance Commissioner ("AID") to challenge Act 1103 again, alleging that the 340B program and federal patent law preempt Act 1103 and that

---

[2] *See* HRSA Letter to AstraZeneca regarding Covered Entities (May 17, 2021) available at https://www.hrsa.gov/sites/default/files/hrsa/opa/hrsa-letter-astrazeneca-covered-entities.pdf; AstraZeneca, Notice to Covered Entities Regarding 340B Pricing Eligibility (August 2020), available at https://www.amerisourcebergen.com/-/media/assets/amerisourcebergen/340b/manf-letters/astrazeneca_notice_to_covered_entities_regarding_340b_pricing_eligibility.pdf.

Act 1103 violates the Contracts and Takings Clauses of the U.S. Constitution. (Dkt. No. 25.) Before any third party requested intervention in the case, AstraZeneca and the AID agreed to a short, limited discovery period. On May 9, 2024, those parties filed a joint motion for the entry of an agreed scheduling order (Dkt. No. 16.), which the Court granted on May 10, 2024 (Dkt. No. 18). Under the order, the deadline for serving third-party subpoenas was May 29, 2024. *Id.* ("The deadline for parties to serve third-party subpoenas, seeking the production of documents or depositions pursuant to Federal Rule of Civil Procedure 45, is **Wednesday, May 29, 2024**.").

On June 17, 2024, AID moved for judgment on the pleadings as to count four of the complaint, which alleged that Act 1103 is preempted by the 340B program. (Dkt. Nos. 21, 22.) On July 12, 2024, AstraZeneca submitted an amended Complaint dropping count four. (Dkt. No. 25.) On July 18, 2024, Dallas County Medical Center, a 340B covered entity located in Fordyce, Arkansas, filed a motion to intervene with supporting documents, including a motion to dismiss. (Dkt. Nos. 30, 31.)

**C.    AstraZeneca Issues Sweeping Discovery Requests to Nonparty Respondents.**

AstraZeneca has issued ten subpoenas to Respondents, which are non-parties to this case: St. Francis House NWA, Inc. D/B/A Community Clinic ("Community Clinic"); East Arkansas Family Health Center, Inc. ("East Arkansas FHC"), River Valley Primary Care ("River Valley PC"), Mainline Health Systems, Inc. ("Mainline"), and Harps Food Stores ("Harps").[3] Harps operates a pharmacy, which acts as a contract pharmacy for covered entities under the 340B program, and each of the other Respondents is a covered entity. The subpoenas that AstraZeneca issued to Respondents are virtually identical (with exceptions discussed below) and include 10

---

[3] Plaintiff refers to Respondent Harps Food Stores as "Harp's" throughout its motion to compel. (Dkt. No. 27). Respondent Harps affirmatively states that "Harps" is the correct spelling.

document requests. (Exhibits 1 to 5, Declaration of Stephen K. Wirth, Dkt. No. 28.)[4] The document

subpoenas request:

1. All documents and communications related to:
   a. any agreement between movant, a covered entity, and a contract pharmacist;
   b. the covered entity retaining title to 340B drugs;
   c. the covered entity's agency relationship with contract pharmacies;
   d. the covered entity's use of a Third-Party Administrator ("TPA") for participation in the Section 340B program; and
   e. the covered entity's policies, practices, and procedures related to:
      i. contract pharmacies;
      ii. duplicate discounts and diversion of 340B drugs; and
      iii. acquisition, distribution, or sale of 340B drugs; and
2. All contracts or agreements related to any contract pharmacy arrangement in force from January 2020 to present.

*Id.* The subpoenas for deposition testimony request testimony related to these same categories of

information (agency, title) related to contract pharmacy arrangements and the entity's knowledge,

involvement, and participation in the 340B program. *Id.* The subpoenas issued to Harps are

materially the same as the covered entity subpoenas but (a) substitute the words "contract

pharmacy" for "covered entity" in document request nos. 5-6 and deposition topics 1 and 2 and

(b) do not request information about TPAs (document request number 10 and deposition topic

number 2 subparagraph g of the covered entity subpoenas). (Exhibit 5, Decl. Wirth, Dkt. No. 28.)

While the scheduling order set "[t]he deadline for parties to serve third-party subpoenas,

seeking the production of documents or depositions pursuant to Federal Rule of Civil Procedure

45, [for] Wednesday, May 29, 2024[,]" AstraZeneca concedes that it did not comply with this

deadline and instead served the subpoenas on the following dates:

---

[4] All exhibits to the Declaration of Stephen K. Wirth, (Dkt. No. 28.), are referred to as attached to Plaintiff's Motion to Compel.

| Entity | Date |
|---|---|
| Community Clinic and Harps | May 30 |
| River Valley PC | May 31 |
| East Arkansas FHC | June 8 |
| Mainline | June 20 |

(Dkt. No. 27, p.3 n.1.) Respondents served objections to the subpoenas on June 13, 2024. (Exhibit 8, Decl. Wirth, Dkt. No. 28.)[5] AstraZeneca responded on June 19, requesting a meet and confer conference and seeking to justify all discovery requested in the subpoenas served. (Exhibit 9, Decl. Wirth, Dkt. No. 28.)

AstraZeneca and Respondents discussed the subpoenas on June 27, July 8, and July 16. On July 16, four days after AstraZeneca amended its complaint, Respondents informed AstraZeneca that they had learned that a covered entity planned to request to intervene in the action and to seek dismissal of the case under Rule 12. While AstraZeneca asserts that it has exchanged substantial discovery with AID, Respondents are under the impression that no documentary evidence has been exchanged with AID other than the Complaint provided by Community Clinic. Based on AstraZeneca's recent amended complaint and the imminent request for intervention by a covered entity, Respondents informed AstraZeneca that they stood by their objections and were willing to continue negotiations, but suggested that, in the interest of efficiency, it would be best to suspend activity on this issue until the Court decided on the intervention and any threshold defects of AstraZeneca's claims. Two days later, AstraZeneca informed Respondents that it would move to compel production under the subpoenas as issued. Thirteen minutes later, AstraZeneca filed its memorandum in support of a motion to compel (Dkt. No. 27.), and shortly after, AstraZeneca served its memorandum on Respondents.

---

[5] Respondents preserve and do not waive their objections regarding attorney client privilege Fed. R. Evid. 502, and attorney work product. Fed. R. Civ. P. 26(b)(3)(A).

## III.  STANDARD

"On timely motion, the court . . . must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A); *see also Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, No. 4:21-CV-01239-LPR, 2022 WL 300917, at *5 (E.D. Ark. Jan. 31, 2022). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). [C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). "Nonparties are afforded 'special protection against the time and expense of complying with subpoenas.'" *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927 (quoting *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir.1994)); *see also Banks v. Moore*, No. 4:20-CV-00182 KGB, 2020 WL 7702171, at *2 (E.D. Ark. Dec. 28, 2020).

When considering whether a subpoena violates Rule 45's "undue burden" prohibition, courts account for the scope of discovery permitted by Rule 26. *Jordan v. Comm'r, Miss. Dep't of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020). And "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26, advisory committee's notes to 2015 amendment).

On appeal, discovery rulings are reviewed for abuse of discretion. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015). The review "is 'both narrow and deferential,' and

7

'[r]elief will be granted on the basis of erroneous discovery rulings only where the errors amount to a gross abuse of discretion resulting in fundamental unfairness.'" *Vallejo*, 903 F.3d 733 at 742 (quoting *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360 (8th Cir. 2003)).

## IV.  ARGUMENT

This Court should quash the subpoenas issued to Respondents for several reasons. First, the requests seek production of discovery more than 100 miles from where the requests were issued. Second, the subpoenas are untimely under the agreed scheduling order. Third, the requests subject Respondents to undue burden. Specifically, subpoenas are unduly burdensome because the subpoenas (a) seek information that is neither relevant nor proportional to the needs of this case and outside the scope of discovery; (b) are interposed for an improper purpose; (c) seek confidential commercial information; and (d) subject Respondents to burdensome collection, review, and production of information AstraZeneca is not entitled to or already possesses.

**A.    The Subpoenas Compel Production of Documents Outside of 100 miles From the Area In Which Mainline, East Arkansas FHC, and River Valley PC Regularly Transact Business.**

"[A] subpoena may [only] command . . . production of documents, electronically stored information, or tangible things at a place within *100 miles* of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A) (emphasis added).

AstraZeneca's subpoenas command production of documents beyond the geographical limitation under Fed. R. Civ. P. 45(c)(2)(A). The subpoenas issued by AstraZeneca command the production of documents at its counsel's office, 5115 West JB Hunt Drive, Rogers, Arkansas 72758.[6] But Mainline, East Arkansas FHC, and River Valley PC are each located more than 100

---

[6] To the extent AstraZeneca similarly commands production of deposition testimony at this location, Respondents object. *See also Marziale v. Correct Care Solutions LLC*, 5:18-cv-86-DPM, *1 (E.D. Ark. Jun. 25, 2021) (noting that Rule 43(a)'s provision permitting remote testimony does not nullify the geographic limitations set in Rule 45(c)).

miles away from Rogers. Mainline is located in Monticello (approximately 300 miles away), East Arkansas FHC is located in West Memphis (approximately 330 miles away), and River Valley PC is located in Ratcliff (approximately 104 miles away). AstraZeneca improperly commands the production of documents outside the 100 mile limitation set forth in Fed. R. Civ. P. 45(c)(2)(A), and the Court should quash AstraZeneca's request for production of documents as to Mainline, East Arkansas FHC, and River Valley PC.

**B.** **The Subpoenas Should Be Quashed Because AstraZeneca Violated the Deadlines Set In The Final Scheduling Order.**

Fed. R. Civ. P. 16(b) addresses a district court's issuance and modification of pretrial scheduling orders. Fed. R. Civ. P. 16(b)(1) ("Except in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order[.]"). The scheduling order issued by the district court "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions," Fed. R. Civ. P. 16(b)(3)(A), and "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Civ. P. 16(d) (stating that a pretrial order "controls the course of the action unless the court modifies it"); *Hopman v. Union Pac. R.R.*, No. 4:18-CV-00074-KGB, 2020 WL 5740539, at *2 (E.D. Ark. Sept. 24, 2020) (applying the Eighth Circuit's good cause test to determine the party's compliance with the court's order requirements). "[R]ule 45 subpoenas constitute discovery and are therefore governed by the discovery deadlines set forth in a scheduling order." *Cave v. Thurston*, No. 4:18-cv-00342-KGB, 2022 WL 4599408, *11 (E.D. Ark. September 30, 2022) (quashing late discovery requests served on non-parties). "A 'district court has broad discretion in establishing and enforcing the deadlines.'" *Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (*quoting Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

"To establish good cause, a party must show its diligence in attempting to meet the [district court's] order." *Marmo*, 457 F.3d at 759; *see also Pryor v. Union Pac. R.R. Co.*, No. 4:19-CV-00233 JM, 2020 WL 5834248, at *2 (E.D. Ark. Sept. 30, 2020) ("Without a showing of diligence, the Court's inquiry ends."); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008) (finding that the district court erred in applying the good cause standard when modifying the scheduling order because the "[defendant] was anything but diligent in complying with the scheduling order."). On appeal, "reversal is not mandated unless the error 'affect[s] a substantial right of the objecting party.'" *Sherman*, 532 F.3d at 718 (8th Cir. 2008) (*quoting Crane v. Crest Tankers, Inc.*, 47 F.3d 292, 296 (8th Cir. 1995)).

AstraZeneca's discovery requests were not timely. The final scheduling order agreed to by the parties required AstraZeneca to serve third-party subpoenas on or before May 29, 2024. (Dkt. No. 18.)[7] AstraZeneca served the subpoenas to Respondents *after* May 29. (Dkt. No. 27, n.1.) Further, although Rule 16(b)(4) allows modification of a scheduling order for good cause, a good cause exception may only be made if the party seeking the modification showed due diligence in attempting to meet the order. *Marmo*, 457 F.3d at 759. AstraZeneca has not moved to change the scheduling order, nor can it meet the good cause standard. It served the subpoenas after the deadline, with the latest not served until three weeks after the deadline agreed to by the parties.

---

[7] "[The Rules] allow the parties to expedite discovery . . . [T]o tee up the merits issues for the Court's consideration in a timely manner, the parties jointly propose . . . [that] The deadline for parties to serve third-party subpoenas, seeking the production of documents or depositions pursuant to [Rule] 45, is . . . May 29, 2024. . . Such an order will serve the interest of justice, promote judicial economy, and conserve party and third-party resources by enabling the parties to efficiently identify and litigate the core issues before this Court." (Dkt. No. 16.) Of course, the Parties never consulted Respondents, and Respondents never agreed that any discovery was necessary in this case.

The subpoenas violate the court's scheduling order under Rule 16, and the Court should not permit AstraZeneca's discovery requests for that reason alone.

AstraZeneca argues that Respondents cannot object to the subpoenas as untimely because (1) Respondents are not parties to the litigation or scheduling order; and (2) the order permits unlimited non-party discovery until the discovery cut off. AstraZeneca is wrong. First, nothing prevents this Court from enforcing its order, and AstraZeneca provides no support otherwise. Second, AstraZeneca did not comply with the plain meaning of the order. The order set a deadline "for parties to *serve* third-party subpoenas." (Dkt No. 27, p. 13.) AstraZeneca giving notice to AID of or "tendering for service" those subpoenas neither substantively nor temporally meets that requirement. Third, the general discovery deadline relates to the exchange of information between parties not contemplated in the order. The scheduling order expressly limits discovery to non-parties. While parties may seek "additional" discovery (Dkt. No. 18, p. 2.), "additional" means in addition to that expressly contemplated (see specific categories of discovery enumerated). And that provision contemplates an exchange of information between *the parties* and thus requires "the parties . . . to discuss in good faith schedule modifications to extend the current schedule." (Dkt. No. 18, p. 2.)

AstraZeneca violated the very discovery limitations it moved this Court to set, and the Court may enforce the terms of the discovery order.

**C.    The Court Should Quash the Subpoenas Because They Subject Respondents to Undue Burden.**

*1.    The Requests Seek Information Outside the Scope of Discovery Because the Information is not relevant or proportional to the needs of the case.*

"While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules . . . . Thus, a subpoena issued on Rule 45

should be quashed to the extent it seeks irrelevant information." *Jordan*, 947 F.3d at 1329; *see also Smoot Constr. of Washington, D.C. v. Smoot Corp.*, No. 2:22-CV-1707, 2023 WL 7128680, at *2 (S.D. Ohio Oct. 30, 2023) (reasoning that "the requesting party . . . must establish the relevance of the documents sought by the subpoena" under Rule 26); *MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018) (applying Rule 26's proportionality factors to assess whether a non-party subpoena issued pursuant to Rule 45 sought information within the proper scope of discovery); *Walker v. H & M Henner & Mauritz, LP*, 16 Civ. 3818, 2016 WL 4742334 (S.D.N.Y. Sept. 12, 2016) (quashing subpoenas to non-party witnesses for failure to meet proportionality requirements). "When Rule 26(b)(1) was amended in 2015, the proportionality factors were restored 'to their original place in defining the scope of discovery.'" *Ariel Dan Barkai v. Detective Robert Neuendorf*, No. 21 CIV. 4060 (KMK) (JCM), 2024 WL 3236825, at *2 (S.D.N.Y. June 26, 2024) (citing Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes to 2015 Amendments). "[T]he amended rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Id.* (internal citations and quotations omitted).[8]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[8] Plaintiff relies on caselaw decided under Rule 26 prior to the 2015 Amendment which, as discussed above, was designed to discourage discovery overuse. But even that prior rule required a showing of relevance. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (finding discovery sought was *not* relevant and noting that "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case").

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Adv. Comm. Notes to 2015 Amendments to FRCP 26; *see also Vallejo v. Amgen, Inc.*, 903 F3d 733, 742 (8th Cir. 2018).

Even if the discovery were relevant (it is not), proportionality must be considered, including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Pro. 26(b)(1).[9] Relevancy is *not* broadened by the Rule's observation that "materials need not be admissible in order to be discoverable." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes to 2015 Amendments ("The phrase ['reasonably calculated'] has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the . . . phrase to define the scope of discovery "might swallow any other limitation

---

[9] Further, Rule 26(c)(1) allows a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015) (granting protective order when plaintiff sent dozens of untimely requests that were frivolously designed to annoy and burden defendant); *see also Taylor v. Little Rock Police Dep't*, No. 23-2414, 2023 WL 8271213, at *1 (8th Cir. Nov. 30, 2023). "[D]istrict courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Miscellaneous Docket Matter No. 1*, 197 F.3d at 926 (quoting *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635 (1979)). *See also Frazier v. Graves*, 4:20-cv-00434-KGB, 34 (E.D. Ark. Sep. 30, 2021) (internal quotations and citations omitted) ("The party or person seeking a protective order bears the burden of making a 'good cause' showing that the information being sought falls within the scope of Rule 26(c) and that the party will be harmed by its disclosure. 'Good cause' exists, according to Rule 26(c), when justice requires the protection of 'a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense. The party requesting a protective order must make a specific demonstration of facts in support of the request, as opposed to conclusory or speculative statements about the need for a protective order, and the harm which will be suffered without one. This requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts. Courts have imposed a balancing test in determining whether good cause has been shown. Such determination includes a consideration of the relative hardship to the non-moving party should the protective order be granted.").

on the scope of discovery. . . . The 'reasonably calculated' phrase has continued to create problems, however, and is removed by these amendments. . . . Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.").

a.    *The Amended Complaint Is Barred By Threshold Issues.*

Dallas County Medical Center, a covered entity, has sought intervention in this case and permission to file a threshold motion to dismiss on standing and subject matter jurisdiction. (Dkt. No. 30, proposed motion to dismiss.) Until the Court decides whether it may hear Plaintiff's amended complaint, it should not permit AstraZeneca to impose any burden on Respondents.[10] Intervenor has also notified the Court and parties that it will defend AstraZeneca's complaint on several other grounds, including because it lacks a legal basis. (Dkt. No. 30, proposed answer.) Because the amended complaint should be dismissed entirely, no discovery is necessary, and at a minimum any order compelling discovery is premature and should be stayed until after those motions and any other threshold defenses that may be raised are decided.

b.    *Decisions By This Court and The Eighth Circuit Bar Plaintiff's Federal Patent Claim.*

The issues raised in the Amended Complaint were previously decided by this Court, and the claims are barred by that prior ruling. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S. Ct. 921, 925 (1998); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980). Specifically, claim 1 seeks declaratory and injunctive relief that Act 1103 is preempted by federal patent law. But this Court and the Eighth Circuit have already confirmed that Act 1103 is *not* preempted by federal law. *Pharm. Rsch. & Manufacturers of Am.*, 95 F. 4th at 1146. [11] Moreover,

---

[10] Respondents agree and adopt those arguments herein. Fed. R. Civ. P. 10(c).
[11] While AstraZeneca may argue it is no longer a member of the plaintiff Pharmaceutical Research and Manufacturers of America ("PhARMA"), it was a member throughout that previous case. PhARMA filed its complaint in that case on September 29, 2021, this court issued its decision on December 12, 2022, and the appellate docket opened on December 30, 2022. AstraZeneca was a

AstraZeneca was in privity to the trade association in that litigation because it was a member at the time that the complaint was filed and this Court issued its decision.

AstraZeneca's original complaint conceded that the question it raised in count 4—whether Act 1103 is preempted by the 340B program—was decided by the Eighth Circuit.[12] Although AstraZeneca's amendment dropped count 4, its remaining federal patent-law claim suffers the same defect. For example, AstraZeneca's claim that Act 1103 is preempted by federal patent law is premised on the same theory as its previous count 4. AstraZeneca stubbornly asserts that Act 1103 regulates pricing. (Dkt. No. 25, ¶¶ 56, 70.)[13] But, as discussed below, whether Act 1103 regulates pricing or distribution is a matter of statutory interpretation previously decided by this Court and the Eighth Circuit. *Pharm. Rsch. & Manufacturers of Am.*, 95 F.4th at 1145 ("Act 1103

---

member of PhARMA until July 2023. Maggie Fick, AstraZeneca to leave leading U.S. drug lobby group, Reuters (May 16, 2023), available at https://www.reuters.com/business/healthcare-pharmaceuticals/astrazeneca-leave-leading-us-drug-lobby-group-2023-05-16/ ("AstraZeneca . . . has decided to leave the main U.S. drug lobby group, the Pharmaceutical Research and Manufacturers of America (PhRMA), and pursue other ways of engaging in advocacy at the state and federal level, the company said. . . PhRMA said in a separate emailed statement that AstraZeneca had decided not to renew its membership for the second half of 2023.").

[12] First, AstraZeneca acknowledges that the issue was previously decided. (Dkt. No. 25, ¶¶ 5-8, 61-63, 71-72.) No doubt anticipating this Court's surprise to see the claim reasserted, AstraZeneca also stipulated that Count 4 is irrelevant to this litigation and included only for purposes of issue preservation. (Dkt. No. 25, ¶ 5 ("AstraZeneca. . . does not rely here on claims asserted in that litigation (other than to preserve them). Instead, Plaintiff argues that Act 1103 cannot validly be enforced against Plaintiff for three separate and independent reasons.")). AstraZeneca also concedes that the issues of title and agency are only related (if at all) to Count 4. (Dkt. No. 25, ¶¶ 61-63 ("Central to the Eighth Circuit's ruling that Section 340B does not preempt Act 1103 were two factual assumption [sic] regarding the relationship between covered entities and contract pharmacies: first, that '[c]overed entities maintain title [sic] legal title to the 340B drugs' . . . and second, that a contract pharmacy acts as 'an agent of the covered entity'. . .") (quoting *Pharm. Rsch. & Manufacturers of Am.*, 95 F.4th at 1142)).)

[13] AstraZeneca's own guidance about its policy states that it relates to distribution. Rod Lauzon, Executive Director, Contract Operations, AstraZeneca, Letter to Covered Entity (July 3, 2023), available at https://340besp.com/AstraZeneca%20-%20340B%20Covered%20Entity%20 Letter.pdf (("In support of a smooth transition to our new distribution model . . . . If you have questions regarding the change in our 340B distribution model . . .").

does not require manufacturers to provide 340B pricing discounts to contract pharmacies. Act 1103 does not set or enforce discount pricing."). And to the extent legal or factual issues underpinned that decision, they were conclusively decided. Accordingly, discovery as to title and agency is outside the scope of AstraZeneca's claims and is not relevant to this case.[14]

Because this Court has already decided whether Act 1103 is preempted by federal law, the Court should foreclose discovery on title, agency, and any other issue that AstraZeneca argues relates to those questions.

        c.      *No Discovery Is Necessary For Any of AstraZeneca's Claims Because the Court May Decide Each Claim As a Matter of Law.*

Discovery is not relevant to this case because AstraZeneca's amended complaint seeks declaratory judgments only on issues of law: whether Act 1103 is unconstitutional because, allegedly, it is preempted by federal patent law, violates the Contracts Clause, or is an unlawful taking.

For example, Plaintiff's first claim asks the Court whether Act 1103 is preempted by federal patent law. (Dkt. No. 25, ¶¶ 90-93). Similarly, Count 3 asks the Court whether Act 1103 violates the Takings Clause of the U.S. Constitution and the Takings Clause of the Arkansas Constitution. AstraZeneca's amended complaint concedes these counts pose only issues of statutory interpretation: (1) whether Act 1103's requirement that manufacturers distribute 340B

---

[14] Even if AstraZeneca's true purpose is to challenge this Court's and the Eighth Circuit's decisions on preemption, issues of title and agency were not critical to those decisions. Those opinions are thorough and well-reasoned authority that stands independent of any facts AstraZeneca argues are relevant to preemption. Respondents disagree that agency and title were central to the Eighth Circuit's holding or that arguments raised in that litigation or this case rest on factual questions. Plaintiff is attacking the contract pharmacy model that has been explicitly accepted by HRSA, the federal agency that administers the 340B program. If plaintiff believes the model is flawed, it can audit covered entities using contract pharmacies and file a petition with HRSA seeking recovery by invoking its rights under the 340B administrative dispute resolution (ADR) process.

drugs to unlimited contract pharmacies is preempted by federal patent law, (Dkt. No. 25, ¶ 92), and (b) whether Act 1103 forces manufacturers to transfer their prescription drugs to contract pharmacies and covered entities at below-market prices in violation of the Takings Clauses. (Dkt. No. 25, ¶¶ 102-03). Similarly, Count 2 asks whether Act 1103 violates the Contracts Clause of the U.S. Constitution. Yet Plaintiff admits the contract related to this claim is a uniform agreement between drug manufacturers and the federal government—not covered entities. (Dkt. No. 25, ¶¶ 74-76) ("Act 1103 substantially impairs a contractual relationship. As explained above, the 340B program operates through contracts, which are called pharmaceutical pricing agreements (PPAs). PPAs are 'uniform agreements that recite the responsibilities § 340B imposes . . . on drug manufacturers and the Secretary of HHS.'") (citation omitted)). And any interpretation of Act 1103 is also a question of law. *See* Ark. Code Ann. §§ 23-92-601 to 606; (Dkt. No. 25, ¶¶ 46-56; Dkt. No. 11, ¶¶ 46-56.).

Tellingly, the parties to the previous litigation challenging Act 1103 stipulated that no discovery was necessary to adjudicate the issue of preemption. *Pharm. Rsch. & Manufacturers of Am. v. McClain*, Case No. 4:21-cv-00864-BRW, 26(f) Report, Dkt. No. 13 (E.D. Ark. January 18, 2022) ("The parties have agreed that the preemption claim is purely legal in nature, requires no factual discovery, and, if successful, may render unnessesary [sic] the Court's consideration of the constitutional Commerce Clause claim.").

AstraZeneca argues it needs discovery about whether Arkansas patients receive any benefit from contract pharmacy arrangements, presumably because it anticipates that the state will argue that Act 1103 is lawful because the state historically regulates in the areas of drug distribution and public good. First, whether Act 1103 regulates distribution or pricing is a (previously decided) question of statutory interpretation. Second, AstraZeneca has not made a prima facie showing of

impairment or taking, and discovery on the state's justification (which have not yet been asserted) are premature. A court may deny discovery when a plaintiff's assertions are "speculative and conclusory." *Bishop v. Amneal Pharms. Pvt. Ltd.*, No. 8:22CV11, 2022 WL 4000544, at *10 (D. Neb. Sept. 1, 2022) (denying jurisdictional discovery when plaintiff failed to cite facts to support a reasonable inference of her claims). For example, there was no taking because manufacturers do not have to participate in the 340B program, Act 1103 does not affect property rights, and even if it did, the subject property is not protected by the takings clause. *See Boehringer Ingelheim Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*, No. 3:23-CV-01103 (MPS), 2024 WL 3292657, at *15 (D. Conn. July 3, 2024) (rejecting the petitioner's Takings Clause argument because its "participation in Medicare and Medicaid is voluntary" and "[t]he Fifth Amendment does not prevent the federal government from placing conditions on participation in those programs.").[15] Similarly, AstraZeneca cannot show substantial impairment of a contract because Act 1103 and the 340B program do not conflict. And AstraZeneca has not yet shifted the burden to the state to assert its justifications for Act 1103. The parties should be permitted to test each of these issues before any burden on a nonparty is justified.

> ### d.    *AstraZeneca's Arguments are Unavailing.*

AstraZeneca broadly seeks Respondents' agreements, documents (including policies and procedures), and communications regarding: (a) title to drugs; (b) agency relationship between covered entity or contract pharmacies; (c) use of TPAs[16]; (d) duplicate discounts and diversion;

---

[15] In reaching its decision, the district court relied upon decisions where Takings Clause challenges to the 340B Program were rejected. *Id.* at 13 ("Courts in other circuits have also rejected Takings Clause challenges to the 340B Drug Price Program, which conditions drug manufacturers' participation in Medicaid and Medicare Part B on their agreement to sell drugs at a discounted price to the Veterans Health Administration and certain non-profit hospitals, among other entities.").

[16] This category applies to covered entity Respondents only.

and (e) acquisition, distribution, or sale of 340B drugs. (Exhibits 1 to 5, Decl. Wirth, Dkt. No. 28.) In its brief in support of its motion to compel, AstraZeneca argues that it seeks information "regarding how 340B-discounted drugs are distributed by covered entities and contract pharmacies to patients in Arkansas, including "(1) whether covered entities maintain title to Section 340B-discounted drugs, (2) whether contract pharmacies act as agents of covered entities with respect to the sale or distribution of Section 340B discounted drugs in Arkansas, and (3) whether Arkansas patients receive any benefit from these contract pharmacy arrangements." (Brief, Dkt. No. 27, p. 4.)

AstraZeneca is not entitled to discovery from nonparty Respondents. Fundamentally, AstraZeneca's interpretation of the scope of discovery is wrong. As set forth above, the rules changed in 2015, and the Court should apply current standards, not the broad misinterpretation of relevancy AstraZeneca relies upon. *Supra*, Section C.1. Second, title and agency relate to whether covered entities comply with a federal statutory requirement that prohibits covered entities from transferring 340B drugs to individuals who are not patients of the covered entity. 42 U.S.C. § 256b(a)(5)(B). These requirements arise under federal law and have nothing to do with whether AstraZeneca's policy complies with Act 1103. Third, to the extent title, agency, or the government's justification for Act 1103 are more than legal conclusions or have factual underpinnings, as set forth above, that discovery is outside the scope of the Rules. The Amended Complaint should be dismissed as a matter of law because AstraZeneca lacks standing, Plaintiff fails to state a claim upon which relief may be granted, and the claims are barred by the Court's previous decision. *Supra*, Section C.2. And even if the claims survive scrutiny, this Court's decision is a matter of law only and will not require factual development. *Supra*, Section C.2.

19

\*\*\*

Because AstraZeneca has no basis to seek relief and no amount of discovery should be permitted, compelling Respondents to produce any information constitutes an undue burden. The Court should quash the subpoenas and protect nonparty Respondents from any obligations in this case.

## 2. *AstraZeneca Seeks Information For an Improper Purpose.*

While balancing competing interests under Rule 26(c), courts may consider whether the information sought is for an "improper purpose." *Miscellaneous Docket Matter No. 1*, 197 F.3d at 926 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3rd Cir.1994)). Here, Plaintiff lodged the requests and deposition topics for an improper purpose. Fed. R. Civ. P. 26(c). In addition to its collateral attack on binding precedent, Plaintiff is attacking the contract pharmacy model explicitly approved by HRSA, the federal agency that administers the 340B program. If AstraZeneca believes the model is flawed—for example, issues of title, agency, use of a TPA, duplicate discounts, diversion, or the acquisition, distribution, or sale of drugs—federal law permits it to audit covered entities using contract pharmacies and file a petition with HRSA seeking recovery by invoking its rights under the 340B administrative dispute resolution (ADR) process. 42 C.F.R §§ 10.3 to 10.25. The contract pharmacy model relies on a billing and shipping arrangement that providers and pharmacies have utilized for decades, before the 340B program even existed. The model can be, and is, used by providers and pharmacies outside the 340B program. *See, e.g.*, Fed. Trade Comm'n, University of Michigan Advisory Opinion Letter to Dykema Gossett (Apr. 9, 2010). A subpoena is an improper method for challenging a well-established mechanism within the U.S. drug market for delivering and dispensing prescription drugs both within and outside of the 340B program. This Court should grant the motion to quash.

### 3.    *AstraZeneca Seeks Confidential Commercial Information.*

Rule 45 further permits a district court to quash a subpoena when it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). "Where discovery of confidential commercial information is involved, the court must 'balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims.'" *Earth Sci. Lab'ys, Inc. v. Alpine Tech. Servs., LLC*, No. 5:22-CV-05003, 2022 WL 1196986, at *1 (W.D. Ark. Apr. 21, 2022) (entering protective order but permitting production). "Trade secrets and other confidential commercial information fall squarely within the ambit of Rule 26(c)." *Id.* Requests for confidential communication are more likely to be quashed. *See St. Jude Packaging & Specialties, Inc..*, No. 4:06-cv-01717-BRW, 2007 WL 9747257, at *1 (permitting discovery of confidential information but quashing requests for confidential communications).

The document requests and deposition topics seek confidential commercial information. Fed. R. Civ. P. 26(c)(1)(G). The information that AstraZeneca seeks, including communications, is sensitive, confidential, proprietary, and subject to binding confidentiality obligations. Each request could be interpreted to seek the dispensing fees that the covered entity Respondents pay to their contract pharmacies. Further, Request No. 2, and arguably each request, could be interpreted to request contracts that contain confidentiality provisions and documents that include proprietary information about the technology, processes, and systems of each contract pharmacy, covered entity, or TPA. Accordingly, the discovery requests are subject to the confidential commercial information protections of Rule 26(c), and this Court should grant the motion to quash.

4.     *The Discovery Requests Are Onerous and Create an Enormous Burden on Respondents That Outweighs Any Benefit, and AstraZeneca Already Possesses Some of the Information Requested.*

The document requests and deposition topics are onerous and create an enormous burden on Respondents that outweighs their benefit to AstraZeneca. Fed. R. Civ. P. 26(b)(1). Further, the document requests and deposition topics are overly broad and unduly burdensome. Fed. R. Civ. P. 26(c)(1)-(2); Fed. R. Civ. P. 45(d)(1), (d)(3). Responses involve production of voluminous documents, including communications, under an extensive Electronically Stored Information ("ESI") protocol requiring substantial resources and employee time. (See Exhibit 1, Decl. Wirth, Dkt. No. 28 pp. 13-16.) Additionally, Respondents must prepare a corporate representative to testify in its deposition. *See* Fed. R. Civ. P. 30(b)(6).  Yet the discovery is not relevant to the purely legal issues in the case.

Contract pharmacy agreements and TPA agreements also have confidentiality provisions requiring contractual partners to consent to share the agreements. The contractual partners, especially if they are large corporations, may investigate the matter and request more information relevant to the subpoenas. These contractual partners may also refuse to consent, and a Court order may be necessary to permit Respondents to produce information. All of this creates costs and an administrative burden for Respondents, four of which are community health centers that are already struggling with limited resources and the fifth of which is a regional grocery store. Given that the Requests are irrelevant, the burden far outweighs any benefit claimed by Plaintiff.

Further, as pleaded, AstraZeneca already possesses testimony and contracts related to the information it seeks. For example, the complaint describes testimony of a federal agency that oversees the 340B program. (Dkt. No. 25, ¶ 62.) HRSA has published contract pharmacy guidelines that details required contractual terms, "essential compliance elements," and sample 340B contract pharmacy agreements are accessible through a simple internet search. The

22

complaint also references publicly available information about contract pharmacies. (Dkt. No. 25, ¶ 63.) The information sought by Plaintiff in Request Nos. 1-10 is obtainable from other sources that are more convenient, less burdensome, less expensive, or equally available to Plaintiff, including the public domain. Furthermore, if AstraZeneca argues its requests are broad because it does not know what information Respondents may possess or that it is anticipating the state's justifications for Act 1103, speculation regarding what other contracts might exist or say is not a proper basis for third-party discovery. See *Clark v. Transamerica Life Insurance Company*, No. 4:09-cv-00877-GTE, 2010 WL 11646598, at \*2-4 (E.D. Ark. Aug. 30, 2010) (limiting discovery related to agreements plaintiff asserted could exist, despite more liberal standard under Rule 26 prior to 2015 rule change).

Thus, the substantial amount of effort required to respond, including producing internal communications, preparing a corporate representative, and document collection regarding Respondent's policies, contracts, and financial records, creates a burden that substantially exceeds its benefit. The Court may quash AstraZeneca's non-party discovery.

## V. CONCLUSION

The subpoenas to Respondents are improper because they compel production of documents and testimony more than 100 miles from where they were issued, violate the Court's and parties' agreed scheduling order, and create an undue burden on Respondents. The requests are burdensome because they seek information outside the scope of discovery that is neither relevant to nor proportional to the needs of the case, are interposed for an improper purpose, seek confidential commercial information, and require that Respondents invest substantial time, money, and other resources to collect, review, and produce information that AstraZeneca is not entitled to or already possesses. Respondents respectfully request that this Court stay Respondents depositions until this motion is decided, grant the motion to quash subpoenas issued by

23

AstraZeneca Pharmaceuticals, LP, direct that Respondents are not required to respond to AstraZeneca's subpoenas for document production and deposition testimony, deny Plaintiff's motion to compel, and grant all other relief to which Respondents are entitled.

Respectfully submitted,

KUTAK ROCK LLP

/s/

Jess Askew, III, Ark. Bar No. 86005
Ashley W. Hudson, Ark. Bar No. 2007136
Frederick H. Davis, Ark. Bar No. 2012271
124 West Capitol Avenue, Suite 2000
Little Rock, AR 72201
(501) 975-3000 (Telephone)
(501) 975-3001 (Facsimile)
jess.askew@kutakrock.com
ashley.hudson@kutakrock.com
frederick.davis@kutakrock.com

Ronald S. Connelly, D.C. Bar No. 488298 (pro hac vice)
Fernando Montoya, D.C. Bar No. 90007361
Hannah Hauer, D.C. Bar No. 90008945
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave NW, Floor 8
Washington DC 20036
(202) 466-6550 (Telephone)
Ron.Connelly@PowersLaw.com

*Attorneys for Respondents St. Francis House NWA, Inc. D/B/A Community Clinic, East Arkansas Family Health Center, Inc., River Valley Primary Care, Mainline Health Systems, Inc., and Harps Food Stores*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2024, I served this document by electronic mail to all counsel of record as follows:

**ELDRIDGE BROOKS, PLLC**

Conner Eldridge, Ark. Bar No. 2003155
Emily A. Neal, Ark. Bar No. 2003087
ELDRIDGE BROOKS, PLLC
5115 West JB Hunt Drive, Suite 500
Rogers, AR 72758
(479) 553-7678 telephone
(479) 553-7553 facsimile
conner@eldridgebrooks.com
Emily@elridgebrooks.com

AND

Allon Kedem*
Jeffrey L. Handwerker*
Stephen K. Wirth*
Samuel I. Ferenc*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000 telephone
(202) 942-5999 facsimile
Allon.kedem@arnoldporter.com
Jeffrey.handwerker@arnoldporter.com
Stephen.wirth@arnoldporter.com
Sam.ferenc@arnoldporter.com

*Attorneys for Plaintiff AstraZeneca Pharmaceuticals, LP*
*Admitted pro hac vice*