IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP<br><br>*Plaintiff*,<br><br>–v–<br><br>ALAN MCCLAIN, in his official capacity as Commissioner of the Arkansas Insurance Department<br><br>*Defendant*. | Case No. 4:24-cv-268-BRW |

**DALLAS COUNTY MEDICAL CENTER'S REPLY
IN SUPPORT OF ITS MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.     DCMC's Motion to Intervene Was Timely ............................................................... 1

    II.    DCMC Satisfies the Standard for Mandatory Intervention ..................................... 3

          A.    DCMC Has a Significant Protectable Interest ............................................ 3

          B.    DCMC's Interests Will Be Impaired by An Unfavorable Outcome ........... 4

          C.    DCMC's Interests Are Not Adequately Protected by the Commissioner... 5

    III.   DCMC Satisfies the Standard for Permissive Intervention ..................................... 6

CONCLUSION ...................................................................................................................... 7

**INTRODUCTION**

Contrary to the contentions of AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "Plaintiff"), Dallas County Medical Center ("DCMC") satisfies all requirements for intervention as of right. DCMC's motion to intervene is timely, intervention will not result in undue delay, nor will it prejudice AstraZeneca. DCMC has demonstrated that it has an interest in the outcome of this litigation and that it may be harmed if Act 1103 is invalid. The Commissioner of the Arkansas Insurance Department ("Commissioner") does not adequately represent DCMC's interests and, in fact, the Commissioner has demonstrated that its interests diverge from those of 340B covered entities. Alternatively, this Court should permit DCMC to intervene under the discretionary standard of permissive intervention.

**ARGUMENT**

**I.   DCMC's Motion to Intervene Was Timely**

AstraZeneca failed to show that DCMC's motion to intervene was untimely, and the case law that it cites does not support its argument. AZ Opp'n 8-11, ECF No. 37. Considering "all the circumstances" and the Eighth's Circuit liberal construction of the timeliness standard, DCMC's motion to intervene was timely. *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (quoting *Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 998 (8th Cir. 1993)).

First, none of the cases cited by AstraZeneca that denied motions to intervene as untimely reflect "comparable circumstances," as contended by AstraZeneca. AZ Opp'n 8. For example, those cases involved significantly longer time periods before intervention was sought and the litigation had already progressed substantially. *See ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094-95 (8th Cir. 2011) (proposed intervenors filed their motion to intervene fourteen months after the complaint, more than a month after the deadline to add parties and introduced

1

new legal theories); *Looney v. Chesapeake Energy Corp.*, No. 2:15-cv-02108, 2016 WL 7638467, at *2 (W.D. Ark. Sept. 23, 2016) (the case had "been fiercely litigated for more than *three years*") (emphasis added); *In re Scott ex rel. Simmons v. United States*, No. 4:10-cv-1578, 2011 WL 13366300, at *2-3 (E.D. Mo. Oct. 3, 2011) (motions to intervene filed approximately ten months after complaint).  In contrast, DCMC moved to intervene less than four months after AstraZeneca's initial complaint and six days after AstraZeneca filed its amended complaint.  Moreover, discovery motions are still pending. St. Francis Mot. Quash, ECF No. 38. DCMC will meet all deadlines applicable to the Commissioner in the Court's scheduling order.  Final Scheduling Order, ECF No. 18.  The facts here are clearly distinguishable from the facts in the cases cited by Plaintiff.

     Second, DCMC has not "long known about this suit." AZ Opp'n 10.  AstraZeneca points to counsel's representation of another intervenor in a separate case as evidence of this contention, but this fact proves nothing.  *In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017) (counsel's knowledge of case before potential intervenor became a client is not relevant).  DCMC did not engage below counsel until June 2024.

     Third, AstraZeneca incorrectly contends that DCMC waited "nearly" five months to move to intervene (AZ Opp'n 10).  AstraZeneca sued AID on March 25, 2024.  DCMC moved to intervene on July 18, 2024, only three months and 24 days later.  A less than four-month timeline between a complaint and request for intervention supports a finding of timely intervention. *Union Elec. Co.*, 64 F.3d at 1159.  Moreover, AstraZeneca amended its complaint on July 12, 2024, just six days before DCMC requested intervention.

     Fourth, AstraZeneca contends that it will suffer prejudice if DCMA is allowed to intervene because it would "disrupt the steady progress of this litigation and deny AstraZeneca

2

the benefit of the expedited discovery schedule . . . ." AZ Opp'n 11.  But, even assuming any discovery is necessary, AstraZeneca has not shown any need for an expedited discovery schedule.  AstraZeneca admits that it sought agreement for an expedited discovery schedule in lieu of seeking "a preliminary injunction or other extraordinary relief." AZ Opp'n 6.  AstraZeneca cannot use its insistence on expedited discovery to argue for denial of intervention.  Moreover, dispositive motions are not due in this case until September 30, 2024, and, therefore, intervention will not hinder the progress of this case.  Final Scheduling Order, ECF No. 18.

## II.     DCMC Satisfies the Standard for Mandatory Intervention

Federal Rule of Civil Procedure 24 governs the standards for granting intervention. Fed. R. Civ. P. 24.  The Eighth Circuit construes Rule 24 liberally and "resolve[s] all doubts in favor of the proposed intervenors." *Union Elec. Co.*, 64 F.3d at 1158.  As discussed below, DCMC meets the three requirements of Rule 24 for mandatory intervention.

### A.     DCMC Has a Significant Protectable Interest

An intervenor's interest in litigation is to be construed broadly to include all parties affected by the litigation, if practicable.  *Id.* at 1162 (quoting *SEC v. Flight Transp. Corp.,* 699 F.2d 943, 949 (8th Cir. 1983) ("The interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (internal quotation marks omitted)).  AstraZeneca's claim that DCMC does not have a substantial interest in the litigation are incorrect.

First, AstraZeneca's arguments that DCMC is not harmed by AstraZeneca's contract pharmacy policy are misplaced.  AZ Opp'n 12-13.  DCMC's net revenue in 2023 was only $130,000.  Mot. Intervene Ex. 2 ¶ 8.  It has lost $121,000 in 340B savings from purchases of AstraZeneca drugs since AstraZeneca implemented its contract pharmacy restrictions. *Id.* ¶ 15.

3

AstraZeneca's policy, therefore, nearly negated DCMC's 2023 net revenues. Moreover, AstraZeneca has not sued to halt enforcement of Act 1103 solely against AstraZeneca, but as to all manufacturers. *See* Compl. 29-30, ECF No. 1; Am. Compl.29. ECF No. 25. If DCMC were to lose all 340B savings, it would operate at a financial loss. Mot. Intervene Ex. 2 ¶ 9; DCMC Intervention Br. 12-13.

Second, DCMC's interest is more than a "general economic interest." AZ Opp'n 12-13. DCMC seeks to uphold Act 1103 to help protect its mission to "improve the health and wellness of those [it] serve[s]."[1] *Granville House v. HHS,* 715 F.2d 1292, 1297 (8th Cir. 1983) (Intervenor is injured "by having to withdraw from its primary mission.") (internal quotations omitted). If AstraZeneca were to prevail in this lawsuit, DCMC may have to cut services, see fewer patients and even cease to operate as an inpatient hospital. Mot. Intervene Ex. 2 ¶ 9. In any event, this Court has previously found that proposed intervenors in substantially similar circumstances as DCMC demonstrated significant and protectable interests to support mandatory intervention. Order at 6, *PhRMA v. McClain*, 4:21-cv-00864 (E.D. Ark. May 3, 2022), ECF No. 22 ("Intervenors have demonstrated recognizable economic interests" and their "interests . . . are sufficiently direct, substantial, and legally protectable to allow them to intervene in this case.").[2]

### B. DCMC's Interests Will Be Impaired by An Unfavorable Outcome

While DCMC need only show that its interests may be impaired, an unfavorable outcome to this litigation will undoubtedly impair DCMC's interests. DCMC Intervention Br. 17-18.

---

[1] *Mission Statement*, Dallas Cnty. Med. Ctr., https://www.dallascountymedicalcenter.com/getpage.php?name=mission&sub=About%20Us (last visited July 16, 2024).
[2] AstraZeneca attempts to distinguish this Court's ruling on a motion to intervene in *PhRMA v. McClain*'s by pointing out PhRMA did not oppose the motion to intervene. AZ Opp'n 2. This difference is irrelevant. As AstraZeneca concedes, a party's opposition to intervention is not a factor considered by the Eighth Circuit to determine whether to grant intervention. AZ Opp'n 12, 18.

4

*Union Elec. Co.*, 64 F.3d at 1162 (intervenor need only show that the outcome of the case 'may' impair their interests) (emphasis in original) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.,* 738 F.2d 82, 84 (8th Cir. 1984)). Contrary to AstraZeneca's assertion, participation as amicus curiae will not protect DCMC's interests. AZ Opp'n 14. In any case, intervention as of right is required if all intervention factors are met, despite an opportunity to participate as amicus curiae. *Mausolf v. Babbitt*, 85 F.3d 1295, 1302, 1304 (8th Cir. 1996).

    **C.**    **DCMC's Interests Are Not Adequately Protected by the Commissioner**

DCMC meets the "minimal" burden of showing that its interests are not adequately represented by the Commissioner. *Mille Lacs*, 989 F.2d at 1001. AstraZeneca argues that this court must presume that DCMC has adequate representation because it is seeking intervention on the side of the Commissioner, a government entity. AZ Opp'n 14-17. But the Supreme Court applies no such presumption. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 537-38 (1972); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195-98 (2022) (questioning validity of presumption and declining to apply it).

The presumption of adequate representation is rebutted if the government waives enforcement of regulations. *See Mausolf*, 85 F.3d at 1303-04 (the government did not adequately represent intervenor, in part, because the Government has waived regulations against the restricted actions at issue). Thus far, the Commissioner has not finalized any enforcement actions against drug manufacturers, including AstraZeneca, for violating Act 1103. After the drug manufacturer Novo Nordisk filed a lawsuit challenging Act 1103, the Commissioner agreed to waive enforcement of Act 1103 against Novo Nordisk. Joint Mot. Stay, *Novo Nordisk, Inc. v. McClain*, ¶ 10, No. 4:23-cv-969 (E.D. Ark. Dec. 22, 2023), ECF No. 25 ("AID has agreed to suspend and cease any and all enforcement proceedings against Novo under Act 1103…."). Recently, in a lawsuit filed by Sanofi to challenge Act 1103, AID agreed to stay enforcement of

5

Act 1103 against Sanofi until this case is resolved. Joint Mot. Stay, *Sanofi-Aventis U.S. LLC v. McClain*, 4:24-cv-00609 (E.D. Ark. July 26, 2024), ECF No. 8. The Commissioner's waiver of enforcement of Act 1103 rebuts any presumption of adequate representation.

The presumption of adequate representation by a government agency is rebutted if the proposed intervenor's interests "are not shared by the general citizenry." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004); *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997); *see also Pete's Brewing Co. v. Whitehead*, 163 F.3d 602, *2 (8th Cir. 1998) (presumption is applicable "[i]f the movant's *only* interest in the suit is shared with the public interest . . . .") (emphasis added). DCMC has specific, tangible interests in enforcement of Act 1103 to maintain delivery of 340B drugs to its contract pharmacies, while the Commissioner has a broad interest in protecting laws that impact the public health of Arkansas citizens. DCMC Intervention Br. 19-20; *supra* Section II.A. DCMC also has a significant interest in fulfilling its mission of providing services to its vulnerable patients. DCMC Intervention Br. 19. This Court recognized the distinction between the interests of covered entities and the Commissioner in *PhRMA v. McClain*: "Defendants have a broad interest in protecting the constitutionality of duly enacted state laws and the state's ability to enforce these laws, but Intervenors have a specific economic interest regarding Act 1103." Order 6-7, *PhRMA v. McClain*, 4:21-cv-00864 (E.D. Ark. May 3, 2022), ECF No. 22.

### III.    DCMC Satisfies the Standard for Permissive Intervention

The same factors discussed above support a grant of permissive intervention to DCMC. Fed. R. Civ. P. 24(b)(1). First, the cases that AstraZeneca cites to argue that DCMC's motion is untimely are distinguishable. *Ritchie Special Credit Invs., Ltd.*, 620 F.3d at 832. In those cases, the time periods between the filing of the complaint and motion to intervene were significantly longer than the time period in this case. *See supra,* Section I; *Med. Liab. v. Curtis*, 485 F.3d

6

1006, 1009 (8th Cir. 2007) (intervention requested more than a year after the action was filed).

The principal factor that courts consider in ruling on permissive intervention is "whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *See supra,* Section I*; Shelton v. Kennedy Funding, Inc.*, No. 4:02-cv-00632-WRW, 2009 WL 1890579, at *2 (E.D. Ark. June 30, 2009). DCMC is prepared to fully comply with the briefing schedule established by the Court. Final Scheduling Order, ECF No. 18.

Contrary to AstraZeneca's assertion, DCMC is not required to assert defenses distinct from the Commissioner to justify permissive intervention. AZ Opp'n 18-19. Instead, the case cited by Plaintiff stated: "Movants had not raised a question of law or fact common to the questions presented by the existing action, and . . . would interject collateral issues." *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999). In this case, DCMC presents questions of law and fact that are common to those already presented and will not interject collateral issues.

Permissive intervention should be granted if the movant is not adequately represented in the case. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc). The Commissioner does not adequately represent DCMC's interests in this case. *See supra* Section II.C. This fact makes DCMC uniquely situated for purposes of permissive intervention.

## **CONCLUSION**

DCMC respectfully requests that the Court grant its motion for intervention.

7

Dated: August 8, 2024

Frederick H. Davis, Ark. Bar No. 2012271
Jess Askew, III, Ark. Bar No. 86005
Ashley W. Hudson, Ark. Bar No. 2007136
KUTAK ROCK, LLP
124 West Capitol Avenue, Suite 2000
Little Rock, AR 72201
T: (501) 975-3000
F: (501) 975-3001
jess.askew@kutakrock.com
ashley.hudson@kutakrock.com
frederick.davis@kutakrock.com

Respectfully submitted,

Ronald S. Connelly, D.C. Bar No. 488298
Fernando Montoya, D.C. Bar No. 90007361*
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave NW, Eighth Floor
Washington DC 20036
T: (202) 466-6550
Ron.Connelly@PowersLaw.com

*application for pro hac vice forthcoming

*Counsel for Proposed Intervenor-Defendant Dallas County Medical Center*

8