IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ASTRAZENECA PHARMACEUTICALS LP                                                    PLAINTIFF

V.                              NO. 4:24-CV-00268-BRW

ALAN MCCLAIN, in his official capacity
as Commissioner of the Arkansas
Insurance Department                                                              DEFENDANT

DALLAS COUNTY MEDICAL CENTER                                                      INTERVENOR

## ORDER

Pending is Dallas County Medical Center's Motion to Intervene (Doc. No. 30). Plaintiff has responded and Intervenor has replied.[1] For the reasons stated below, the motion is GRANTED.

I.   BACKGROUND

The federal 340B drug program requires drug manufacturers to offer discounts on covered outpatient drugs to statutorily defined safety-net providers, referred to as "covered entities" as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B.[2] In May 2021, Act 1103 of 2021 ("Act 1103")[3] was signed into law by the Governor of Arkansas. It includes two provisions that require drug manufacturers to ship drugs discounted under the federal 340B drug pricing program to pharmacies under contract with Arkansas safety-net providers.[4]

---

[1] Doc. Nos. 37, 47.

[2] 42 U.S.C. § 256b(a)(l); 42 U.S.C. § 1396r-8(a)(l).

[3] Ark. Code Ann. §§ 23-92-601-06.

[4] Ark. Code Ann. § 23-92-604(c)(1)-(2).

Dallas County Medical Center ("DCMC") is a non-profit, government-funded hospital located in Fordyce, Arkansas. DCMC has been designated under the Medicare program as a critical access hospital ("CAH"). Based on its CAH status, DCMC participates as a covered entity under the 340B program. DCMC contends that it is a "safety-net provider" and "represents the interests of the law's intended beneficiaries."[5]

Plaintiff seeks an order declaring two provisions of Act 1103 that control 340B bill-to-ship to arrangements for covered entities and contract pharmacies located and doing business in Arkansas unconstitutional.[6] Intervenor asserts that it participates in the 340B Program and relies on these contract pharmacy arrangements.

Intervenor argues that it is entitled to intervene by right under Rule 24(a) because it has a significant economic interest in the continued viability of Act 1103 that could be impaired if Act 1103 is declared unconstitutional, and no party completely and adequately represents their interests. Alternatively, Intervenor argues it should be allowed permissive intervention under Rule 24(b) because it has defenses that share common questions of law and fact, and its intervention will not cause undue delay or prejudice to the parties.[7] Plaintiff opposes the intervention because it contends that DCMC's request is untimely and allowing it to intervene in this case would be prejudicial to Plaintiff.[8] Defendant has not responded and the time to do so has passed.

---

[5]Doc. No. 18, p. 9.

[6]Ark. Code Ann. § 23-92-604(c)(1)-(2).

[7]Doc. No. 18.

[8]Doc. No. 21.

## II.     APPLICABLE LAW

Rule 24 of the Federal Rules of Civil Procedure provides both for intervention as a matter of right and permissive intervention. Specifically, it provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) Permissive Intervention.
> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.[9]

"Rule 24 is construed liberally, and we resolve all doubts in favor of the proposed intervenors."[10] However, "[t]he decision to grant or deny a motion for permissive intervention is wholly discretionary."[11]

In the Eighth Circuit, a prospective intervenor must "establish Article III standing in addition to the requirements of Rule 24." The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability. First, the prospective intervenor "must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'"[12] Second, the prospective intervenor must establish "a causal connection between the injury and the conduct complained of"; in other

---

[9] Fed. R. Civ. P. 24.

[10] *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

[11] *S.D. ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

[12] *Nat'l Parks Conservation Ass'n v. U.S. Envtl. Prot. Agency*, 759 F.3d 969, 974 (8th Cir. 2014) (citations omitted).

words, the intervenor's alleged injury must be "fairly traceable to the defendant's conduct."[13] Third, the prospective intervenor must establish that "a favorable decision will likely redress the injury."[14]

## III. DISCUSSION

### A. Standing

Intervenor alleges that it has Article III standing because it is harmed by Plaintiff's efforts to limit distribution of 340B drugs to in-house pharmacies rather than contract pharmacies. DCMC obtains 340B discount drugs through a contract pharmacy arrangement. DCMC asserts Plaintiff has "obstructed the use of bill to/ship arrangements" used by it and its Arkansas contract pharmacies.[15] DCMC contends that Plaintiff's interference deprives it of the "savings and revenue it relies on to carry out its safety-net mission."[16]

Plaintiff's actions and policies are traceable to lost revenues generated through contract pharmacy arrangements allegedly suffered by the Intervenor. On this basis, Intervenor has satisfied the causation element of Article III standing to intervene. For those same reasons, Intervenor has shown redressability because the injury it alleges would be redressed by a judicial determination in its favor.

Accordingly, Intervenor has sufficiently alleged all three prongs of Article III standing—injury, causation, and redressability and has Article III standing to intervene in the present case.

---

[13]*Id.*

[14]*Id.*

[15]Doc. No. 31, p. 19.

[16]*Id.*

**B.     Factors for Intervention as a Matter of Right**

Rule 24(a)(2) allows a party to timely intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" the interest.[17]

### 1.     Timeliness

Intervenor filed its Motion to Intervene approximately four months after Plaintiff filed its complaint. A Final Scheduling Order has been entered in this case. Discovery closes on August 30, 2024, and dispositive motions are due on September 30, 2024. The case is set for a bench trial on April 15, 2025. Plaintiff asserts that the Intervenor's motion is untimely because it "upends" an accelerated scheduling order, which it and Defendant jointly submitted and I approved. However, there is little likelihood that Plaintiff will be prejudiced by Intervenor's entrance into the litigation at this stage of the case. Waiting three months and twenty-four days from the time the Complaint was filed is not too long. Additionally, Plaintiff amended its complaint six days before Intervenor filed its motion.

Plaintiff points to the expedited discovery schedule in this case as a reason to deny intervention. The expedited schedule was an agreed scheduling order submitted by the Plaintiff and Defendant. Intervenor was not a part of that agreement. Plaintiff has not identified any substantive prejudice to it, or why that schedule should limit Intervenor's ability to intervene in this case. Accordingly, the Motion to Intervene is timely.

---

[17]*United States v. Union Elec. Co.*, 64 F.3d 1152, 1158–61 (8th Cir.1995).

5

### 2.     Interest

A proposed intervenor must show "a recognized interest in the subject matter of the litigation."[18]  The demonstrated interest must be substantial, direct, and legally protectable.[19]  Plaintiff seeks to void Act 1103's 340B pricing mandate provisions.  Because Intervenor has demonstrated recognizable economic interests in the present lawsuit, its alleged interests, as detailed above, are sufficiently direct, substantial, and legally protectable to allow it to intervene in the case.

### 3.     Possible Impairment

A proposed intervenor must also show that its alleged interest is one that may be impaired by the results of the litigation.  For all the reasons discussed above, the present litigation has the potential to impair Intervenors' economic interests.  Accordingly, Intervenor has shown a sufficient possible impairment to its alleged interest to allow them to intervene.

### 4.     Inadequate Representation of Interest

Finally, a proposed intervenor seeking to intervene as a matter of right must show that its interest is not adequately protected by the existing parties. "This requirement is met by a minimal showing that representation 'may be' inadequate."[20]

The interest of the Intervenor in this case is obviously not aligned with the Plaintiff.  Intervenor points to the facts that Defendant has a broad interest in protecting the constitutionality of duly enacted state laws and the state's ability to enforce these laws, but Intervenor has a specific economic interest regarding Act 1103.  On this basis, Intervenor has

---

[18]*Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007).

[19]*Union Elec. Co.*, 64 F.3d at 1161.

[20]*Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995).

demonstrated that its interests are sufficiently disparate from the current Defendant so that its interests will not be adequately protected by the existing parties to this lawsuit.[21]

Accordingly, the Motion to Intervene in this case as of right is granted.

### C.      Permissive Intervention

I would grant the Motion to Intervene under Rule 24(b)(1)(B) as well. The decision whether to grant a motion to intervene under Rule 24(b) is "wholly discretionary."[22]  "The principle consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights."[23]

In its Proposed Answer, Intervenor alleges the common defenses and common facts with Defendant to the claims that Plaintiff raises in the Complaint. Therefore, I may allow it to intervene under Rule 24(b)(1)(B). As discussed above, Intervenor's economic interest and ability to perform its core mission may be impaired if they are not allowed to intervene. As noted above, some deadlines are approaching, but the trial is still almost eight months away assuming the case stays on schedule. Allowing Intervenor to intervene would not unduly delay this matter. Therefore, I would permit Intervenor to intervene under a theory of permissive intervention as well.

### Conclusion

For the reasons stated above, the Motion to Intervene (Doc. No. 30) is GRANTED. The Intervenor is directed to file their Answer within ten (10) days of the date of this Order.

---

[21]See *Id.* at 1308 ("[t]his requirement is met by a minimal showing that representation 'may be' inadequate").

[22]*S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

[23]*Id.*

IT IS SO ORDERED this 13th day of August, 2024.

                                                  BILLY ROY WILSON
                                        UNITED STATES DISTRICT JUDGE