**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ASTRAZENECA PHARMACEUTICALS LP**                                      **PLAINTIFF**

**V.**                              **NO. 4:24-CV-00268-BRW**

**ALAN MCCLAIN, in his official capacity
as Commissioner of the Arkansas
Insurance Department**                                                **DEFENDANT**

**DALLAS COUNTY MEDICAL CENTER**                                      **INTERVENOR**

## ORDER

Pending is Intervenor's Motion to Dismiss (Doc. No. 53).  Plaintiff has responded and Intervenor has replied.[1]  For the reasons stated below, the motion is DENIED.

**I.     BACKGROUND**

The federal 340B drug program requires drug manufacturers to offer discounts on covered outpatient drugs to safety-net providers, referred to as "covered entities" as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B.[2]  In May 2021, Act 1103 of 2021 ("Act 1103")[3] was signed into law by the Governor of Arkansas.  It includes two provisions that require drug manufacturers to ship drugs discounted under the federal 340B drug pricing program to pharmacies under contract with Arkansas safety-net providers.[4]  Plaintiff seeks an order declaring two provisions of Act 1103 unconstitutional.[5]

---

[1]Doc. Nos. 62, 68.

[2]42 U.S.C. § 256b(a)(l); 42 U.S.C. § 1396r-8(a)(l).

[3]Ark. Code Ann. §§ 23-92-601 *et seq.*

[4]Ark. Code Ann. § 23-92-604(c)(1)-(2).

[5]Ark. Code Ann. § 23-92-604(c)(1)-(2).

Intervenor is a nonprofit, government-funded hospital located in Fordyce, Arkansas. Intervenor has been designated under the Medicare program as a critical access hospital ("CAH"). Based on its CAH status, Intervenor participates as a covered entity under the 340B program. Intervenor uses contract pharmacy arrangements to provide discounted prescription drugs to its patients.

On July 19, 2024, Intervenor filed its motion to intervene, which I granted.[6]  On August 15, 2025, Intervenor filed a motion to dismiss.[7]

Intervenor argues the case should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Intervenor contends that Plaintiff lacks standing because it has not suffered an injury or changed its policies in response to Act 1103, and Defendant has not imposed sanctions on Plaintiff.  Additionally, Intervenor asserts this case is not ripe for judicial review because administrative proceedings are pending.

Plaintiff responds that it is regulated under Act 1103, so it has standing to challenge the statute because a credible threat exists that the statute will be enforced against it.  Plaintiff points to the fact that Defendant has alleged that its contract pharmacy policy violates the law and has scheduled a hearing on the matter.  Further, Plaintiff argues that the pending administrative hearing has no bearing on the constitutionality of Act 1103 and, therefore, has no impact on the ripeness of this case.  I agree.

## II.    APPLICABLE LAW

A motion to dismiss pursuant to Rule 12(b)(1) challenges subject matter jurisdiction and requires me to examine whether I have authority to decide the claims.  In deciding a motion under

---

[6]Doc. Nos. 30, 50.

[7]Doc. No. 53.

Rule 12(b)(1), I must first "distinguish between a 'facial attack' and a 'factual attack.'"[8]  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction."[9]  In other words, in a facial attack, I "determine whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff."[10]  In a factual attack, the court "inquires into and resolves factual disputes,"[11] and is free to "consider[ ] matters outside the pleadings."[12]  The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards."[13]

Plaintiff contends that, under the facts of this case, it does not matter whether I consider Intervenor's motion a facial or factual attack.  Intervenor asserts that I should consider the challenge a factual attack because it attached hearing notices with its motion to dismiss that were not specifically addressed in Plaintiff's Amended Complaint.  However, the Amended Complaint states that "Defendant McClain has recently indicated that state enforcement proceedings against AstraZeneca may be forthcoming."[14]  So, a potential enforcement hearing was clearly contemplated and alleged in the Amended Complaint, and is an allegation that the hearing notices

---

[8]*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

[9]*Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

[10]*Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).

[11]*Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

[12]*Osborn*, 918 F.2d at 729 n.6.

[13]*Id.*

[14]Doc. No. 25, p. 19.

support. Whether or not a specific notice or hearing date was mentioned in the Amended

Complaint is irrelevant.

This Rule 12(b)(1) motion is a facial attack on jurisdiction, so I give Plaintiff's Complaint

Rule 12(b)(6) protection by "accepting as true all facts alleged in the complaint."[15]

## III.    DISCUSSION

### A.    Standing

Intervenor moves to dismiss Plaintiff's complaint contending that it lacks standing to

maintain this lawsuit.  Plaintiff disagrees.

"Federal jurisdiction is limited by Article III of the Constitution to cases or controversies;

if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction."[16]  "The

'irreducible constitutional minimum of standing' is that a plaintiff show (1) an 'injury-in-fact'

that (2) is 'fairly . . . trace[able] to the challenged action of the defendant' and (3) is 'likely . . .

[to] be redressed by a favorable decision' in court."[17]  A plaintiff has suffered an injury-in-fact if

he has experienced "an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical."[18]

I have examined Act 1103 and its enforcement mechanisms, and accept the allegations in

Plaintiff's complaint as true. At this stage of the litigation, Plaintiff has standing to maintain its

claims.

---

[15] See *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010).

[16]*ABF Freight System, Inc. v. International Brotherhood of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).

[17]*Id.* (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[18]*Lujan*, 504 U.S. at 560 (cleaned up).

Since October 1, 2020, Plaintiff's contract pharmacy policy makes its products available at 340B-discounted rates to covered entities that maintain their own on-site dispensing pharmacy. For covered entities that do not maintain their own on-site dispensing pharmacy, Plaintiff delivers discounted drugs to a single contract pharmacy site for each covered entity.[19]

Act 1103 enacted Ark. Code Ann. § 23-92-604(c)(2), which provides:

[a] pharmaceutical manufacturer shall not . . . [d]eny or prohibit 340B drug pricing for an Arkansas-based community pharmacy that receives drugs purchased under a 340B drug pricing contract pharmacy arrangement with an entity authorized to participate in 340B drug pricing.[20]

Clearly, Plaintiff's policy of limiting availability of its discounted drugs to one contract pharmacy per covered entity is at odds with the Arkansas law.

On April 26, 2024, the Arkansas Insurance Department ("AID") issued a notice to Plaintiff alleging that it is not in compliance with Act 1103, and scheduled a public hearing for October 9, 2024 to adjudicate the allegations.[21]  Under the law, Plaintiff may be subject to fines and a cease-and-desist order preventing it from using its current 340B contract pharmacy policy in Arkansas.[22] Intervenor argues that, since Plaintiff has not altered its policy yet, and the potential fine of $50,000 per six months that Plaintiff is out of compliance is a "pittance," Plaintiff has suffered no harm.[23]  I am not convinced.  Defendant has the authority to enforce Act 1103 and is in the process of doing so.  Plaintiff is under an imminent threat of harm, traceable to the Defendant, that would likely be redressed by a favorable ruling in this case.  Accordingly, Plaintiff has standing.

---

[19]Doc. No. 25, p. 12.

[20]Ark. Code Ann. § 23-92-604(c)(2).

[21]Doc. No. 53-1.

[22]*Id.*

[23]Doc. No. 54, p. 21.

**B.     Ripeness**

Intervenor asserts this case is not ripe because administrative proceedings to determine whether Plaintiff is in compliance with Act 1103 are pending.  Plaintiff contends that the scheduled hearing is irrelevant because its claims in this case focus solely on the constitutional validity of Act 1103.

**1.     Plaintiff's Claims are Facial Challenges**

First, although neither party addressed the issue, I need clarify whether Plaintiff's challenges to Act 1103 are "facial" or "as-applied."[24]  "The important inquiry [to determine the nature of the challenge] is whether the 'claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs.'"[25]  Where a plaintiff seeks a declaration that the entire statute is unconstitutional, that claim "reaches beyond the particular circumstances of th[at] plaintiff," and the "claim is facial."[26]  In contrast, a party who raises an as-applied constitutional challenge to a policy or law must show that law as applied in the particular circumstances of his case infringed on conduct that was constitutionally protected.[27]  "If an as-applied challenge is successful, the statute may not be applied to the challenger, but [it] is otherwise enforceable."[28]

Plaintiff's claims are facial because they challenge provisions in the statute that apply generally to all pharmaceutical manufacturing companies that participate in the 340 B drug

---

[24]*Bucklew v. Precythe*, 587 U.S. 119, 135 (2019) (identifying the two types of challenges.).

[25] *Free the Nipple-Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 509 n.2 (8th Cir. 2019) (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)).

[26]*Id.*

[27]*Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973).

[28]*Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017).

6

program in Arkansas.  In its Amended Complaint, Plaintiff adds "as applied" to its contracts clause and takings clause claims.[29]  However, the "label is not what matters."[30]  Plaintiff does not allege unique circumstances that place any of its claims on a footing specific only to it and not other drug manufacturers.[31]  Consequently, a determination that the challenged provisions in Act 1103 are unconstitutional in this case makes those provisions unenforceable as to every other 340 B participant in Arkansas.

### 2.      Plaintiff's Claims are Ripe

"The ripeness doctrine draws 'both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"[32]  "Ripeness" means that the case is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[33]  In other words, "[t]he ripeness doctrine prevents courts 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also [protects] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"[34]

---

[29]Doc. No. 25, p. 4.

[30]*Doe v. Reed*, 561 U.S. 186, 194 (2010).

[31]*Id.* at 3.

[32]*Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 721 (8th Cir. 2021) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)); accord *United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019) ("The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration.") (quoting *KCCP Tr. v. City of N. Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005)).

[33]*Trump v. New York*, 592 U.S. 125, 131(2020)(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

[34]*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 796 (8th Cir. 2016) (quoting *National Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 692 (8th Cir. 2003)).

Indeed, "[t]he touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention."[35]

As the Eighth Circuit has explained, "Ripeness requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[36] "The fitness prong safeguards against judicial review of hypothetical or speculative disagreements."[37] The hardship prong considers whether delayed review "inflicts significant practical harm" on the petitioner.[38] Fitness depends on whether a case needs further factual development.[39] Hardship requires that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct."[40] The plaintiff "must necessarily satisfy both prongs to at least a minimal degree."[41] A claim is ripe where the issues are "purely legal, and will not be clarified by further factual development."[42]

---

[35]*Id.* at 797 (quoting *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014)).

[36]*Texas v. United States*, 523 U.S. 296, 300-01 (1998) (internal quotation marks omitted).

[37]*Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (internal quotation marks omitted).

[38]*Id.*; *United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019); *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 992 (8th Cir. 2016).

[39]*Id.*

[40]*Id.*

[41]*Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000).

[42]*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)); *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013) ("Fitness rests primarily on whether a case would 'benefit from further factual development,' and therefore cases presenting purely legal questions are more likely to be fit for judicial review.") (quoting *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 573 (8th Cir. 2003)).

Plaintiff's challenge to Act 1103 is ripe.  Regarding the "fitness" prong, Plaintiff challenges constitutionality of the statute.[43]  Intervenor has not cited and I have not found any controlling precedent requiring administrative exhaustion of a facial constitutional challenge to a statute.  The issue before the AID is whether Plaintiff is violating the law, and if so, what penalty should be levied against it.  Nothing in that determination has a direct bearing on the constitutionality of Act 1103.  Even though Intervenor asserts that Plaintiff can "submit arguments to the Commissioner, conduct discovery, and call witnesses" at the administrative hearing,[44] it does not identify any factual issues that require further development relevant to Plaintiff's claims in this case.[45]

Further, on a facial challenge, I do not look at application of the statute to any particular Plaintiff.  Instead, I look at the evidence of the interest supporting adoption of the statute, the requirements of the statute, and the stated consequences of violating the statute.[46]

For the same reasons stated above in the injury-in-fact analysis of the standing issue, Plaintiff has established the "hardship" prong of the ripeness analysis.[47]  Plaintiff has shown that

---

[43]Plaintiff admits that it is violating the statute and contends that it will not change its policy.

[44]Doc. No. 54, p 20.

[45]See *Hughes*, 840 F.3d at 992 (defining fitness in terms of the need for further factual development).

[46]See *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008).

[47]*Gates*, 915 F.3d at 563 (second prong of ripeness).

Act 1103 may "inflict[] significant harm" on it,[48] and that it "is immediately in danger of sustaining some direct injury as a result of" the provisions contained in Act 1103.[49]

Accordingly, Intervenor's motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, Intervenor's Motion to Dismiss (Doc. No. 53) is DENIED.

IT IS SO ORDERED this 7th day of October, 2024.


_____BILLY ROY WILSON_____
UNITED STATES DISTRICT JUDGE

---

[48]*Id.* (quotation marks and citation omitted).

[49]See *Hughes*, 840 F.3d at 992 (defining hardship for ripeness purposes).