**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

ASTRAZENECA PHARMACEUTICALS LP

*Plaintiff,*

—v—

ALAN MCCLAIN, in his official capacity
as Commissioner of the Arkansas
Insurance Department

*Defendant,*

DALLAS COUNTY MEDICAL CENTER

*Intervenor-Defendant.*

Case No. 4:24-cv-00268-BRW

**DALLAS COUNTY MEDICAL CENTER'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 5

    I.     Legal Background ................................................................................ 5

          A.    Claim and Issue Preclusion ....................................................... 5

          B.    Preemption .............................................................................. 6

          C.    Contracts Clause ..................................................................... 6

          D.    Takings Clause ........................................................................ 7

          E.    The 340B Drug Pricing Program ............................................. 8

          F.    Arkansas Act 1103 and *PhRMA v. McClain*............................. 12

    II.    Dallas County Medical Center.......................................................... 13

STANDARD OF REVIEW .................................................................................... 14

ARGUMENT ....................................................................................................... 15

    I.     Claim and Issue Preclusion Bar AstraZeneca's Lawsuit ..................... 16

    II.    AstraZeneca's Claims Fail as a Matter of Law.................................... 22

          A.    Act 1103 Regulates the Distribution of Drugs Not the Price of Drugs .... 22

          B.    Federal Patent Law Does Not Preempt Act 1103 ..................... 24

          C.    Act 1103 Does Not Violate the Contracts Clause..................... 28

          D.    AstraZeneca's Takings Claim Is Based on a Mischaracterization of Act 1103................................................................................ 31

               1.    There Is No Taking Because AstraZeneca Voluntarily Participates in the 340B Program ................................. 32

               2.    AstraZeneca's Takings Claim Is a Disguised Diversion Allegation That Should Be Brought Under the Federal 340B Statute........... 34

               3.    Act 1103 Is Not a *Per Se* Taking ................................. 35

               4.    Act 1103 Is Not a Regulatory Taking ........................... 37

5.      Act 1103 Is Not a Taking Under the Arkansas Constitution ........ 40

CONCLUSION.................................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AbbVie Inc. v. Fitch*,
No. 1:24-cv-184, 2024 WL 3503965 (S.D. Miss. July 22, 2024)............................2, 3, 33, 39

*Allen v. McCurry*,
449 U.S. 90 (1980).................................................................................................................5

*Anderson v. Kelley*,
No. 4:20-CV-1195, 2023 WL 5425288 (E.D. Ark. Aug. 3, 2023).........................................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................................16

*Ashley County v. Pfizer, Inc.*,
552 F.3d 659 (8th Cir. 2009) ..........................................................................................14, 15

*Ass'n of Equip. Manufacturers v. Burgum*,
932 F.3d 727 (8th Cir. 2019) ...............................................................................................31

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)........................................................................................................29, 32

*AstraZeneca Pharmaceuticals v. Fitch*,
No. 1:24-cv-00196-LG-BWR, 2024 WL 5345507 (S.D. Miss. Dec. 23, 2024)...................2, 3

*Berns v. O'Dell*,
726 F.2d 409 (8th Cir. 1984) .............................................................................................5, 22

*Biotechnology Indus. Org. v. District of Columbia*,
505 F.3d 1343 (Fed. Cir. 2007)............................................................................................27

*Biotechnology Indus. Org. v. District of Columbia*,
496 F.3d 1362 (Fed. Cir. 2007)..................................................................................24, 26, 27

*Boehringer Ingelheim Pharms., Inc. v. HHS.*,
No. 3:23-CV-01103, 2024 WL 3292657 (D. Conn. July 3, 2024) .......................................33

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989).............................................................................................................27

*Burlington N. R. Co. v. State of Nebraska*,
802 F.2d 994 (8th Cir. 1986) .............................................................................................7, 31

*Cmty. Hous. Improvement Program v. City of New York*,
59 F.4th 540 (2d Cir. 2023) .......................................................................................37, 38, 39

*Collins v. Ark. Bd. of Embalmers & Funeral Dirs.*,
   2013 WL 2405302 (E.D. Ark. May 31, 2013)........................................................15

*Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Tr.*,
   508 U.S. 602 (1993)........................................................................................37

*Costner v. URS Consultants, Inc.*,
   153 F.3d 667 (8th Cir. 1998) ........................................................................5, 16

*Crift v. Williams*,
   No. No. 5:11-cv-00136, 2012 WL 1463973 (E.D. Ark. Apr. 27, 2012)................................20

*Eli Lilly & Co. v. HHS*,
   No. 1:21-CV-00081, 2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) ........................................33

*Energy Rsrvs. Grp. v. Kan. Power & Light Co.*,
   459 U.S. 400 (1983)..................................................................................30, 31

*Equip. Mfrs. Inst. v. Janklow*,
   300 F.3d 842, 850 (8th Cir. 2002) ....................................................................7, 28

*Expert Elec., Inc. v. Levine*,
   554 F.2d 1227 (2d Cir. 1977)............................................................................20

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963)......................................................................................6

*Franklin Mem'l Hosp. v. Harvey*,
   575 F.3d 121 (1st Cir. 2009)........................................................................38, 40

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs.*,
   528 U.S. 167 (2000)......................................................................................18

*Frye v. Novartis Pharms. Corp.*,
   2022 WL 4305656 (E.D. Ark. Sep. 19, 2022) ........................................................15, 21

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992)........................................................................................6

*General Foods Corp. v. Mass. Dep't of Pub. Health*,
   648 F.2d 784 (1981)......................................................................................18

*Genesis Health Care, Inc. v. Becerra*,
   701 F. Supp. 3d 312 (D.S.C. Nov. 3, 2023)..............................................................9

*Germain Real Estate Co. v. HCH Toyota, LLC*,
   778 F.3d 692 (8th Cir. 2015) ............................................................................15

*Hawaii Housing Auth. v. Midkiff*,
   467 U.S. 229 (1984) ........................................................................................................7, 39

*Hawkeye Commodity Promotions, Inc. v. Vilsack*,
   486 F.3d 430 (8th Cir. 2007) ....................................................................................7, 30, 31

*Healy v. Fox*,
   46 F.4th 739 (8th Cir. 2022) ....................................................................................20, 21, 22

*Hicks v. O'Meara*,
   31 F.3d 744 (8th Cir. 1994) ...................................................................................................21

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985) ..............................................................................................................25

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ..................................................................................................................6

*Home Building & Loan Ass'n v. Blaisdell*,
   290 U.S. 398 (1934) ..............................................................................................................28

*Hurd v. Flywheel Energy Prod., LLC*,
   No. 4:21-CV-01207-LPR, 2024 WL 4571445 (E.D. Ark. Oct. 24, 2024) ........................7, 40

*International Union v. Brock*,
   477 U.S. 274 (1986) ..............................................................................................................19

*Iowa Assurance Corp. v. City of Indianola*,
   650 F.3d 1094 (8th Cir. 2011) .............................................................................................36

*John Morrell & Co. v. Loc. Union 304A of United Food & Com. Workers, AFL-CIO*,
   913 F.2d 544 (8th Cir. 1990) ...........................................................................................6, 22

*Kelo v. City of New London*,
   545 U.S. 469 (2005) ..............................................................................................................39

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974) ......................................................................................................6, 25, 27

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987) .........................................................................................................31, 39

*Lane v. Peterson*,
   899 F.2d 737 (8th Cir. 1990), *cert. denied*, 498 U.S. 823 (1990) ..................................5, 20, 22

*Lingle v. Chevron*,
   544 U.S. 528 (2005) ..............................................................................................................36

*Little Gem Life Sciences, LLC v. Orphan Med., Inc.*,
    537 F.3d 913 (8th Cir. 2008) ................................................................15

*Lucas v. South Carolina Coastal Council*,
    505 U.S. 1003 (1992)..................................................................8, 40

*Maddox v. U.S. Dep't of Defense*,
    2011 WL 6027145 (E.D. Ark. 2011) ......................................................21

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996).........................................................................6

*Midwest Disability Initiative v. JANS Enterprises, Inc.*,
    929 F.3d 603 (8th Cir. 2019) ......................................................5, 17, 19

*Mills v. City of Grand Forks*,
    614 F.3d 495 (8th Cir. 2010) ..............................................................15

*Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*,
    742 F.2d 442 (8th Cir. 1984) ......................................................7, 28, 31, 33

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)........................................................................35

*Novartis Pharms. Corp. v. Bailey*,
    No. 24-cv-04131, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ................25, 27, 29

*Novartis Pharms. Corp. v. Brown*,
    No. 1:24-cv-01557 (D. Md. Sept. 5, 2024), ECF No. 57........................2

*Novartis Pharms. Corp. v. Fitch*,
    738 F. Supp. 3d 737 (S.D. Miss. 2024)........................................3, 25, 26

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983).........................................................................6

*Penn Central Transp. Co. v. City of New York*,
    438 U.S. 104 (1978)................................................................ *passim*

*Penn. Coal Co. v. Mahon*,
    260 U.S. 393 (1922).........................................................................37

*Pharm. Rsch. & Mfrs. of Am. v. McClain*,
    No. 22-3675 (8th Cir. Apr. 10, 2023), ECF No. 24-1...........................10

*Pharm. Rsch. & Mfrs. of Am. v. McClain (PhRMA I)*,
    645 F. Supp. 3d 890 (E.D. Ark. 2022).............................................. *passim*

*Pharm. Rsch. & Mfrs. of Am. v. McClain* (*PhRMA II*),
    95 F.4th 1136 (8th Cir. 2024) ............................................................................... *passim*

*PhRMA v. Murrill*,
    No. 6:23-CV-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) ............................ *passim*

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) .............................................................................. 15

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) ................................................................................. 31, 39

*Robinette v. Jones*,
    476 F.3d 585 (8th Cir. 2007) ............................................................................. 5, 22

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ....................................................................................... 39

*Sanofi Aventis U.S., LLC v. HHS*,
    58 F.4th 696 (3d Cir. 2023) ..................................................................... 13, 23, 37

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225, 231 (1964) .................................................................................. 6

*Stahl v. U.S. Dep't of Agric.*,
    327 F.3d 697 (8th Cir. 2003) ............................................................................. 15

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning*,
    322 F.3d 1064 (9th Cir. 2003) ........................................................................... 19

*Taylor v. Sturgell*,
    553 U.S. 880, 892-93 (2008) .............................................................................. 5

*Watkins v. Lawrence Cnty.*,
    No. 3:17-CV-00272, 2020 WL 13389385 (E.D. Ark. May 19, 2020) .............................. 40

*Wishnatsky v. Rovner*,
    433 F.3d 608, 610 (8th Cir. 2006) ...................................................................... 15

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ....................................................................................... 6

*Yankton Sioux Tribe v. HHS*,
    533 F.3d 634 (8th Cir. 2008) ............................................................................. 5, 20

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ....................................................................................... 8

**State Cases**

*Richardson v. City of Little Rock Planning Comm'n,*
295 Ark. 189 (1988) ............................................................................8, 40

**Federal Statutes**

28 U.S.C. § 1331 .......................................................................................17

42 U.S.C. § 256b .........................................................................................1

42 U.S.C. § 256b(a)(1) ..............................................................................24

42 U.S.C. § 256b(a)(1), (4) .......................................................................10

42 U.S.C. §§ 256b(a)(1), 1396r–8(a)(1) pt. B. .......................................32

42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1) .....................................................9

42 U.S.C. § 256b(a)(4) ................................................................................9

42 U.S.C. §§ 256b(a)(4)(N), 1395i–4(c)(2) .............................................13

42 U.S.C. § 256b(a)(5)(B) .........................................................................34

42 U.S.C. § 1395i–4(c)(2)(B)(i)(I) ............................................................14

42 U.S.C. § 1395k .......................................................................................9

Veterans Health Care Act of 1992, Pub. L. No. 102-585, §§ 602-603, 106 Stat.
4943, 4967 (1992) .........................................................................28

**State Statutes**

Ark. Code Ann. § 20-64-501 *et seq.* ........................................................23

Ark. Code Ann. § 20-64-505 ....................................................................23

Ark. Code Ann. § 23-92-604(c)(1) ............................................................12

Ark. Code Ann. § 23-92-604(c)(1) and (c)(2) ......................................1, 12

Ark. Code Ann. § 23-92-604(c)(2) ......................................................12, 24

**Constitutional Provisions**

Ark. Const. Article II, § 22 .........................................................................7

U.S. Const. Amendment V .......................................................................2, 7

U.S. Const. Article I, § 10 .................................................................................................28

U.S. Const. Article I, § 10, cl. 1 .......................................................................................2, 6

**Rules**

Federal Rule of Civil Procedure 12(c) ......................................................................1, 14, 15

Federal Rule of Civil Procedure 12(b)(6) .........................................................................15, 21

**Regulations**

42 C.F.R. §§ 485.601–485.647 .........................................................................................13

42 C.F.R. § 485.610(c) ......................................................................................................14

070-39-8 Ark. Code R. § 2 .................................................................................................23

**Other Authorities**

*340B ESP Resources: Policy Documents*, 340BESP,
    https://www.340besp.com/resources (last visited Feb. 19, 2025) ...........................11

The American Hospital Association, The 340B Drug Pricing Program
    (Healthsperian 2024),
    https://www.aha.org/system/files/media/file/2024/03/The-340B-Drug-Pricing-
    Program.pdf ..............................................................................................................38

Ark. Ins. Dep't, Final Rule 123: 340B Drug Program Nondiscrimination
    Requirements (Sept. 19, 2022), http://170.94.37.152/REGS/003.22.22-005F-
    23027.pdf ..................................................................................................................12

AstraZeneca, 340B Contract Pharmacy Pricing (Aug. 17, 2020),
    https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-
    _340B_-_Final.pdf?_zs=Ccipc1&_zl=DaI27 .........................................................11

AstraZeneca, *Notice to 340B Covered Entities Regarding CALQUENCE
    Replenishment and CALQUENCE Capsule Formulation Discontinuation*,
    https://www.hrsa.gov/sites/default/files/hrsa/opa/calquence-notice-340b.pdf ......34

*AstraZeneca Policy*, 340BESP, https://www.340besp.com/resources ..........................11

AstraZeneca, What Science Can Do; AstraZeneca Annual Report and Form 20-F
    Information
    2023,https://www.astrazeneca.com/content/dam/az/Investor_Relations/annual
    -report-2023/pdf/AstraZeneca_AR_2023.pdf...........................................................38

CEO of Dallas County Medical Center Speaks On Deadly Mass Shooting at
Arkansas Grocery Store, YouTube (June 26, 2024),
https://www.youtube.com/watch?v=U6wKjjYt2bI ................................................14

*FAQs*, HRSA, https://www.hrsa.gov/opa/faqs .................................................................10

H.R. Rep. No. 102-384, pt. 2 .........................................................................................9

HRSA, *Office of Pharm. Affairs OPAIS Database*,
https://340bopais.hrsa.gov/cedetails/20330 ..............................................13, 14

https://www.irs.gov/charities-non-profits/public-disclosure-and-availability-of-
exempt-organization-returns-and-applications-public-disclosure-overview ..........................18

Investis, *Section 16 Filings*,
https://otp.tools.investis.com/clients/us/astrazeneca/SEC/sec-filing.aspx..............................38

Irena Maragkou, *The World's Biggest Pharmaceutical Companies: Top Ten by
Revenue*, Pharm. Tech., https://www.pharmaceutical-
technology.com/features/top-ten-pharma-companies-in-2023/ ...............................18

Letter from Markus Meier, Assistant Dir., FTC, to Dykema Gossett PLLC (Apr.
9, 2010) (University of Michigan Advisory Opinion),
https://www.ftc.gov/sites/default/files/documents/advisory-
opinions/university-michigan/100409univmichiganopinion.pdf.............................11

Megan Wilson, *Top Industry Group for Drugmakers Loses Third Member In Six
Months*, PoliticoPro (May 12, 2023)
https://subscriber.politicopro.com/article/2023/05/top-industry-group-for-
drugmakers-loses-third-member-in-six-months-00096738?source=email......................12, 17

Notice Regarding 340B Drug Pricing Program-Contract Pharmacy Services, 75
Fed. Reg. 10,272 (Mar. 5, 2010)...........................................................................36, 38

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract
Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) ("1996
Guidance")...............................................................................................................10, 23

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract
Pharmacy Services, 61 Fed. Reg. 43,549 (Aug. 23, 1996).....................................38

Rachel Cohrs, *AstraZeneca Is Third Member to Leave PhRMA In Five Months*,
STAT (May 16, 2023) https://archive.ph/4WO0k..................................................17

Restatement (Second) of Judgments § 42, cmt. *f* (1980) ..............................................19

## INTRODUCTION

Intervenor-Defendant Dallas County Medical Center ("DCMC") respectfully moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiff AstraZeneca Pharmaceuticals, LP ("AstraZeneca") challenges two provisions of Arkansas Act 1103—Ark. Code Ann. § 23-92-604(c)(1) and (c)(2)—requiring drug companies to ship drugs discounted under the federal 340B drug pricing program ("340B Program"), 42 U.S.C. § 256b, to pharmacies under contract with Arkansas safety-net providers.  AstraZeneca's claims are barred by issue and claim preclusion and fail as a matter of law.  Act 1103 is not preempted by federal patent law, does not violate the Contracts Clause to the U.S. Constitution, and is not an unconstitutional taking.  Accordingly, DCMC respectfully requests that the Court dismiss this action with prejudice and grant DCMC all other just and appropriate relief.

AstraZeneca's claims are barred by claim and issue preclusion.  AstraZeneca was a member of the Pharmaceutical Research and Manufacturers of America ("PhRMA") when it challenged Act 1103 before this Court and lost.  *Pharm. Rsch. & Mfrs. of Am. v. McClain (PhRMA I)*, 645 F. Supp. 3d 890 (E.D. Ark. 2022), *aff'd*, *Pharm. Rsch. & Mfrs. of Am. v. McClain (PhRMA II)*, 95 F.4th 1136 (8th Cir. 2024).  All of AstraZeneca's claims in this lawsuit were or could have been litigated by PhRMA.  Many of AstraZeneca's claims merely repackage arguments that this Court and Eighth Circuit rejected in *PhRMA v. McClain*.  *PhRMA I*, 645 F. Supp. 3d 890 (E.D. Ark. 2022), *aff'd*, *PhRMA II*, 95 F.4th 1136 (8th Cir. 2024).

Furthermore, AstraZeneca's claims all fail as a matter of law.  AstraZeneca's arguments each rely on its contention that Act 1103 regulates pricing.  But this Court previously held that Act 1103 regulates distribution, not pricing.  *PhRMA I*, 645 F. Supp. 3d at 901 ("Even though the title of Act 1103 includes pricing in its name, the effects of the disputed provisions are limited to

1

the distribution of and access to the discounted drugs.").  For this and related, germane reasons, other courts have rejected as a matter of law the same arguments made by AstraZeneca and other drug companies challenging virtually identical state laws.  *PhRMA v. Murrill*, No. 6:23-CV-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) (consolidated with *AstraZeneca v. Murrill*, No. 6:23-cv-01042) (rejecting claims that law similar to Act 1103 violates the Takings Clause of the U.S. Constitution and the Contracts Clause of the U.S. Constitution and is preempted by federal patent law); Memorandum Opinion and Order Denying AstraZeneca's Motion for Preliminary Injunction, *AstraZeneca Pharmaceuticals v. Fitch*, No. 1:24-cv-00196-LG-BWR, 2024 WL 5345507, *5 (S.D. Miss. Dec. 23, 2024) (rejecting federal patent law argument); Order Denying Plaintiffs' Motions for Preliminary Injunction, *Novartis Pharms. Corp. v. Brown*, No. 1:24-cv-01557 (D. Md. Sept. 5, 2024), ECF No. 57 (denying preliminary injunction for plaintiffs Novartis, PhRMA, AbbVie, and AstraZeneca in consolidated case); *AbbVie Inc. v. Fitch*, No. 1:24-cv-184, 2024 WL 3503965, at *16 (S.D. Miss. July 22, 2024) (rejecting argument that similar state law violated Takings Clause of the U.S. Constitution).

Federal patent law does not preempt Act 1103.  AstraZeneca mischaracterizes Act 1103 and the contract pharmacy arrangements that permit health care providers that participate in the 340B Program ("covered entities") to dispense drugs to their patients.  Act 1103 and federal patent law operate in completely different spheres—while Act 1103 regulates the distribution of discounted drugs in Arkansas, federal patent law prohibits states from regulating the price of patented goods.  AstraZeneca's argument is based on the flawed premise that Act 1103 is a pricing statute rather than a delivery statute, a contention that the Eighth Circuit has already rejected.  *PhRMA II*, 95 F. 4th at 1145 ("Act 1103 does not set or enforce discount pricing.").  In reviewing a similar Louisiana law challenged by AstraZeneca, the Louisiana District Court held

the state statute did not violate federal patent law. *See AstraZeneca v. Murrill*, No. 6:23-cv-01042, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) (A statute similar to Act 1103 "does not, on its face, target patent rights or, by its terms, apply only to patented drugs or the price of patented drugs," and 340B "discounts are set by the federal government, not the State of Louisiana or Act 358."); *see also AstraZeneca Pharmaceuticals v. Fitch*, No. 1:24-cv-00196-LG-BWR, 2024 WL 5345507, at *5 (S.D. Miss. Dec. 23, 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 750 (S.D. Miss. 2024); *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *12 (S.D. Miss. July 22, 2024). Act 1103 does not affect the period of exclusivity for AstraZeneca or any other patent holder.

Act 1103 does not violate the Contracts Clause. AstraZeneca cannot demonstrate substantial impairment of its Pharmaceutical Pricing Agreement ("PPA") with the federal Department of Health and Human Services ("HHS") because Act 1103 regulates delivery (not pricing) of 340B drugs. *See AstraZeneca v. Murrill*, 2024 WL 4361597, at *12 (rejecting AstraZeneca's Contracts Clause attack on a state law similar to Act 1103). Further, AstraZeneca operates in a heavily regulated market, and contract pharmacies have been an important part of the 340B Program since 1996. *PhRMA v. Murrill*, 2024 WL 4361597, at *13 (The "drug industry is a 'pervasively regulated business,'" so "AstraZeneca can reasonably expect regulation with respect to the sale of drugs and, especially with respect to its voluntary participation in federal benefit programs such as Medicaid and Medicare . . . .") (citation omitted). Even so, Arkansas enacted Act 1103 for legitimate, justifiable, and reasonable purposes that are well within its traditional police powers.

Act 1103 results in no unconstitutional taking because it does not regulate prices. *PhRMA v. Murrill*, 2024 WL 4361597, at *12-14 ("Act 358 [a law similar to Act 1103] only

affects the delivery or acquisition of Section 340B drugs. . . . Because Act 358 does not compel Plaintiffs to directly sell 340B drugs to pharmacies, it is not a taking for purposes of the Takings Clause."). Act 1103 is not a "per se taking" because it does not physically occupy or seize AstraZeneca's property. Act 1103 is also not a regulatory taking because any economic impact is minimal, does not interfere with AstraZeneca's investment-backed expectations—which have included contract pharmacy shipments since 1996—and promotes the important government interest of safeguarding the health of Arkansas' citizens. *See Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). For all of the same reasons, Act 1103 does not violate the Takings Clause of the Arkansas Constitution.

Additionally, both the United States Constitution and the Arkansas Constitution recognize that states may reasonably exercise their police power without violating the prohibition against takings. Protecting distribution of 340B-priced drugs to Arkansas covered entities through their contract pharmacies is squarely within Arkansas' police power to regulate the public health and safety of its citizens. Arkansas safety-net providers rely on contract pharmacy distribution arrangements to obtain 340B-priced drugs for their patients. Without contract pharmacies, many Arkansas safety-net healthcare providers would be unable to dispense 340B-priced drugs to their vulnerable patients who need the drugs to treat often life-threatening conditions. By preserving the right of Arkansas safety-net providers to dispense drugs to patients at community pharmacies, Act 1103 protects the public health and safety of Arkansans from restrictive and detrimental distribution policies of drug companies. Act 1103 is squarely within Arkansas' authority to regulate drug distribution.

## BACKGROUND

I.    **Legal Background**

    A.    **Claim and Issue Preclusion**

Under the principle of res judicata, otherwise known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). The Eighth Circuit applies a four-part test to determine if res judicata bars a claim: (1) the first lawsuit was decided on the merits; (2) the ruling court had proper jurisdiction over the first lawsuit; (3) both lawsuits involve the same parties or parties in privity with the original parties; and (4) the second lawsuit is "based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998).

The scope of res judicata extends to any party attempting to bring a subsequent lawsuit arising from the "same nucleus of operative fact" as the original lawsuit, *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990), *cert. denied*, 498 U.S. 823 (1990), and that was "in privity" with a party in the original lawsuit. *Midwest Disability Initiative v. JANS Enterprises, Inc.*, 929 F.3d 603, 607 (8th Cir. 2019). Res judicata bars a party from invoking new legal theories if they are based on the same facts as the first lawsuit. *See Yankton Sioux Tribe v. HHS*, 533 F.3d 634 (8th Cir. 2008). Privity is satisfied where a party was "'adequately represented by someone with the same interests who [wa]s a party' to the [prior] suit." *Midwest Disability*, 929 F.3d at 607 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008)).

Issue preclusion forbids relitigation not only of claims that were previously brought or that should have been brought but also forbids litigating issues and facts that were or could have been disputed in prior litigation. *Berns v. O'Dell*, 726 F.2d 409, 410 (8th Cir. 1984); *Robinette v.*

*Jones*, 476 F.3d 585, 590 (8th Cir. 2007); *John Morrell & Co. v. Loc. Union 304A of United Food & Com. Workers, AFL-CIO*, 913 F.2d 544, 564 (8th Cir. 1990).

**B.    Preemption**

The Supreme Court has repeatedly held that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  A state law may be preempted by a federal law either: (1) through an express preemption clause, where Congress explicitly states that state law is preempted; or (2) through implied preemption, where a court infers that a state law is preempted based on a federal law, including the federal law's text, structure, and Congress's intent.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

Implied preemption can take three forms: (1) field preemption applies if Congress has manifested an intent that the federal government occupy an entire field of regulation, *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 206 (1983); (2) impossibility preemption applies if it is impossible to comply with both federal and state laws, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); and (3) obstacle preemption applies if a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

When examining the preemption of a state law's potential conflict with federal patent law, courts consider whether a state law "clashes with the objectives of the federal patent laws." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974) (quoting *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964)).

**C.    Contracts Clause**

The Contracts Clause of the U.S. Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1.  The Eighth

Circuit applies a three-part test to determine whether a state law violates the Contract Clause.

First, the court must ask whether the state law "has, in fact, operated as a substantial impairment

on pre-existing contractual relationships." *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486

F.3d 430, 436 (8th Cir. 2007) (quoting *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 850 (8th Cir.

2002)).  An analysis of the impairment factor includes consideration of "the extent to which an

industry is governmentally regulated" or has been in the past.  *Burlington N. R. Co. v. Nebraska*,

802 F.2d 994, 1006 (8th Cir. 1986); *Equip. Mfrs. Inst.*, 300 F.3d at 847 (the court will consider

"the extent to which the parties' reasonable contract expectations have been disrupted" by

regulation "in the past.") (cleaned up).  If the court identifies a substantial impairment, the state

government must then articulate "a significant and legitimate public purpose behind the

regulation," such as the remedying of a broad and general social or economic problem.  *Hawkeye*

*Commodity Promotions*, 486 F.3d at 438; *see also Minn. Ass'n of Health Care Facilities, Inc. v.*

*Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 450 (8th Cir. 1984); *Burlington N. R. Co.*, 802 F.2d

at 1006.  Finally, the remedy for furthering that public purpose must be reasonable and

justifiable.  *Equip. Mfrs. Inst.*, 300 F.3d at 850.

### D.    Takings Clause

The Takings Clause of the Fifth Amendment forbids the taking of private property "for

public use, without just compensation," U.S. Const. amend. V, and is applicable to the states via

the Fourteenth Amendment.  *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 231 (1984).  The

Arkansas Constitution includes a substantially similar provision.  Ark. Const. art. II, § 22.  This

Court has recently held that because the provisions under both Takings Clauses are substantially

similar, there is "no reason to treat . . . the two clauses differently."  *Hurd v. Flywheel Energy*

*Prod., LLC*, No. 4:21-CV-01207-LPR, 2024 WL 4571445, at *17 (E.D. Ark. Oct. 24, 2024).  An

analysis of the Takings Clause in the U.S. Constitution falls into "two distinct classes." *Yee v. City of Escondido*, 503 U.S. 519, 522 (1992). The first is "[w]here the government authorizes a physical occupation of property (or actually takes title)" and is known as a "per se taking." *Id.* at 522, 531. The second is "where the government merely regulates the use of property," and "compensation is required" to mitigate such use. *Id.* at 522–23. The Supreme Court has established three factors to determine whether a government action is an unconstitutional taking: 1) the economic impact of the regulation; 2) the extent to which the regulation interferes with investment-backed expectations; and 3) the character of the governmental action. *Penn Central*, 438 U.S. at 124.

The Supreme Court has held that, when a state legitimately exercises its police powers, the use of a private party's property can "be restricted, from time to time, by various measures newly enacted by the State." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027 (1992). The Supreme Court of Arkansas has held that the Takings Clause in the Arkansas constitution must submit to the reasonable exercise of the police power. *Richardson v. City of Little Rock Planning Comm'n*, 295 Ark. 189, 190 (1988) (the existence of the Arkansas Takings Clause "does not mean, however, that an individual is constitutionally guaranteed the right to do with such property as he or she wishes in all circumstances").

### E.    The 340B Drug Pricing Program

The 340B Program[1] is named for Section 340B of the Public Health Service Act, which was enacted as part of the Veterans Health Care Act of 1992 ("VHCA") and requires drug companies to offer discounts on covered outpatient drugs to specified safety-net health care providers as a condition of the manufacturers' drugs being reimbursed by Medicaid and

---

[1] *See generally*, Amended Complaint, ECF No. 25, ¶¶ 16-19, 21-30. The amended complaint further illustrates how the Court may decide this case as a mater of law.

Medicare Part B.[2]  42 U.S.C. §§ 256b(a)(1), 1396r-8(a)(1).  Safety-net hospitals and clinics that

participate in the 340B Program are referred to as "covered entities" and provide critical health

care services to the neediest individuals, regardless of ability to pay.  *PhRMA II*, 95 F.4th at

1139.  Covered entities must meet strict eligibility criteria to enroll in the 340B Program.  *Id.* at

1141; 42 U.S.C. § 256b(a)(4).  Each category of covered entity receives some form of federal

assistance to treat the nation's most vulnerable patients.  *Id.*  The 340B Program is administered

by the Health Resources and Services Administration ("HRSA"), which is a component of HHS.

  The 340B Program makes drugs more affordable for covered entities and thus allows

covered entities to "stretch scarce federal resources as far as possible, reaching more eligible

patients and providing more comprehensive services."  H.R. Rep. No. 102-384, pt. 2, at 12.

Covered entities provide significant levels of uncompensated care, and the discounts available

through the 340B Program help relieve these financial burdens.  Stated differently, covered

entities lose less money on purchases of prescription drugs under the 340B Program for their

uninsured and underinsured patients than they would without the 340B discount.  By mitigating

losses, they can be more generous with reducing or waiving patient copayments for needy

individuals or with providing other necessary services.  The 340B Program also generates

revenue for covered entities so that they are less dependent on taxpayer support.  If a covered

entity patient has prescription drug coverage, the difference between the insurer's payment and

the discounted price is income to the covered entity to supplement or stretch federal funds to

treat more patients and to provide more services.  *See, e.g.*, *Id.*; *Genesis Health Care, Inc. v.

Becerra*, 701 F. Supp. 3d 312, 316 (D.S.C. Nov. 3, 2023).

  In order to treat most illnesses or injuries, a health care provider must ensure that patients

---

[2] Medicare Part B covers physician, hospital outpatient, and certain other non-inpatient services.  42 U.S.C. § 1395k.

have access to a pharmacy to fill their prescriptions at affordable prices. Because the construction and management of a pharmacy is expensive and requires special expertise, many covered entities, including DCMC, cannot afford to operate their own "in-house" pharmacies and instead must contract with independently-owned pharmacies to meet the pharmacy needs of their patients. Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) ("1996 Guidance"). HHS recognizes that many 340B covered entities cannot fill prescriptions for their patients because they cannot afford to "expend precious resources to develop their own in-house pharmacies . . . ." *Id.* Covered entities with large service areas also facilitate access to 340B drugs by contracting with pharmacies that are convenient to the provider's patients. In addition, some medications require special storage and handling and can only be dispensed by a specialty pharmacy, through a mail order program, or subject to a limited distribution network.[3] For these reasons, 340B covered entities often rely on independent retail pharmacies to dispense drugs to the covered entity's patients on its behalf. These arrangements are established by contract between covered entities and pharmacies, so they are known as "contract pharmacy arrangements," and the pharmacies are generally referred to as "contract pharmacies."

Contract pharmacies are not permitted to purchase 340B drugs. 42 U.S.C. § 256b(a)(1), (4); Decl. of Krista M. Pedley, ¶¶ 7–9, *Pharm. Rsch. & Mfrs. of Am. v. McClain*, No. 22-3675 (8th Cir. Apr. 10, 2023), ECF No. 24-1. Drugs dispensed by contract pharmacies are purchased by the covered entity using a "bill to/ship to" procedure—the drugs are purchased by, and billed to, the covered entity but shipped to the contract pharmacy. *See FAQs*, HRSA, https://www.hrsa.gov/opa/faqs ("What is a 'ship to bill to' arrangement?"). After receiving the

---

[3] These specialty pharmacies are often located outside the provider's service area.

covered entity's 340B drugs, the contract pharmacy dispenses the drugs to the covered entity's

patients, collects reimbursement for the drugs from the patient's third party payer (if any) and

any applicable copayments from the patient, and remits the collected reimbursement to the

covered entity.  The covered entity pays the pharmacy a fee for its dispensing and billing

services.  While contract pharmacy arrangements are common in the 340B Program, they are not

unique to the 340B Program.  *See, e.g.*, Letter from Markus Meier, Assistant Dir., FTC, to

Dykema Gossett PLLC (Apr. 9, 2010) (University of Michigan Advisory Opinion).[4]

      For approximately 26 years, every drug company participating in the 340B Program,

including AstraZeneca, honored contract pharmacy arrangements and shipped to contract

pharmacies, just as to in-house pharmacies.  That decades-long recognition of contract pharmacy

arrangements changed abruptly beginning in July 2020, when drug companies began to either

fully eliminate or significantly restrict distribution of 340B drugs ordered through contract

pharmacy bill to/ship to arrangements.  *See, e.g.*, AstraZeneca, 340B Contract Pharmacy Pricing

(Aug. 17, 2020), https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-

_340B_-_Final.pdf?_zs=Ccipc1&_zl=DaI27.  As of the date of this memorandum, thirty-seven

drug companies have unilaterally imposed restrictions on contract pharmacy arrangements.

*340B ESP Resources: Policy Documents*, 340BESP, https://www.340besp.com/resources (last

visited Feb. 19, 2025).  Unlike many of its manufacturer counterparts, AstraZeneca has refused

to lift or lighten its contract pharmacy restrictions in Arkansas.  In fact, AstraZeneca continues to

broaden the scope of its restrictions, with the most recent change effective October 1, 2024.

*AstraZeneca Policy*, 340BESP, https://www.340besp.com/resources.

---

[4] https://www.ftc.gov/sites/default/files/documents/advisory-opinions/university-michigan/100409univmichiganopinion.pdf.

F.     **Arkansas Act 1103 and *PhRMA v. McClain***

Act 1103, referred to as the 340B Drug Pricing Nondiscrimination Act, protects

arrangements for the delivery of 340B-priced drugs to contract pharmacies on behalf of covered

entities.  Ark. Code Ann. §§ 23-92-604(c)(1), (c)(2).  Consistent with the state's authority to

regulate drug distribution to pharmacies within its borders, the statute regulates 340B drug

distribution through two provisions.  The first provision, Ark. Code Ann. § 23-92-604(c)(1),

prohibits a drug company from denying a covered entity access to 340B drugs if the covered

entity uses contract pharmacy arrangements to participate in the 340B Program.  The second

provision, Ark. Code Ann. § 23-92-604(c)(2), prohibits a drug company from blocking an

Arkansas-based contract pharmacy from receiving 340B drugs on behalf of a covered entity.  In

September 2022, the Arkansas Insurance Department promulgated a regulation ("Rule 123")

implementing Act 1103.  Ark. Ins. Dep't, Final Rule 123: 340B Drug Program

Nondiscrimination Requirements (Sept. 19, 2022), http://170.94.37.152/REGS/003.22.22-005F-

23027.pdf.

PhRMA brought a suit before this Court alleging that Act 1103 is preempted by the 340B

statute, and this Court determined that Act 1103 was not preempted.  *PhRMA I*, 645 F. Supp. 3d

890 (E.D. Ark. 2022), *aff'd*, *PhRMA II*, 95 F.4th 1136, 1139 (8th Cir. 2024), *cert. denied*, No.

24-118, 2024 WL 5011712 (U.S. Dec. 9, 2024).  AstraZeneca was a member of PhRMA during

the entirety of the proceedings before this Court and when PhRMA appealed to the Eighth

Circuit.  *See* Megan Wilson, *Top Industry Group for Drugmakers Loses Third Member In Six

Months*, PoliticoPro (May 12, 2023) ("AstraZeneca is leaving the Pharmaceutical Research and

Manufacturers of America, the top lobbying organization for drugmakers, effective July 1,

[2023] the company and group confirmed."),

https://subscriber.politicopro.com/article/2023/05/top-industry-group-for-drugmakers-loses-

third-member-in-six-months-00096738?source=email.  On March 12, 2024, the United States

Court of Appeals for the Eighth Circuit affirmed this Court's ruling that Arkansas' Act 1103 was

"not preempted by federal law under any theory."  *PhRMA II*, 95 F.4th at 1139.

 The Eighth Circuit held that the 340B statute left room for state action and that

pharmacies have historically "been an essential part of the 340B Program," noting that "the text

of 340B is 'silent about delivery' of drugs."  *PhRMA II*, 95 F.4th at 1143 (quoting *Sanofi Aventis*

*U.S., LLC v. HHS*, 58 F.4th 696, 703 (3d Cir. 2023)).  The Eighth Circuit further found that

Congress was aware of the role of pharmacies and state pharmacy law in implementing the 340B

Program and that Congress's "silence on pharmacies in the context of 340B indicates that

Congress did not intend to preempt the field."  *Id.* at 1144.  The Eighth Circuit also held that Act

1103 does not conflict or create an obstacle to Congress's objectives for the 340B Program:

"rather it does the opposite: Act 1103 assists in fulfilling the purpose of 340B."  *Id.* at 1144-45.

The Eighth Circuit denied PhRMA's petition for rehearing en banc or panel rehearing, and the

Supreme Court denied PhRMA's petition for certiorari.  *PhRMA II*, *reh'g denied*, No. 22-3645,

2024 WL 1919676 (8th Cir. May 2, 2024), *cert. denied*, No. 24-118, 2024 WL 5011712 (U.S.

Dec. 9, 2024).

## II. Dallas County Medical Center

 DCMC is a nonprofit, government-funded hospital located in Fordyce, Arkansas,

population 3,396.  DCMC has been designated by the Medicare program as a critical access

hospital ("CAH").  *See* HRSA, *Office of Pharm. Affairs OPAIS Database*,

https://340bopais.hrsa.gov/cedetails/20330.  Based on its CAH status, DCMC participates as a

covered entity under the 340B Program.  *Id.*; *see also* 42 U.S.C. §§ 256b(a)(4)(N), 1395i–

4(c)(2); 42 C.F.R. §§ 485.601–485.647.  As a requirement of its CAH designation, DCMC has

twenty-five or fewer inpatient beds and is located in an area where residents would otherwise be

required to travel long distances to receive inpatient medical care. *See* 42 U.S.C. § 1395i–4(c)(2)(B)(i)(I); 42 C.F.R. § 485.610(c). The nearest hospital to DCMC is Ouachita County Medical Center, which is approximately thirty-five miles from Fordyce.

Because of the distance between DCMC and other area hospitals, the town of Fordyce depends on DCMC's services, as illustrated by one recent, tragic example. On June 21, 2024, a gunman shot fourteen people at a Fordyce grocery store, resulting in four deaths and ten wounded. *See* CEO of Dallas County Medical Center Speaks On Deadly Mass Shooting at Arkansas Grocery Store, YouTube (June 26, 2024), https://www.youtube.com/watch?v=U6wKjjYt2bI. Victims were rushed to DCMC, arriving within twenty-five minutes of the shooting, where medical professionals promptly attended to twelve of the gunshot victims. *Id*. If not for DCMC, victims would have been transported an additional thirty-five miles to receive care. If that were the case, many more people would have likely died that day.

DCMC does not own or operate an on-site retail pharmacy. Therefore, for its patients who have prescriptions for self-administered drugs, DCMC relies exclusively on independently-owned contract pharmacies to fill prescriptions with 340B drugs. *See* HRSA, *Office of Pharm. Affairs OPAIS Database*, https://340bopais.hrsa.gov/cedetails/20330. DCMC depends on 340B savings to engage with the community and provide charity care.

## STANDARD OF REVIEW

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate when there is no dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). A party may move for judgment on the pleadings at any point after the close of the pleadings if it moves early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). Courts apply the same standard to a

motion for judgment on the pleadings under Rule 12(c) as they do for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ashley County*, 552 F.3d at 665. The Court is required to accept all factual allegations set out in the complaint as true, construing the complaint in the light most favorable to the plaintiff and drawing all inferences in its favor. *Id.* (citing *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).

A court may consider "materials that are part of the public record or do not contradict the complaint" and "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted); *see also Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (considering "matters of public record"). Such materials may include state administrative records, administrative notices, public filings required by law, and documents related to the allegations in the complaint. *Germain Real Estate Co. v. HCH Toyota, LLC*, 778 F.3d 692, 695 (8th Cir. 2015) (contracts among the parties); *Little Gem Life Sciences, LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (SEC filings); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (regulations and administrative notices); *Collins v. Ark. Bd. of Embalmers & Funeral Dirs.*, 2013 WL 2405302, at *1 n.1 (E.D. Ark. May 31, 2013) (records of administrative proceedings). The Court may also rely on facts judicially noticed. *Frye v. Novartis Pharms. Corp.*, 2022 WL 4305656, at *4-5 (E.D. Ark. Sep. 19, 2022).

## ARGUMENT

As a threshold matter, AstraZeneca's action is precluded by claim and issue preclusion because AstraZeneca was a member of PhRMA when it challenged Act 1103 before this Court. All material issues and AstraZeneca's claims were decided or available to PhRMA and should have been raised in that earlier suit. The Court should also dismiss this action because all of

AstraZeneca's claims fail as a matter of law. Act 1103 regulates the distribution of discounted drugs in Arkansas, and it does not conflict with federal patent law, which prohibits states from regulating the price of patented goods. AstraZeneca's patent claim is based on the flawed premise that Act 1103 is a pricing statute rather than a delivery statute. Congress considered and accepted any "re-balancing" of federal statutory frameworks, and AstraZeneca's attempt to pin such re-balancing on Act 1103 is misplaced. Act 1103 complies with the Contracts Clause because AstraZeneca cannot show substantial impairment of its rights and because it should have reasonably expected regulation in this area, which is—and has historically been—heavily regulated. Act 1103 is not a Fifth Amendment taking because it does not regulate price, it does not physically occupy any property, and it is a reasonable regulation under the Supreme Court's standards in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). AstraZeneca voluntarily participates in the 340B Program, and it should address its diversion allegations through the federal 340B administrative dispute resolution process. Likewise, Act 1103 does not violate the Arkansas Constitution.

## I.     Claim and Issue Preclusion Bar AstraZeneca's Lawsuit

This lawsuit is barred by res judicata because *PhRMA v. McClain* "resulted in a final judgment on the merits," that judgment "was based on proper jurisdiction," PhRMA was in privity with AstraZeneca, and "both suits are based upon the same claims or causes of action." *Costner*, 153 F.3d at 673.

The first two prongs are easily satisfied. First, this Court decided *PhRMA v. McClain* by granting a motion for summary judgment on the merits. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he inquiry involved in a ruling on a motion for summary judgment [. . .] necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). Second, *PhRMA v. McClain* was based on proper

16

jurisdiction—PhRMA asserted federal question jurisdiction under 28 U.S.C. § 1331 to challenge Act 1103 as preempted by federal law.  Compl. ¶ 17, *PhRMA I*, 645 F. Supp. 3d 890 (E.D. Ark. 2022) (No. 4:21-CV-864-BRW), ECF No. 1.  This Court took jurisdiction, which no party disputed.

Privity is satisfied because AstraZeneca was a member of PhRMA throughout the proceedings in this Court in *PhRMA v. McClain.  See Midwest Disability*, 929 F.3d at 607 (Privity is satisfied where a party was "adequately represented by someone with the same interests who [wa]s a party" to the prior suit) (quotation omitted).  PhRMA understood itself to be representing its members, and PhRMA adequately represented AstraZeneca's interests. AstraZeneca was a member of PhRMA on September 29, 2021, when PhRMA filed its complaint in *PhRMA v. McClain* (No. 4:21-CV-864-BRW, ECF No. 1), and on December 12, 2022, when this Court decided against PhRMA in that lawsuit (No. 4:21-CV-864-BRW, ECF No. 48).[5]  *See* Megan Wilson, *Top Industry Group for Drugmakers Loses Third Member In Six Months*, PoliticoPro (May 12, 2023) ("AstraZeneca is leaving the Pharmaceutical Research and Manufacturers of America, the top lobbying organization for drugmakers, effective July 1, [2023] the company and group confirmed."), https://subscriber.politicopro.com/article/2023/05/top-industry-group-for-drugmakers-loses-third-member-in-six-months-00096738?source=email.

Moreover, at the time *PhRMA v. McClain* was being litigated, the Chief Executive Officer ("CEO") of AstraZeneca, Pascal Soriot, sat on PhRMA's Board of Directors.  *See* Rachel Cohrs, *AstraZeneca Is Third Member to Leave PhRMA In Five Months*, STAT (May 16, 2023) https://archive.ph/4WO0k.  PhRMA's publicly available 990 tax form conclusively illustrates

---

[5] AstraZeneca was also a member of PhRMA on December 29, 2022, when PhRMA appealed this Court's decision to the Eighth Circuit (Notice of Appeal, *PhRMA*, No. 4:21-CV-864-BRW, ECF No. 57).

that Mr. Soriot was a member of PhRMA's Board of Directors.[6]  As the eighth largest drug company in the world, AstraZeneca, through its CEO, had significant authority over PhRMA's litigation decisions.  *See* Irena Maragkou, *The World's Biggest Pharmaceutical Companies: Top Ten by Revenue*, Pharm. Tech., https://www.pharmaceutical-technology.com/features/top-ten-pharma-companies-in-2023/.  AstraZeneca was clearly in privity with PhRMA during *PhRMA v. McClain*.

PhRMA's "standing to sue depended on its claim to represent its members as the real parties in interest."  *General Foods Corp. v. Mass. Dep't of Pub. Health*, 648 F.2d 784, 787 (1981); *see also Friends of the Earth, Inc. v. Laidlaw Env'l Servs.*, 528 U.S. 167, 181 (2000) (An "association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").[7]  In *PhRMA v. McClain*, PhRMA represented to this Court that it is a "trade association representing the nation's leading innovative biopharmaceutical research companies."  *PhRMA I*, No. 4:21-CV-864-BRW, ECF

---

[6] When considering a Motion for Judgment on the Pleadings, courts "may . . . take judicial  notice of public documents" without treating it as a Motion for Summary Judgment.  *Anderson v. Kelley*, No. 4:20-CV-1195, 2023 WL 5425288, *1 (E.D. Ark. Aug. 3, 2023).  The IRS states that a nonprofit "must make available for public inspection its annual information return (e.g., Form 990, Form 990-EZ)."  *See* https://www.irs.gov/charities-non-profits/public-disclosure-and-availability-of-exempt-organization-returns-and-applications-public-disclosure-overview.  PhRMA's 990 form is a public document and is available on the official IRS website.  *See* https://apps.irs.gov/app/eos/ (choose "Copies of Returns" from "Select Database" dropdown; then choose "Employer Identification Number (EIN)" from "Search By" dropdown; enter "530241211" in the "Search Term" box; click "Search;" click on the "Pharmaceuticals and Researchers of America" hyperlink; select the appropriate tax year; then click on the hyperlink under "Copy of Return" to download)

[7] These requirements were satisfied.  AstraZeneca would have had standing to sue at the time PhRMA filed its lawsuit because AstraZeneca was subject to Act 1103.  Invalidating Act 1103 was germane, or relevant, to PhRMA's purpose in preserving its members' restrictive contract pharmacy policies.  Finally, the participation of individual PhRMA members in the lawsuit was not required—a ruling in favor of PhRMA would have achieved the same result for AstraZeneca that AstraZeneca now hopes to realize through its current lawsuit.  *See PhRMA*, No. 4:21-CV-864-BRW, ECF No. 1, ¶ 13 (asking this Court to enjoin enforcement of Act 1103 against its members); AZ Comp., ECF No. 25, ¶ 9 (asking this Court to enjoin enforcement of Act 1103 against AstraZeneca).

No. 1, ¶ 14.  PhRMA specifically stated that it was representing "the interests of many of the

manufacturers that operate under the federal 340B program" and sought relief for "its members,"

which included AstraZeneca.  *Id.* ¶¶ 5, 13.  PhRMA asked this Court to "issue an order and

judgment declaring that Act 1103 does not require *PhRMA's members* to offer price discounts

under the 340B Program to contract pharmacies in Arkansas" and to "enjoin the implementation

and enforcement of Act 1103 against *PhRMA's members*."  *Id.* at 35 (emphasis added).  PhRMA

necessarily had to represent the interests of its members because Act 1103 impacts only

PhRMA's members and does not impact PhRMA as an organization.

PhRMA adequately represented AstraZeneca in the prior lawsuit.  When an association

representing its members suffers an adverse final judgment, "whether that judgment precludes

subsequent claims by the association's members is a separate issue that turns, in part, on whether

the association was an adequate representative."  *Midwest Disability*, 929 F.3d at 609.  In this

case, PhRMA adequately represented the interests of AstraZeneca in *PhRMA v. McClain*.  *See*

*International Union v. Brock*, 477 U.S. 274, 290 (1986) ("The very forces that cause individuals

to band together in an association will thus provide some guarantee that the association will work

to promote their interests.")  While AstraZeneca might take the position that PhRMA did not

adequately represent it because PhRMA lost, "'[t]actical mistakes or negligence on the part of

the representative' in the first suit are not sufficient to render the representation inadequate for

preclusion purposes."  *Midwest Disability*, 929 F.3d at 609 (quoting Restatement (Second) of

Judgments § 42, cmt. *f* (1980)).  PhRMA vigorously pursued its lawsuit, appealing the decision

of this Court, seeking a hearing en banc after it lost at the Eighth Circuit and seeking certiorari

before the Supreme Court.  *See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning*, 322 F.3d

1064, 1069 (9th Cir. 2003) (finding that members of an association were adequately represented

in previous lawsuit by association when the association pursed previously litigation "vigorously").

Both this suit and *PhRMA v. McClain* are based upon the same claims or causes of action. The Eighth Circuit determines a cause of action to be the "same" if it is based on the "same nucleus of operative facts," meaning that each lawsuit arose from the same underlying factual background. *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990), *cert. denied*, 498 U.S. 823; *see also Crift v. Williams*, No. No. 5:11-cv-00136, 2012 WL 1463973, at *2 (E.D. Ark. Apr. 27, 2012) (a "cause of action" should be interpreted broadly to "encompass various claims arising out of the same nucleus of operative fact"). A plaintiff, such as AstraZeneca, cannot do an end run around the preclusive effect of res judicata by raising new claims based on the same set of facts. *See Lane*, 899 F.2d at 744; *Healy v. Fox*, 46 F.4th 739, 744 (8th Cir. 2022).

AstraZeneca cannot raise a new set of legal arguments applied to the same set of facts. *See Yankton Sioux Tribe*, 533 F.3d at 639; *Lane,* 899 F.2d at 742. In *PhRMA* and again here, the plaintiffs alleged that Act 1103 unconstitutionally requires drug companies to deliver 340B drugs to pharmacies under contract with covered entities. All of AstraZeneca's claims are based on the same factual predicates as PhRMA's claims: in both cases, 340B covered entities order drugs for shipment to contract pharmacies, drug companies refuse to honor those shipments, Act 1103 requires drug companies to ship the drugs to contract pharmacies, and PhRMA and AstraZeneca both allege that Act 1103 imposes a pricing obligation contrary to federal law. *See Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977) (res judicata barred lawsuit brought by members of an association based on prior lawsuit brought by association that concerned the same agreement, the same hearings, the same regulatory scheme, and the same administrative order). Facts are "identical" in both cases for purposes of res judicata because the "wrong sought to be

redressed is the same in both actions." *Hicks v. O'Meara*, 31 F.3d 744, 746 (8th Cir. 1994).

Both lawsuits sought (seek) to invalidate Act 1103 and ask this Court to enjoin AID from

enforcing it against drug companies. *See PhRMA I*, No. 4:21-CV-864-BRW, ECF No. 1, ¶ 13;

AstraZeneca Am. Compl., ECF No. 25, ¶ 9 ("AZ Compl.").[8]

A few samples from their respective complaints show that both cases are predicated on

shipments of 340B discounted drugs to contract pharmacies. PhRMA alleged that Act 1103 is

preempted by the 340B statute because Act 1103 is a "340B pricing mandate" and "Congress …

did not intend for retail pharmacies to receive discounted 340B pricing." *PhRMA I*, No. 4:21-

CV-864-BRW, ECF No. 1, ¶¶ 68–69. AstraZeneca's claims are all based on these same factual

allegations. AstraZeneca's patent law preemption claim is premised on the allegation that "Act

1103's provisions requiring manufacturers to distribute 340B drugs to unlimited contract

pharmacies, and empowering Defendant McClain and AID to pursue purported violations of the

statute, are preempted by federal patent law under the Supremacy Clause." AZ Compl. ¶ 92.

AstraZeneca claims that Act 1103 violates the Contracts Clause because "Act 1103 …

substantially impairs AstraZeneca's PPA [Pharmaceutical Pricing Agreement] with the HHS

Secretary by requiring delivery of 340B-discounted drugs to contract pharmacies, thus

purporting to substantially expand AstraZeneca's obligations under the agreement beyond what

the agreement itself provides." AZ Compl. ¶ 96. AstraZeneca alleges that Act 1103 constitutes

a Taking because "Act 1103 takes private property for private use by forcing manufacturers to

transfer their prescription drugs to contract pharmacies and covered entities." AZ Compl. ¶ 102.

PhRMA could have raised the legal arguments that AstraZeneca now presents, but it did

not. *See generally Healy v. Fox*, 46 F.4th 739 (8th Cir. 2022); *see also Maddox v. U.S. Dep't of*

---

[8] The Court may take judicial notice of PhRMA's complaint. *See Frye*, 2022 WL 4305656, at *4-*5 (considering drug labeling on Rule 12(b)(6) motion to dismiss product liability claims).

*Defense*, 2011 WL 6027145, at *2 (E.D. Ark. 2011) ("[W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim."). Because AstraZeneca's lawsuit is simply "dressed up to look different" than PhRMA's lawsuit—without any substantive change in facts—it arises out of the same nucleus of operative facts. *Lane*, 899 F.2d at 744; *see also Healy*, 46 F.4th at 744 ("If the claims arose out of a single act or dispute and one claim has been brought to a final judgment, then all other claims arising out of that same act or dispute are barred.").

For all the same reasons, issue preclusion bars re-litigation of the facts and issues this Court decided in *PhRMA*. For example, AstraZeneca cannot dispute that Act 1103 regulates distribution. Yet its entire complaint is premised on the contention that Act 1103 regulates pricing. This Court conclusively determined—and PhRMA had the opportunity to litigate—all facts and conclusions of law underpinning the Court's determination that "[e]ven though the title of Act 1103 includes pricing in its name, the effects of the disputed provisions are limited to the distribution of and access to the discounted drugs." *PhRMA I*, 645 F. Supp. 3d at 901. AstraZeneca is barred from disputing all material issues related to its claims, which were previously decided, and this Court's determinations bar AstraZeneca's claims as a matter of law. *See Berns*, 726 F.2d at 410; *Robinette*, 476 F.3d at 589-90; *John Morrell & Co.*, 913 F.2d at 564.

Therefore, AstraZeneca's suit is precluded by claim preclusion and issue preclusion, and the Court should dismiss this action with prejudice.

## II.    AstraZeneca's Claims Fail as a Matter of Law

### A.    Act 1103 Regulates the Distribution of Drugs Not the Price of Drugs

All of AstraZeneca's claims are premised on the same flawed argument that Act 1103 regulates price. But this Court and the Eighth Circuit have already held otherwise. *PhRMA I*,

645 F. Supp. 3d at 901, *aff'd*, 95 F.4th 1136, 1145 (8th Cir. 2024).  Act 1103 regulates the

distribution—not the price—of drugs obtained by covered entities for distribution to contract

pharmacies in Arkansas.  *Id.* ("[T]he effects of" Act 1103 "are limited to the distribution of and

access to the discounted drugs."); *see also Sanofi Aventis U.S., LLC*, 58 F.4th at 703 ("The text

[of 340B] is silent about delivery.").  The Eighth Circuit agrees that Act 1103 regulates

distribution.  *PhRMA II*, 95 F.4th at 1145 (Referring to "Act 1103's distribution requirement");

*see also PhRMA v. Murrill*, No. 6:23-CV-00997, 2024 WL 4361597, at *9 (W.D. La. Sept. 30,

2024) ("[D]iscounts are set by the federal government, not the State of Louisiana or Act 358.

Act 358, addresses only contract pharmacies, a matter that is not addressed in Section 340B.").

   Act 1103 focuses on the relationship between a pharmacy and a covered entity and the

covered entity's access to a manufacturer's drugs, which is governed under state drug

distribution laws.  *See* 1996 Guidance, 61 Fed. Reg. at 43,550.  Arkansas has several statutes

governing access to a manufacturer's drugs by addressing a party's ability to order and receive

drugs and other aspects of the drug delivery system.  *See, e.g.*, Ark. Code Ann. § 20-64-505;

Ark. Code Ann. § 20-64-501 *et seq.* (grounds for pharmacies to receive and possess legend and

controlled drugs); 070-39-8 Ark. Code R. § 2 (allowing distribution of controlled substances if

certain requirements are met).

   AstraZeneca mischaracterizes the impact of Act 1103 and claims that the only difference

between sales that comply with and violate Act 1103 is the price.  AZ Compl. ¶ 70.  To the

contrary, the crux of this case is that drug companies like AstraZeneca refuse to *distribute* a drug

that has been priced under the 340B Program.  Act 1103 presumes as a starting point that the

federal law is being complied with by the covered entity and, if so, says that the 340B-priced

drug must be distributed to the contract pharmacy of the covered entity's choice.

23

Act 1103 does not cap or fix drug prices as AstraZeneca alleges. AZ Compl. ¶ 70. The price is set by the federal 340B statute, not Act 1103. 42 U.S.C. § 256b(a)(1). Under Act 1103, the Arkansas contract pharmacy "receives," not purchases, the 340B drugs, meaning the contract pharmacy receives *possession* of drugs already purchased at 340B prices. Ark. Code Ann. § 23-92-604(c)(2); *PhRMA II*, 95 F.4th at 1144 ("Pharmacies do not purchase 340B drugs, and they do not receive the 340B price discounts."). The contract pharmacy "receives drugs purchased under a 340B drug pricing contract pharmacy arrangement with an entity authorized to participate in 340B drug pricing." Ark. Code Ann. § 23-92-604(c)(2). The contract pharmacy simply acts as a dispensing agent for the covered entity that has already purchased the 340B drugs. Act 1103 does not transform contract pharmacies into covered entities because Act 1103 plainly applies to drugs already purchased by covered entities.

### B.    Federal Patent Law Does Not Preempt Act 1103

Act 1103 is not preempted by federal patent law because Act 1103 is distribution statute and in no way interferes with AstraZeneca's patent rights. Act 1103 does not conflict with federal patent law because, as this Court correctly held, Act 1103 regulates the distribution—not the price—of drugs obtained by covered entities for distribution to contract pharmacies in Arkansas. *PhRMA I*, 645 F. Supp. 3d at 901 ("[T]he effects of" Act 1103 "are limited to the distribution of and access to the discounted drugs."). The price of 340B drugs is set by the federal 340B statute. Act 1103 merely regulates distribution of drugs that have already been priced by the federal statute. AstraZeneca misconstrues *Biotechnology Industry Organization v. District of Columbia*, 496 F.3d 1362 (Fed. Cir. 2007) ("*BIO*"), which invalidated a District of Columbia law plainly targeted at patented drugs, unlike Act 1103. Act 1103 permissibly regulates distribution of 340B drugs regardless of whether they are patented.

Courts have historically applied a presumption against preemption when state laws or regulations concern "matters related to health and safety." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985). Act 1103 fits squarely into this category. In *PhRMA v. McClain*, the Eighth Circuit addressed this very issue in a similar preemption challenge to Arkansas Act 1103. The Eighth Circuit held that "when it comes to pharmaceuticals, the federal government has traditionally regarded state law as a complementary form of drug regulation and has long maintained that state law offers an additional, and important, layer of consumer protection that complements federal regulation." *PhRMA II*, 95 F.4th at 1143 (cleaned up); *see also PhRMA v. Murrill*, 2024 WL 4361597, at *13 (same).

A state law such as Act 1103 regulating patentable inventions will be upheld if it does not "conflict with the operation of the laws in [such] area passed by Congress." *Kewanee*, 416 U.S. at 479; *see also Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 752 (S.D. Miss. 2024) (finding that a similar law to Act 1103 did not "clash[] with the objectives of the federal patent laws"); *Novartis Pharms. Corp. v. Bailey*, No. 24-cv-04131, 2025 WL 489881, at *3 (W.D. Mo. Feb. 13, 2025) (holding that a law similar to Act 1103 "does not conflict preempt the Federal Patent and Drug Exclusivity Laws under the Supremacy Clause."). AstraZeneca argues that Act 1103 disrupts the balance of rewards and incentives in the patent law. AZ Compl. ¶ 91. However, district courts considering state laws similar to Act 1103 rejected a similar manufacturer argument that "state laws capping prices on drugs that federal law insulates from competition interfere with the objectives of federal law." *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d at 752; *see also Novartis Pharms. Corp. v. Bailey*, 2025 WL 489881, at *3 (holding that a state law similar to Act 1103 does not rebalance the rewards and incentives of patent law). In *Novartis v. Fitch*, the court correctly pointed out that "Section 340B does not impose

discounts on drugs beyond those for which manufacturers have already agreed to provide

discounts in order to participate in Medicare Part B and Medicaid." *Novartis Pharms. Corp. v.*

*Fitch*, 738 F. Supp. 3d at 753. Therefore, because the state law did "not purport to lower prices

on any drugs not already discounted under Section 340B," it did "not substantially interfere with

the incentives created by patent laws or other federal laws establishing regulatory exclusivities."

*Id.* The same analysis applies here: prices are set by the 340B statute, not Act 1103, and Act

1103 therefore does not interfere with federal patent law.

AstraZeneca relies heavily on *BIO*, 496 F.3d 1362 (Fed. Cir. 2007), to argue that Act

1103 is preempted by federal patent law. AZ Compl. ¶¶ 67-69. AstraZeneca's reliance is

misplaced because Act 1103 does not apply solely to patented drugs, and Arkansas has

appropriately exercised its police powers to regulate distribution of 340B drugs generally without

singling out patented products. *PhRMA v. Murrill*, 2024 WL 4361597, at *9 ("[T]he *BIO* case

does not support AstraZeneca's conflict preemption argument based on federal patent law.").

AstraZeneca's patent rights are not disturbed by Act 1103.

In *BIO*, the Federal Circuit considered whether legislation passed by the District of

Columbia prohibiting "any patented drug from being sold in the District for an excessive price"

was preempted by federal patent law. *BIO*, 496 F.3d at 1365. The court articulated several

reasons why the legislation was "contrary to federal law" and preempted. *Id.* at 1373. None of

those factors are present here. First, the court pointed out that the law was "in no way general,

affecting only patented products" and stood "largely—indeed, exclusively—within the scope of

the patent laws." *Id.* at 1373-74. The D.C. statute explicitly called out excessively priced

"patented prescription drug[s]," leading the court to conclude that "its effect is to shift the

benefits of a patented invention from inventors to consumers." *Id.* at 1365, 1374. Act 1103

neither applies solely to patented drugs nor explicitly mentions patented prescription drugs. That is because it applies only to statutorily defined 340B covered outpatient drugs. Act 1103 in no way affects the period of AstraZeneca's—or any patent holder's—rights of exclusivity.

The Supreme Court has held that protections not aimed *exclusively* at the promotion of invention itself are not preempted under federal Patent law. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989); *Kewanee Oil Co.*, 416 U.S. at 490. This is true even if the "state law protection [such as Act 1103 is] available for ideas which clearly [fall] within the subject matter of [federal] patent [law]." *Bonito Boats*, 489 U.S. at 155. Indeed, in denying a petition for rehearing en banc in *BIO*, one judge stated a similar proposition: "It is well established that states can generally regulate patented products as part of their general exercise of police powers without preemption, even if this regulation incidentally affects the profits a patentee gains from its patent." *Biotechnology Indus. Org. v. D.C.*, 505 F.3d 1343, 1346 n.1 (Fed. Cir. 2007).

Further, unlike the law in *BIO*, where the "fact that the [law was] targeted at the patent right [was] apparent on its face," Act 1103 does not mention, or affect, patented drugs because its purpose is not to regulate patented drugs. *BIO*, 496 F.3d at 1374; *see PhRMA v. Murrill*, 2024 WL 4361597, at *9 ("Louisiana's Act 358," which is similar to Act 1103, "does not, on its face, target patent rights or, by its terms, apply only to patented drugs or the price of patented drugs."). Finally, Act 1103 does not have the consequence of "re-balanc[ing] the statutory framework of rewards and incentives . . . in effect diminishing the reward to patentees in order to provide greater benefit to . . . drug consumers." *BIO*, 496 F.3d at 1374; AZ Compl. ¶¶ 68-67. As explained above, Act 1103 regulates the distribution of drugs, not pricing. *See Novartis Pharms. Corp. v. Bailey*, 2025 WL 489881, at *3 ("Both the plain language of the statute as well as

precedent within the Eighth Circuit has established that statutes akin to S.B. 751 do not directly regulate the pricing of 340B drugs as regulation of pricing is determined by the federal 340B statute."). Even so, Act 1103 presumes as a starting point that covered entities are complying with the federal 340B statute. Any "re-balancing" of the patent law framework was considered and appropriately accepted by Congress when it first passed the 340B statute in 1992. Veterans Health Care Act of 1992, Pub. L. No. 102-585, §§ 602–603, 106 Stat. 4943, 4967 (1992).

In sum, under Act 1103, AstraZeneca will maintain its exclusive right to sell its patented pharmaceuticals, which is a primary objective of federal patent law. Act 1103 does not disrupt AstraZeneca's monopoly on its patented drugs and therefore does not conflict with federal patent law.

### C.    Act 1103 Does Not Violate the Contracts Clause

Act 1103 has no effect, much less a substantial impairment, on AstraZeneca's contract with the HHS Secretary. Therefore, Act 1103 does not violate the Contracts Clause, which prohibits states from enacting laws "impairing the Obligation of Contracts." U.S. CONST. art. I, § 10. A state law only violates the Contracts Clause if (1) the law operates as a substantial impairment to the preexisting contract, (2) a state has a legitimate and public purpose for the law, and (3) the adjustment of rights of contracting parties is reasonable and appropriate considering the public purpose justification. *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 850 (8th Cir. 2002). The Contracts Clause's limitation is "not an absolute one and is not to be read with literal exactness like a mathematical formula." *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Pub. Welfare*, 742 F.2d 442, 449 (8th Cir. 1984) (quoting *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934)).

AstraZeneca fails under the first factor because Act 1103 does not operate as a substantial impairment on AstraZeneca's PPA with HHS. The Supreme Court has held that PPA terms do

nothing more than to "simply incorporate statutory obligations and record manufacturers' agreement to abide by them." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011). AstraZeneca concedes as much. AZ Compl. ¶ 74 ("PPAs are not transactional, bargained-for contracts.") (internal quotations omitted). Act 1103 does not impair AstraZeneca's PPA because Act 1103 regulates distribution, an area outside the 340B Program and hence the PPA, as explained above. *See PhRMA II*, 95 F.4th at 1145 ("Act 1103 does not require manufacturers to provide 340B pricing discounts to contract pharmacies. Act 1103 does not set or enforce discount pricing."). In rejecting AstraZeneca's similar challenge to another state law, a Louisiana court found that "AstraZeneca cannot point to any way in which the Act expands or contradicts its PPA because, like the [340B] statute, the PPA is silent as to delivery to or acquisition of Section 340B drugs to contract pharmacies." *PhRMA v. Murrill*, 2024 WL 4361597, at *12.

Likewise, Act 1103 is not an "expansion[] of beneficiaries" as AstraZeneca alleges, AZ Compl. ¶¶ 77-78, because contract pharmacies do not purchase 340B drugs. *Novartis Pharms. Corp. v. Bailey*, 2025 WL 489881, at *4 (State law similar to Act 1103 "does not require manufacturers to extend the federal 340B discount to contract pharmacies, it just restricts pharmaceutical companies from infringing on the distribution and delivery of 340B drugs bought by covered entitles utilizing the 340B program."). A contract pharmacy merely takes physical possession of 340B drugs on behalf of the covered entity and dispenses those drugs to the covered entity's patients. Pedley Decl. ¶¶ 7-9. AstraZeneca has not identified any way in which Act 1103 "substantially impairs" its PPA with the HHS Secretary. Indeed, other courts have rejected these exact arguments from AstraZeneca. *PhRMA v. Murrill*, 2024 WL 4361597, at *12 (finding that a law similar to Act 1103 "only affects the *delivery* or *acquisition* of Section 340B

drugs" and therefore "does not change or expand which entities qualify as 340B 'covered

entities" or "in any way change[] AstraZeneca's obligations under its PPA").

Furthermore, AstraZeneca cannot show substantial impairment because it is "operating in

a heavily regulated industry," so its "reasonable expectations have not been impaired."

*Hawkeye*, 486 F.3d at 436-38 (similar to natural gas prices, "State authority to regulate

[distribution] is well established" in this case). When evaluating a Contracts Clause claim, the

Eighth Circuit considers "whether the industry the complaining party has entered has been

regulated in the past." *Hawkeye*, 486 F.3d at 438 (quoting *Energy Rsrvs. Grp. v. Kan. Power &

Light Co.*, 459 U.S. 400, 411 (1983)); *see also Energy Rsrvs. Grp., Inc.*, 459 U.S. at 411 ("When

he purchased into an enterprise already regulated in the particular to which he now objects, he

purchased subject to further legislation upon the same topic" (quoting *Allied Structural Steel Co.

v. Spannaus*, 438 U.S. 234, 242 n.13 (1978))). Here, HHS guidance has for years required

delivery to multiple contract pharmacies, as AstraZeneca concedes. AZ Compl. ¶ 25. Thus, a

Louisiana federal district court recently held that AstraZeneca should expect regulation in this

exact scenario. *PhRMA v. Murrill*, 2024 WL 4361597, at *13 (The "drug industry is a

pervasively regulated business," so "AstraZeneca can reasonably expect regulation with respect

to the sale of drugs and, especially with respect to its voluntary participation in federal benefit

programs such as Medicaid and Medicare") (cleaned up). Because AstraZeneca can reasonably

expect regulation of its industry, and in fact has been subject to similar regulation in the past, it

fails the first prong of a Contracts Clause claim.

Even if substantial impairment existed—which it does not—Arkansas has a legitimate,

justifiable, and reasonable purpose for enacting Act 1103. *Id.* (finding that a state law like Act

1103 had a "legitimate purpose" in "promot[ing] greater access to discounted drugs by

preventing restrictions on the distribution of those drugs").  Restrictions on contract pharmacies systematically deprive many vulnerable patient populations of necessary medications.  The Arkansas legislature enacted Act 1103 to remedy this broad public health problem, and this Court should defer to the legislature's judgment concerning this remedy.  The Supreme Court has made clear that where the state itself is not a contracting party, as is the case here, courts should "properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987) (quoting *Energy Reserves Grp.*, 459 U.S. at 413); *see also Ass'n of Equip. Manufacturers v. Burgum*, 932 F.3d 727, 730 (8th Cir. 2019).

The Eighth Circuit has also explained the "inherent police power of the state" to "safeguard the vital interests of its people" is an appropriate justification for a state law. *Burlington N. R. Co.*, 802 F.2d at 1005 (quoting *Energy Reserves Grp., Inc.*, 459 U.S. at 410); *see also Hawkeye*, 486 F.3d at 436 (stating that the police power "extends to all matters affecting the public health or the public morals" (quoting *Stone v. Mississippi*, 101 U.S. 814, 818 (1879))); *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 449 (8th Cir. 1984) ("It has long been recognized that the prohibition of laws impairing the obligation of contracts does not prevent states from acting pursuant to their inherent police power to promote the public welfare.").  Enacting laws that promote health and welfare falls under the states' traditional police power. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Protecting the distribution of 340B-priced drugs to Arkansas contract pharmacies is squarely within Arkansas' police power to regulate the public health and safety of its citizens.  Thus, reasonable justifications underly Act 1103, which remedies a broad social malady.

### D.    AstraZeneca's Takings Claim Is Based on a Mischaracterization of Act 1103

AstraZeneca alleges that Act 1103 is an unconstitutional taking because it "forces

31

manufacturers to transfer their prescription drugs to other private (non-governmental) entities-namely, to contract pharmacies and the covered entities with which they contract." AZ Compl. ¶ 85. This claim is based on a mischaracterization of Act 1103. Act 1103 prohibits 340B-participating drug companies from blocking delivery of 340B drugs to contract pharmacies. As such, the law only applies if a drug company (1) chooses to participate in the 340B Program and (2) seeks to block delivery of 340B drugs to covered entities and their contract pharmacies. AstraZeneca fails to acknowledge these two conditions, which fatally undermine its Takings claim.

Regarding the first condition, AstraZeneca can avoid the undesired impact of Act 1103—including the alleged harm of being forced to transfer its drugs to private parties—by simply withdrawing from the 340B Program. Act 1103 cannot take AstraZeneca's property if AstraZeneca has the means to shield itself from application of the law. Regarding the second condition, it is the 340B statute, not Act 1103, that requires AstraZeneca to offer and sell 340B drugs to covered entities. Any alleged Takings claim should therefore be directed at Congress, not the Arkansas legislature. Once AstraZeneca's mischaracterization of Act 1103 is revealed, both its *per se* and regulatory takings claims fall apart. So does its claim that Act 1103 is a taking under the Arkansas constitution.

### 1.    There Is No Taking Because AstraZeneca Voluntarily Participates in the 340B Program

Drug companies voluntarily participate in the 340B Program as a condition of coverage for their drugs under state Medicaid programs and Medicare Part B. 42 U.S.C. §§ 256b(a)(1), 1396r–8(a)(1); *see also PhRMA II*, 95 F.4th at 1141 ("[A]s a condition of participating in Medicaid, drug manufacturers must 'opt into the 340B Program by signing a form Pharmaceutical Pricing Agreement' with the Secretary of HHS.") (quoting *Astra USA, Inc.*, 563

U.S. at 113)).  Therefore, AstraZeneca has agreed to provide 340B pricing on its drugs to covered entities under federal law because it wants its drugs reimbursed by Medicaid and Medicare Part B.

Federal courts have held that Takings violations do not stem from a private party's voluntary participation in federal or state programs.  When a private party voluntarily enters into arrangement with the federal or a state government, no taking occurs.  *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *17, 19.  Drug companies retain the power to withdraw from Medicaid and Medicare Part B at any point, which would relieve their obligation to participate in the 340B Program.  *PhRMA v. Murrill*, 2024 WL 4361597, at *15 (stating that 340B "only applies to drug manufacturers who voluntarily participate in the Medicaid and Medicare programs. [A drug company] is not compelled to participate in these programs.").  The Eighth Circuit has held that despite the strong financial incentives to participate in Medicaid, participation is voluntary.  *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984) (holding that no taking occurred in a state statute regulating pricing under Medicaid because Medicaid participation is voluntary).  Courts have specifically "rejected Takings Clause challenges to the 340B Drug Price Program" because the program is voluntary. *Boehringer Ingelheim Pharms., Inc. v. HHS.*, No. 3:23-CV-01103, 2024 WL 3292657, at *13 (D. Conn. July 3, 2024) (citing *Eli Lilly & Co. v. HHS*, No. 1:21-CV-00081, 2021 WL 5039566, at *21 (S.D. Ind. Oct. 29, 2021)).

For decades, AstraZeneca has voluntarily participated in the federal 340B drug pricing program.  Not only has AstraZeneca been aware during this time that covered entities rely on contract pharmacy replenishment systems to manage 340B inventories at both their in-house and contract pharmacies, AstraZeneca has explicitly recommended use of the contract pharmacy

replenishment model.  AstraZeneca, *Notice to 340B Covered Entities Regarding CALQUENCE Replenishment and CALQUENCE Capsule Formulation Discontinuation*, https://www.hrsa.gov/sites/default/files/hrsa/opa/calquence-notice-340b.pdf ("AstraZeneca is hereby providing notice that it voluntarily agrees that covered entities utilizing virtual inventory management with a 340B inventory replenishment model may count accumulations of the CALQUENCE capsule NDCs toward replenishment of equal quantities of the corresponding CALQUENCE tablet NDC.").  Thus, AstraZeneca cannot allege that its patented property has been taken whenever a covered entity purchases a 340B drug and arranges for the drug to be delivered to it or its contract pharmacy.  The transfer of 340B drugs to covered entities and contract pharmacies is exactly what AstraZeneca signed up for when it enrolled in the 340B Program.

> **2.      AstraZeneca's Takings Claim Is a Disguised Diversion Allegation That Should Be Brought Under the Federal 340B Statute**

Under the 340B statute, covered entities that purchase 340B drugs may not resell or transfer such drugs to any entity or individual who is not a patient of the covered entity.  42 U.S.C. § 256b(a)(5)(B).  This prohibition is commonly known as "diversion."  AstraZeneca's allegation that Act 1103 violates the Takings Clause by forcing it to transfer 340B drugs to contract pharmacies is, at its core, an allegation that covered entities are engaging in diversion in violation of the 340B statute.  Paragraph four of AstraZeneca's complaint, for example, alleges that "covered entities do not retain title over products held," which is just another way of alleging that they are diverting their 340B drugs to ineligible parties.  AZ Compl. ¶ 4.

This Court has already ruled that the proper forum for adjudicating a 340B diversion claim is the federal 340B administrative dispute resolution ("ADR") process, not through a challenge to Act 1103.  *PhMRA I*, 645 F. Supp. 3d 890, 900 (E.D. Ark. 2022), *aff'd*, 95 F.4th

1136 (8th Cir. 2024) ("There can be no dispute that Congress mandated that any concern regarding diversion be addressed first through ADR procedures, not in federal court.")  The Eight Circuit has ruled the same.  95 F.4th 1136 (8th Cir. 2024) ("When payment, pricing, diversion, or discount disputes arise between manufacturers and covered entities, 340B mandates parties first go through HHS's dispute resolution process to resolve the issue.").  AstraZeneca is therefore seeking this Court's opinion on a nonjusticiable subject that must first be resolved through the federal ADR process.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08, (2003) (Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.").

AstraZeneca's takings argument is based on the same flawed premise that formed the basis of its preemption argument—that Act 1103 governs drug pricing.  As explained above, Act 1103 does not regulate drug prices and instead regulates drug distribution.  *See PhRMA II*, 95 F.4th at 1145 ("Act 1103 does not require manufacturers to provide 340B pricing discounts to contract pharmacies.  Act 1103 does not set or enforce discount pricing.").  By its nature as a drug distribution law, Act 1103 does not mandate or allow the state of Arkansas take anything from AstraZeneca.  AstraZeneca's claims under the Takings Clause are, in reality, diversion claims.  Both this Court and the Eighth Circuit have held that the proper forum for such allegations is the statutorily-mandated 340B ADR process.

### 3.    Act 1103 Is Not a *Per Se* Taking

The voluntary nature of AstraZeneca's participation in the 340B Program eviscerates its claim that Act 1103 is a "*per se* taking."  In no way is AstraZeneca subject to a "forced transfer"

of drugs to contract pharmacies, amounting to a "physical appropriation" of property.  AZ

Compl. ¶ 87.  Act 1103 does not require AstraZeneca to sell or donate 340B drugs to contract

pharmacies.  Instead, the covered entity purchases the drugs, and the contract pharmacy merely

dispenses those drugs to the covered entity's patients on behalf of the covered entity.  Notice

Regarding 340B Drug Pricing Program—Contract Pharmacy Services, 75 Fed. Reg. 10,272,

10,277 (Mar. 5, 2010).  This arrangement has long been blessed by HHS, which administers the

340B Program.  *Id.*  The Eighth Circuit has already decided that "[p]harmacies do not purchase

340B drugs, and they do not receive the 340B price discounts."  *See PhRMA II*, 95 F.4th at 1139.

Nor does Act 1103 authorize covered entities and contract pharmacies to seize 340B

drugs from AstraZeneca or to deprive AstraZeneca of the value of its property.  *Cf. Lingle v.*

*Chevron*, 544 U.S. 528, 528 (2005) (finding a *per se* taking if owner is subject to a "permanent

physical invasion of her property" or a complete deprivation of "*all* economically beneficial

us[e]" of her property") (cleaned up); *Iowa Assurance Corp. v. City of Indianola*, 650 F.3d 1094,

1097 (8th Cir. 2011).  Act 1103 is not a physical invasion and does not deprive AstraZeneca of

all economically beneficial uses.  Act 1103 simply regulates distribution of AstraZeneca's

products that have been discounted by virtue of AstraZeneca's voluntary participation in a

federal drug pricing program.

AstraZeneca reasons that because federal *law does not require* drug companies to

"transfer their own property" to other private parties, any state law such as Act 1103 violates the

Takings Clause.  AZ Compl. ¶ 86.  This reasoning is fundamentally flawed.  It is the 340B

statute that requires AstraZeneca to transfer its property to covered entities at discounted prices.

Act 1103 simply states that a covered entity may direct delivery of those medications to

pharmacies where patients may access them.  And the 340B statute is "*silent about delivery.*"

*Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703 (3d Cir. 2023) (emphasis in original).  This

silence does not mean that state 340B drug distribution regulations are prohibited—rather, the

silence demonstrates Congress's intention that states, not the federal government, make such

decisions.  *PhRMA II*, 95 F.4th at 1143 (Congress's silence about delivery of 340B drugs permits

state regulation).

### 4.    Act 1103 Is Not a Regulatory Taking

Act 1103 does not effect a regulatory taking.  The Supreme Court has established three

factors to determine whether a regulatory action is an unconstitutional taking.  *Penn Cent.*

*Transp. Co. v. City of New York*, 438 U.S. 104 (1978).  These factors are: 1) the economic

impact of the regulation; 2) the extent to which the regulation interferes with the investment-

backed expectations; and 3) the character of the governmental action.  *Id.* at 124.  All three

factors show that Act 1103 does not effect a taking.

Regarding the first factor, Act 1103 has no economic impact on AstraZeneca independent

of the economic impact of the 340B Program because 340B prices are set by the 340B statute,

not Act 1103, as explained above.  *See PhRMA II*, 95 F.4th at 1145 ("Act 1103 does not require

manufacturers to provide 340B pricing discounts to contract pharmacies. Act 1103 does not set

or enforce discount pricing.").

But assuming, *arguendo*, that Act 1103 diminishes the value of AstraZeneca's drugs,

there is no taking because "the mere diminution in the value of property, however serious, is

insufficient to demonstrate a taking."  *Cmty. Hous. Improvement Program v. City of New York*,

59 F.4th 540, 554 (2d Cir. 2023) (citing *Concrete Pipe & Prods. of Cal. v. Constr. Laborers*

*Pension Tr.*, 508 U.S. 602, 645 (1993)).  A fundamental principle of Takings Clause

jurisprudence is that "property may be regulated to a certain extent . . . ."  *Penn. Coal Co. v.*

*Mahon*, 260 U.S. 393, 415 (1922).  In 2023, AstraZeneca reported $45.8 billion in revenue and

$8.2 billion in operating profits.  *See* AstraZeneca, What Science Can Do; AstraZeneca Annual

Report and Form 20-F Information 2023,

https://www.astrazeneca.com/content/dam/az/Investor_Relations/annual-report-

2023/pdf/AstraZeneca_AR_2023.pdf.  A recent study determined that 340B discounts are only a

"small share of drug company revenue."  The American Hospital Association, The 340B Drug

Pricing Program 1 (Healthsperian 2024),

https://www.aha.org/system/files/media/file/2024/03/The-340B-Drug-Pricing-Program.pdf.  Act

1103 plainly does not threaten AstraZeneca's economic viability.  *Franklin Mem'l Hosp. v.*

*Harvey*, 575 F.3d 121, 126-27 (1st Cir. 2009) (where "expenditures represent only a small

fraction of  [entity's] overall budget," the economic impact prong is not satisfied).

Regarding the second criterion, Act 1103 does not interfere with AstraZeneca's

"investment-backed expectations."  *Penn Central*, 438 U.S. at 124.  Drug distribution is heavily

regulated, and "no party doing business in a regulated environment" can expect the regulatory

environment "to remain static."  *Cmty. Hous. Improvement Program*, 59 F.4th at 555, *cert.*

*denied*, 144 S. Ct. 264 (2023); *see also Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121 (1st Cir.

2009).  AstraZeneca has operated in this regulatory environment for years.[9]  As discussed above,

contract pharmacy arrangements existed before the enactment of Section 340B, and HRSA has

recognized covered entities' right to enter into contract pharmacy arrangements since 1996.

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy

Services, 61 Fed. Reg. 43,549 (Aug. 23, 1996); Notice Regarding 340B Drug Pricing Program—

Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,277 (Mar. 5, 2010).  Therefore, any

---

[9] AstraZeneca's publicly available SEC filings include references to 340B as far back as 2006. Investis, *Section 16 Filings,* https://otp.tools.investis.com/clients/us/astrazeneca/SEC/sec-filing.aspx (type "340B" in "Search Text" box; then click "Search").

investment backed expectations since then have *included* an understanding that 340B drugs will be shipped to contract pharmacies. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1006-08 (1984) (rejecting takings claim brought by plaintiff who was aware of the conditions of participation in a voluntary program); *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *17-20.

Lastly, under the third criterion, the "character" of Act 1103 demonstrates that it is not an unlawful taking. Act 1103 was not "enacted solely for the benefit of private parties" and instead furthers "important public interests." *Keystone Bituminous*, 480 U.S. at 485–86. When a statute such as Act 1103 primarily concerns "profound" economic loss, as AstraZeneca argues, Am. Compl., ¶88, the Supreme Court interprets the concept of important public interests broadly, incorporating a "longstanding policy of deference to legislative judgments." *Kelo v. City of New London*, 545 U.S. 469, 480-82 (2005); *see also AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *17.

Arkansas enacted Act 1103 to protect Arkansas' safety net health care providers and their patients. These concerns are "important public interests" that should not be second-guessed. *See Cmty. Hous. Improvement Program*, 59 F.4th at 555. Protecting the distribution of 340B-priced drugs to Arkansas contract pharmacies is squarely within the scope of Arkansas' police power to regulate the public health and safety of its citizens. *See Rice*, 331 U.S. at 230; *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *20. As the Eighth Circuit explained, pharmacies have "traditionally been regulated at the state level, and we must assume that absent a strong showing that Congress intended preemption, state statutes that impact health and welfare are not preempted." *PhRMA II*, 95 F.4th at 1144. The Eighth Circuit found no such strong showing, and the court's reasoning applies equally to AstraZeneca's takings claim. Thus, Act 1103 furthers a valid "public purpose." *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 233 (1984).

Act 1103 merely "adjust[s] the benefits and burdens of economic life to promote the common good." *Franklin Mem'l Hosp.*, 575 F.3d at 128-29.

### 5.    Act 1103 Is Not a Taking Under the Arkansas Constitution

The "Arkansas Supreme Court has not provided a 'definitive statement' of what constitutes a taking." *Watkins v. Lawrence Cnty.*, No. 3:17-CV-00272, 2020 WL 13389385, at *7 (E.D. Ark. May 19, 2020).  Like the United States Supreme Court, the Supreme Court of Arkansas has held that Arkansas Takings Clause must submit to the reasonable exercise of the police power. *Richardson v. City of Little Rock Planning Comm'n*, 295 Ark. 189, 190-91 (1988) (the existence of the Arkansas Takings Clause "does not mean, however, that an individual is constitutionally guaranteed the right to do with such property as he or she wishes in all circumstances"); *Lucas*, 505 U.S. at 1027 (a property owner should necessarily expect that the uses of his property will "be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers").

Because the Takings Clauses of the Fifth Amendment and the Arkansas Constitution "use substantially similar language," this Court recently held that there was "no reason to treat the claims under the two clauses differently." *Hurd*, 2024 WL 4571445, at *17.  Thus, for the same reasons that Act 1103 does not violate the Takings Clause of the Fifth Amendment as discussed above, Act 1103 likewise does not effectuate a taking under the Arkansas Constitution.

### CONCLUSION

For the foregoing reasons, the Court should grant DCMC's motion for judgment on the pleadings and dismiss AstraZeneca's complaint with prejudice.

Dated: February 20, 2025                        Respectfully submitted,

Frederick H. Davis, Ark. Bar No. 2012271      Ronald S. Connelly, D.C. Bar No. 488298*

40

Jess Askew, III, Ark. Bar No. 86005
Ashley W. Hudson, Ark. Bar No. 2007136
KUTAK ROCK, LLP
124 West Capitol Avenue, Suite 2000
Little Rock, AR 72201
T: (501) 975-3000
F: (501) 975-3001
jess.askew@kutakrock.com
ashley.hudson@kutakrock.com
frederick.davis@kutakrock.com
*Counsel for Intervenor-
Defendant Dallas County Medical Center*

Fernando Montoya, D.C. Bar No. 90007361*
Hannah Hauer, D.C. Bar No. 90008945*
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave NW, Eighth Floor
Washington DC 20036
T: (202) 466-6550
Ron.Connelly@PowersLaw.com
*Counsel for Intervenor-Defendant Dallas County
Medical Center*
*Admitted pro hac vice