UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, <br><br> *Plaintiff,* <br><br> v. <br><br> JIMMY HARRIS, in his official capacity as Commissioner of the Arkansas Insurance Department, <br><br> *Defendant,* <br><br> v. <br><br> DALLAS COUNTY MEDICAL CENTER <br><br> *Defendant-Intervenor.* | Case No. 4:24-cv-268-KGB |

**PLAINTIFF ASTRAZENECA PHARMACEUTICALS LP'S
RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

In their notice of supplemental authority, ECF No. 157, Defendants cite a decision of the U.S. District Court for the District of Colorado denying a drug manufacturer's request for a preliminary injunction against enforcement of Colorado SB 71. *See Abbvie v. Weiser,* No. 25-cv-1847-WJM-KAS, 2025 WL 3041825 (D. Colo. Oct. 31, 2025). The Colorado decision arose in a different procedural posture and addresses different legal claims based on a different record. That decision should have no bearing on this case.

***First***, *Weiser* wrongfully concluded that the presumption against preemption applies because the Colorado law fell within "traditional general areas of state regulation." Dkt. No. 157 at 1. *Weiser* defined the relevant "areas of state regulation," at the highest possible level of generality, as "public health" and "the practice of pharmacy." 2025 WL 3041825, at *8. But Act 1103 does not regulate public health or the practice of pharmacy *generally*; it regulates *only* 340B

transactions involving 340B drugs sold to 340B covered entities and the pharmacies with which those 340B entities contract. In addition, Act 1103 regulates drug *pricing* in particular, which even Defendants acknowledge is *not* an area of traditional state regulation. *See Biotechnology Industry Organization v. District of Columbia*, 496 F.3d 1362, 1374 (Fed. Cir. 2007) (rejecting argument that drug pricing was a traditional area of state regulation). Moreover, as Defendants have not disputed, no presumption against preemption applies where a State attempts to regulate something "inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Buckman Co. v. Plfs.' Legal Comm.*, 531 U.S. 341, 347 (2001). Such is the case here: AstraZeneca's obligations to 340B covered entities originate from, are governed by, and will terminate according to federal law—namely, Section 340B.

**Second**, Defendants cite to *Weiser*'s conclusion that the Colorado law regulates pricing rather than delivery. Even if the analysis in *Weiser* were persuasive—though it is not, *see AbbVie Inc. v. Drummond*, 2025 WL 3048929, at *5-*6 (W.D. Okla. Oct. 31, 2025)—that case was expressly based on the preliminary injunction "record" there, which failed to establish "that the Act will have the practical effect of requiring AbbVie to make sales to non-covered entities." *Weiser*, 2025 WL 3041825, at *11. Here, by contrast, the case is "before this Court on a fully developed factual record post-enforcement," Dkt. No. 141 at 12 (Order denying Defendants' motion for judgment on the pleadings), and the undisputed record demonstrates that Act 1103 regulates drug pricing, not delivery. In any event, AstraZeneca's briefs explain why Act 1103 would be unlawful "even if Act 1103 could somehow be described as regulating the delivery of 340B-discounted drugs—contrary to all evidence and contrary to the Insurance Commissioner's enforcement of the Act against AstraZeneca." ECF No. 132 at 33. No comparable argument was at issue in *Weiser*.

***Third***, Defendants contend that this Court should follow *Weiser*'s reasoning that the "voluntary nature of the 340B program" defeats AstraZeneca's Takings claim. *See* 2025 WL 3041825, at *13-14. But the *Weiser* court conflated the *federal* government (which created the 340B program in which AstraZeneca voluntarily participates) with the *State*'s government (which imposed new contract-pharmacy obligations to which AstraZeneca has *not* agreed). To create a "voluntary exchange," the government that imposed the obligation must be the *same* government that offered the benefit on which the obligation was conditioned. *Valancourt Books, LLC v. Garland*, 82 F.4th 1222, 1232 (D.C. Cir. 2023). *Weiser* simply ignored this distinction. *See Drummond*, 2025 WL 3048929, at *8 ("H.B. 2048, however, isn't Oklahoma charging admission to a market of its own creation, but rather Oklahoma demanding a ransom in exchange for continued access to another's market."). In addition, the voluntary-participation doctrine requires the property-owner to be "aware of the conditions of [the] exchange." *Valancourt*, 82 F.44th at 1232 (cleaned up). When it signed its PPA with the federal government, AstraZeneca could not have been aware that, decades later, States like Arkansas would add conditions of their own to participation in the federal 340B program.

       Respectfully submitted,

       **ELDRIDGE BROOKS, PLLC**

       */s/ Conner Eldridge*
       Conner Eldridge, Ark. Bar No. 2003155
       Emily A. Neal, Ark. Bar No. 2003087
       ELDRIDGE BROOKS, PLLC
       5115 West JB Hunt Drive, Suite 500
       Rogers, AR 72758
       (479) 553-7678 telephone
       (479) 553-7553 facsimile
       conner@eldridgebrooks.com
       emily@eldridgebrooks.com

       AND

       Allon Kedem
       Jeffrey L. Handwerker
       Samuel I. Ferenc
       ARNOLD & PORTER KAYE SCHOLER LLP
       601 Massachusetts Ave., NW
       Washington, DC 20001-3743
       (202) 942-5000 telephone
       (202) 942-5999 facsimile
       allon.kedem@arnoldporter.com
       jeffrey.handwerker@arnoldporter.com
       sam.ferenc@arnoldporter.com

       Carmela T. Romeo
       ARNOLD & PORTER KAYE SCHOLER LLP
       250 West 55th Street
       New York, NY 10019-9710
       (212) 836-8000 telephone
       (212) 836-8689 facsimile
       carmela.romeo@arnoldporter.com

       *Attorneys for Plaintiff AstraZeneca Pharmaceuticals LP*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of November 2025, the foregoing document was filed electronically with the Clerk of Court by use of the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing and is available for viewing and downloading from the ECF system.

Dated: November 17, 2025

                                                      Conner Eldridge